**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE WASHINGTON MUTUAL, INC. SECURITIES, DERIVATIVE AND "ERISA" LITIGATION | ) ) ) ) ) | MDL Docket No. _____ |

**BRIEF IN SUPPORT OF WASHINGTON MUTUAL'S MOTION
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, defendant Washington Mutual, Inc. ("WaMu") respectfully submits this Brief in support of its Motion to transfer those actions listed in the Schedule of Actions (the "WaMu Cases") to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings. Most of the defendants, virtually all of the relevant documents and witnesses, and five of the seven actions are located in the Western District of Washington, making it the forum that will best promote the just and efficient centralized pretrial proceedings of the WaMu Cases.

## PRELIMINARY STATEMENT

Three of the WaMu cases assert claims under the federal securities laws and allege that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to (1) an alleged conspiracy between WaMu and an appraisal vendor, eAppraiseIT, related to appraisal valuations on loans originated by WaMu; (2) WaMu's exposure to loan-related losses, and its reserving and provisioning for those losses, in general and in light of that alleged conspiracy; and (3) various aspects of WaMu's performance and accounting in light of the alleged conspiracy and of changing conditions in the home lending and credit markets. Two of the WaMu Cases are derivative actions, each asserting state law claims for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. These claims are based largely on the theory that defendants misrepresented WaMu's exposure to risk in the subprime home loan market and also misrepresented or failed to disclose information related to the alleged conspiracy. All seven WaMu Cases plainly arise out of the same set of operative facts, and coordination or consolidation for pretrial proceedings would serve the convenience of the parties and witnesses and promote the just and efficient conduct of these actions.

Coordination or consolidation of the WaMu Cases will promote the efficient administration of pretrial motions, discovery and related proceedings and, in the process, further the convenience of the judiciary, parties, witnesses and counsel. The combination of a complex core of facts involving WaMu's management of and disclosures related to potential loan losses in its home loans business and also involving the dealings between WaMu and outside appraisal firms, and claims requiring significant motion practice and possibly extensive discovery, militates strongly in favor of coordination or consolidation. Many of the WaMu Cases involve common legal questions that will be raised at the motion to dismiss stage, such as, *inter alia*,

2

whether the complaints state claims upon which relief can be granted, or whether plaintiffs in the derivative actions were excused from making a demand on WaMu's Board of Directors. Coordination or consolidation will avoid inconsistent determinations regarding these, as well as other, issues of law, and will avoid duplicative pretrial proceedings that would burden judicial resources. WaMu expects that plaintiffs in each of the pending cases will seek to depose many of the same witnesses, including WaMu's officers, directors and employees. Coordination or consolidation will help to eliminate or reduce the possibility for duplicative discovery, potentially inconsistent rulings, and the cost and inconvenience multiple actions entails.

Finally, WaMu and most individual defendants are located in Washington. WaMu is a Washington corporation with its corporate headquarters in Seattle, Washington and most of the individual defendants reside in or near the Seattle metropolitan area. Virtually all of the relevant witnesses and documents are likely to be located in Washington. In addition to the five (out of the seven) actions currently pending Western District of Washington, there is also a derivative action pending in Washington state court. Thus, discovery could be coordinated between the federal and state actions, should the need arise. Notably, the median time between filing and trial is shorter in the Western District of Washington than in the Southern District of New York, where the remaining two WaMu Cases are pending, and the Western District of Washington has fewer pending civil actions and multidistrict litigations on its docket.

Accordingly, these cases (and any tag-along or related actions) should be coordinated or consolidated before the Honorable Marsha J. Pechman in the Western District of Washington. Judge Pechman, who is currently presiding over the first action commenced in the Western District of Washington, has extensive judicial experience and is the most logical choice to coordinate pretrial proceedings. For the reasons set forth below, the WaMu Cases therefore should be transferred pursuant to 28 U.S.C. § 1407 to the United States District Court for the

3

Western District of Washington, Seattle Courthouse, and assigned to the Honorable Marsha J. Pechman.[1]

## BACKGROUND OF THE LITIGATION[2]

### INTRODUCTION:

WaMu is incorporated under the laws of the State of Washington and has its headquarters and principal place of business in Seattle, Washington, which is in the Western District of Washington. WaMu is a bank holding company that owns is the largest savings and loan in the nation, which has consumer and small business banking operations in major U.S. markets. *See* Koesterer Compl. ¶¶ 2, 13; Abrams Compl. ¶¶ 18, 25; Nelson Compl. ¶ 7; Sneva Compl. ¶¶ 1, 2; Harrison Compl. ¶¶ 1, 2.; Bushansky Compl. ¶ 16; Bussey Compl. ¶ 15.[3]

Because WaMu's corporate headquarters are in Seattle, Washington, WaMu generally prepares and releases its Securities Exchange and Commission ("SEC") filings and its press releases from Seattle. Accordingly, it would appear that many relevant documents and witnesses are likely to be found in or near the Seattle, Washington metropolitan area.

Defendants Kerry K. Killinger, Stephen J. Rotella, Thomas W. Casey, David C. Schneider, James B. Corcoran, John F. Woods, and Daryl D. David are executives of WaMu.

---

[1] WaMu moves without prejudice to any defense to the above-captioned complaints that may be raised in a responsive pleading or otherwise.

[2] The facts recited herein for which citation is made to the complaints are assumed to be true only for purposes of this motion, unless otherwise indicated.

[3] "Koesterer Compl." refers to the complaint filed in *Koesterer v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9801 (S.D.N.Y.); "Abrams Compl." refers to the complaint filed in *Abrams and Roffe v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9806 (S.D.N.Y.); "Nelson Compl." refers to the complaint filed in *Nelson v. Woods, et al.*, No. C07-1809 (W.D. Wash); "Sneva Compl." refers to the complaint filed in *Sneva v. Killinger, et al.*, No. C07-1826 (W.D. Wash); "Harrison Compl." refers to the complaint filed in *Harrison v. Killinger, et al.*, No. C07-1827 (W.D. Wash); "Bushansky Compl." refers to the complaint filed in *Bushansky v. Washington Mutual, Inc., et al.*, No. C07-1874; "Bussey Compl." refers to the complaint filed in *Bussey v. Washington Mutual, Inc., et al.*, No. C07-1879.

4

*See* Koesterer Compl. ¶¶ 15-17; Abrams Compl. ¶¶ 19-21; Nelson Compl. ¶¶ 8-12; Sneva Compl. ¶¶ 14-18; Harrison Compl. ¶¶ 14-18; Bussey Compl. ¶ 35 . Messrs. Killinger, Rotella, Casey, Schneider, Corcoran, Woods and David work at WaMu's headquarters in Seattle, Washington. Moreover, these individual defendants also live with their families in or near the Seattle, Washington metropolitan area.

All other individual defendants are members of WaMu's board of directors. Anne V. Farrell, Mary E. Pugh, Michael K Murphy, William G. Reed, Jr., Orin C. Smith and James H. Stever are citizens of Washington. Stephen E. Frank and Phillip D. Matthews are citizens of California. Thomas C. Leppert is a citizen of Texas. Charles M. Lillis is a citizen of Colorado. Regina T. Montoya is a citizen of Washington, D.C. *See* Sneva Compl. ¶¶ 20-30; Harrison Compl. ¶¶ 20-30; Bushansky Compl.¶ 17; Bussey Compl. ¶¶ 28-32.

## ALLEGATIONS AGAINST DEFENDANTS:

Two putative class actions alleging violations of securities laws were filed in the Southern District of New York, asserting that WaMu and the individual defendants violated the federal securities laws by allegedly making false and misleading statements and omissions concerning, among other things, the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. These actions were quickly followed by an additional putative class action complaint filed in the Western District of Washington, making the same allegations and claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. On November 13, two nearly identical complaints were filed in the Western District of Washington asserting derivative claims on behalf of WaMu. Those complaints allege that individual defendants' failure to disclose the risks of WaMu's mortgage lending business violated the individual defendants' fiduciary duties, wasted corporate assets, constituted gross mismanagement and abuse of control, and resulted in

5

unjust enrichment of the individual defendants. A third derivative action was filed in the Superior Court of the State of Washington, King County,[4] asserting substantially the same facts and the same claims as the derivative actions filed in federal district court. Finally, two putative class actions were filed in the Western District of Washington alleging that defendants breached fiduciary duties under the Employee Retirement Income Security Act ("ERISA") by investing funds from the WaMu Savings Plan in WaMu stock. The complaints allege this investment was imprudent because WaMu stock was an unduly risky investment due to WaMu's alleged manipulation of the appraisal process. *See* Koesterer Compl. ¶¶ 3-8; Abrams Compl. ¶¶ 3-13; Nelson Compl. ¶¶ 73-77; Sneva Compl. ¶¶ 3-9; Harrison Compl. ¶¶ 3-9; Bushansky Compl. ¶¶ 4-7, 107-113; Bussey Compl. ¶¶ 5-9, 108-123.

### BRIEF SUMMARY OF WAMU CASES:

The following actions are currently pending in federal district courts:[5]

### WaMu Cases in the Western District of Washington

- *Nelson v. Woods, et al.,* No. C07-1809 (W.D. Wash): This action was filed on November 7, 2007 in federal district court in the Western District of Washington. Nelson Compl. at p. 1. Mark Nelson brought claims on behalf of a putative class of purchasers of WaMu common stock between April 18, 2006 and November 1, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Nelson Compl. ¶¶ 1, 102-116. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Nelson Compl. ¶¶ 1, 73-77. This action was assigned to Judge Marsha J. Pechman. Thus far, no answers or motions have been filed.

- *Sneva v. Killinger, et al.,* No. C07-1826 (W.D. Wash): This action was filed on November 13, 2007 in federal district court in the Western District of Washington. Sneva Compl. at p. 1. Tom Sneva brought derivative claims against several of WaMu's officers and directors alleging state law claims of breach of fiduciary duty, abuse of control, gross

---

[4]    The Seattle courthouse of the Western District of Washington is also located in King County.

[5]    It is anticipated that other similar actions may be filed against the defendants in the future.

mismanagement, waste of corporate assets and unjust enrichment. Sneva Compl. ¶¶ 107-133. The complaint alleges that defendants misrepresented WaMu's exposure to risk in the home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Sneva Compl. ¶¶ 4-9, 73-77. This action was assigned to Judge Ricardo S. Martinez. Thus far, no answers or motions have been filed.

- *Harrison v. Killinger, et al.*, **No. C07-1827 (W.D. Wash):** This action was filed on November 13, 2007 in federal district court in the Western District of Washington. Harrison Compl. at 1. Lynne Harrison brought derivative claims against several of WaMu's officers and directors alleging state law claims of breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. Harrison Compl. ¶¶ 107-133. The complaint alleges that defendants misrepresented WaMu's exposure to risk in the home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Harrison Compl. ¶¶ 4-9, 73-77. This action was assigned to Judge John C. Coughenour. Thus far, no answers or motions have been filed. Notably, this complaint is virtually identical to the Sneva Complaint.

- *Bushansky v. Washington Mutual, Inc. et al.*, **No. C07-1874 (W.D. Wash):** This action was filed on November 20, 2007 in federal district court in the Western District of Washington. Bushansky Compl. at p. 1. Gregory Bushansky brought claims on behalf of a putative class of participants or beneficiaries in the WaMu Savings Plan, for breach of fiduciary duty under "ERISA." Bushansky Compl. ¶ 4. The complaint alleges that defendants imprudently allowed the WaMu Savings Plan to invest in WaMu common stock, as this stock was an unduly risky investment due to WaMu's over reliance on the subprime lending market and its alleged manipulation of the loan origination process. Bushansky Compl. ¶¶ 4-7, 107-113. This action was assigned to Judge Richard A. Jones. Thus far, no answers or motions have been filed.

- *Bussey v. Washington Mutual, Inc., et al.*, **No. C07-1879 (W.D. Wash):** This action was filed on November 21, 2007 in federal district court in the Western District of Washington. Bussey Compl. at p. 1. Vincent Bussey brought claims on behalf of a putative class of participants or beneficiaries in the WaMu Savings Plan, for breach of fiduciary duty under "ERISA." Bussey Compl. ¶ 4. The complaint alleges that defendants imprudently allowed the WaMu Savings Plan to invest in WaMu common stock, as this stock was an unduly risky investment, that defendants had a conflict of interest because their compensation was tied to WaMu's stock price, and that defendants failed to provide complete and accurate information to WaMu Savings Plan participants. Bussey Compl. ¶¶ 5-7. This action was assigned to Chief Judge Robert S. Lasnik. Thus far, no answers or motions have been filed.

## WaMu Cases in the Southern District of New York

- *Koesterer v. Washington Mutual, Inc., et al.*, **No. 07 Civ. 9801 (S.D.N.Y.):** This action was filed on November 5, 2007 in federal district court in the Southern District of New York.

7

Koesterer Compl. at 1. Dennis Koesterer brought claims on behalf of a putative class of purchasers of WaMu common stock between July 19, 2006 and October 31, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Koesterer Compl. ¶¶ 1, 81-98. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Koesterer Compl. ¶¶ 3-8. This action was assigned to Judge Colleen McMahon. Thus far, no answers or motions have been filed.

- *Abrams and Roffe v. Washington Mutual, Inc., et al.*, No. 07 Civ. 9806 (S.D.N.Y): This action was filed on November 5, 2007 in federal district court in the Southern District of New York. Abrams Compl. at 1. Joel Abrams and Brian Roffe brought claims on behalf of a putative class of purchasers of WaMu common stock between October 18, 2006 and November 1, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5. *See* Abrams Compl. ¶¶ 1, 42-47. The complaint alleges that defendants knowingly or recklessly published a series of materially false and misleading statements or failed to disclose material information related to the strength of WaMu's mortgage loan portfolio. *See* Abrams Compl. ¶¶ 3-9. The complaint further alleges that these misleading statements or material omissions were related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. *See* Abrams Compl. ¶¶ 10-13. This action was assigned to Judge Alvin K. Hellerstein. Thus far, no answers or motions have been filed.

## ARGUMENT

The WaMu Cases are patently appropriate actions for transfer and coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, and the Western District of Washington is unquestionably the forum most convenient to the parties and witnesses. It is the forum where nearly all the defendants are located and, accordingly, where virtually all of the relevant witnesses and documents are likely to be found. In short, transfer to the Western District of Washington will best promote the just and efficient pretrial proceedings of the WaMu Cases.

## I.    TRANSFER AND COORDINATION OR CONSOLIDATION OF THESE ACTIONS IS APPROPRIATE AND NECESSARY

The Judicial Panel on Multidistrict Litigation (the "Panel") may transfer and coordinate or consolidate two or more civil cases involving "one or more common questions of

8

fact" for coordinated or consolidated pretrial proceedings upon a determination that the transfers would "be for the convenience of the parties and witnesses" and would "promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). By providing for the centralized management of pretrial proceedings, Section 1407 seeks "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation, Fourth*, § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). A straightforward application of the criteria set forth in Section 1407 compels the conclusion that all seven of the WaMu Cases should be coordinated or consolidated for pretrial proceedings.

A.    **The WaMu Cases Present Common Questions of Law and Fact**

Although arising from complex factual allegations, at bottom, each complaint alleges, *inter alia*, that defendants misrepresented WaMu's exposure to risk in the subprime home loan market and misrepresented or failed to disclose information related to the alleged conspiracy, loan-related losses, and WaMu's performance and accounting practices in light of those allegations. The Panel has routinely transferred and centralized putative securities and ERISA class actions and shareholder derivative suits stemming from "a significant number of common events, defendants, and/or witnesses." *In re Pfizer, Inc. Sec., Derivative and "ERISA" Litig.*, 374 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002).

Although there are slight variations in the way each plaintiff phrases its allegations, the obvious factual similarities of these actions are illustrated by a simple comparison of the common questions of fact asserted in the WaMu Cases. First, the securities class action complaints allege false and misleading statements and omissions concerning:

9

- WaMu's exposure to home loan defaults and related losses. *See* Koesterer Compl. ¶¶ 30, 42, 46, 55, 59, 63, 67; Abrams Compl. ¶¶ 3, 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's reported loan loss reserves and provisioning. *See* Koesterer Compl. ¶¶ 34, 42, 46, 55, 59, 63, 67; Abrams Compl. ¶¶ 6, 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The adequacy of WaMu's systems of internal operational or financial controls. *See* Koesterer Compl. ¶ 55; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The conspiracy to inflate appraisal values on residential-secured loans with the goal of artificially increasing loan-to-value ratios, artificially increasing loan origination volumes, under-reporting WaMu's true costs, and taking inadequate reserves. *See* Koesterer Compl. ¶¶ 22, 42, 46, 55, 59, 63, 67, 70, 71; Abrams Compl. ¶¶ 10, 12, 34, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- The level of risk inherent in the residential real-estate secured loans that WaMu made in light of its allegedly improper appraisal practices. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶¶ 12, 36; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's reported income and asset valuations, in light of its allegedly improper appraisal practices. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶ 12; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

- WaMu's profitability in light of its failure to take sufficient reserves and its failure to account properly for the results of its operations. *See* Koesterer Compl. ¶¶ 42, 46, 55, 59, 63, 67; Abrams Compl. ¶ 12; Nelson Compl. ¶¶ 32, 39, 45, 53, 60, 67.

Next, the two derivative lawsuits, which are virtually identical, repeat allegations similar to those pleaded in the securities complaints. *See* Sneva Compl. ¶¶ 53, 62, 71, 76, 81, 85; Harrison Compl. ¶¶ 53, 62, 71, 76, 81, 85. The complaints further assert that the defendant officers and directors violated their fiduciary duties to WaMu in light of the misrepresentations and omissions alleged in the securities complaints. *See, e.g.*, Sneva Compl. ¶¶ 100, 115; Harrison Compl. ¶¶ 100, 115. More particularly, the derivative claims assert that the underlying violations of the securities laws and the related misrepresentations and omissions have harmed WaMu in the following ways:

10

- WaMu has been and will continue to be forced to incur substantial costs of investigation and defense related to governmental investigations and the securities class actions. *See* Sneva Compl. ¶ 92; Harrison Compl. ¶ 92.

- WaMu's image, reputation and market capitalization have been severely damaged as a result of the defendants' fiduciary breaches. *See* Sneva Compl. ¶ 92; Harrison Compl. ¶ 92.

- Certain of the defendants sold WaMu stock with knowledge of true facts that were not generally disclosed to the investing public and thus misappropriated confidential WaMu information. *See* Sneva Compl. ¶¶ 101, 109; Harrison Compl. ¶¶ 101, 109.

- As a result of the defendants' conduct, WaMu has wasted corporate assets by paying unjustified incentive bonuses. *See* Sneva Compl. ¶ 129; Harrison Compl. ¶ 129.

The two putative ERISA class actions were also precipitated by the alleged conspiracy, and many of the allegations in the ERISA complaints repeat those above. Specifically, the putative ERISA class actions allege that WaMu stock was a risky investment because:

- WaMu's mortgage origination practices were highly risky and inappropriate. *See* Bushansky Compl. ¶ 64; Bussey Compl. ¶ 108-114.

- WaMu's financial condition, particularly with respect to subprime mortgages, was being misrepresented. *See* Bushansky Compl. ¶ 65; Bussey Compl. ¶ 94.

- WaMu disregarded the risk of loans collateralized by inflated appraisals because WaMu was primarily focused on increasing the volume of mortgage originations. *See* Bushansky Compl. ¶ 109; Bussey Compl. ¶¶ 117.

- WaMu held insufficient reserves, given the added risks of mortgages backed by inflated appraisals. *See* Bushansky Compl. ¶ 113.

The legal issues in the purported securities class actions are identical. The putative class would need to prove the facts above and show, in part, that defendants' statements misrepresented material facts about WaMu's financial condition, to what extent the members of the class sustained damages, and the proper measure of damages. *See* Koesterer Compl. ¶ 76; Abrams Compl. ¶ 36; Nelson Compl. ¶ 24. Likewise, plaintiffs in the derivative actions would

11

need to demonstrate, in part, that these nondisclosures damaged WaMu. *See* Sneva Compl. ¶¶ 92, 101, 108, 109, 129; Harrison Compl. ¶¶ 92, 101, 108, 109, 129. Finally, plaintiffs in the ERISA class actions seek to prove, *inter alia*, that WaMu's stock was an imprudent investment based, in part, on defendants' alleged misrepresentation of WaMu's true financial condition. Bushansky Compl. ¶ 65; Bussey Compl. ¶ 94.

> **B.** **The Questions of Law and Fact Are Sufficiently Complex To Require Consolidation under Section 1407**

Consolidation will ensure that many of the complex and difficult issues raised by these cases — for example, through motions to dismiss, motions for summary judgment, and discovery disputes — are handled in a consistent manner that will protect both plaintiffs and defendants from conflicting judgments by different district courts. This Panel has long held that the possibility of duplicative pretrial proceedings and inconsistent pretrial rulings is a central factor in determining whether cases should be consolidated pursuant to Section 1407. *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d at 1376; *In re Food Fair Sec. Litig.*, 465 F. Supp. at 1304; *In re First Nat'l Bank, Heavener, Okla. Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978).

A review of the allegations and claims for relief in the actions summarized above shows that these similar actions will involve complex legal and factual pretrial issues. Questions of the nature and scope of appropriate discovery, as well as privilege, will have to be resolved for each case. Most significantly, a court will need to resolve questions relating to whether each of the five putative securities and ERISA class actions can properly be maintained as class actions. *See* discussion section I.C, *infra*. Because the WaMu Cases are so similar, there exists a very real danger of conflicting or inconsistent pretrial rulings if these cases proceed separately.

12

**C.    Consolidation Will Avoid Conflicting and Duplicative Class Certification Rulings**

Consolidation is appropriate where the actions purport to be brought on behalf of similar classes. This Panel has acknowledged that "[i]t is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest." *In re Plumbing Fixture Cases*, 298 F. Supp. at 493. In fact, this Panel has continually recognized that prevention of inconsistent rulings by separate district courts with respect to class certification issues is a primary purpose of Section 1407. *See In re Isolagen, Inc. Sec. & Derivative Litig.*, 416 F. Supp. 2d 1366, 1367 (J.P.M.L. 2006); *In re Res. Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Consequently, consolidation is clearly appropriate here, where several of the actions purport to be brought on behalf of similar putative classes during overlapping class periods.[6] Consolidation will ensure consistency in the adjudication of class certification issues arising in these actions.

**D.    Consolidation Will Avoid Duplicative Discovery and Would Be for the Convenience of the Witnesses and All Parties**

Consolidation also will prevent duplicative discovery and save the parties, witnesses and courts time and effort. As the Panel has recognized, consolidation "ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006); *see also In re Enron*

---

[6]    It bears noting that the barely different class periods asserted in the purported class actions are no bar to centralization. *See In re Food Fair Sec. Litig.*, 465 F. Supp. 1301, 1304 (J.P.M.L. 1979) (ordering transfer even though the class period asserted was different in the putative securities class actions); *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978) (same). In any event, the periods differ only by a matter of months.

13

*Corp. Sec., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d at 1376 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery . . . and conserve the resources of the parties, their counsel and the judiciary."); *In re Food Fair Sec. Litig.*, 465 F. Supp. at 1305 ("While voluntary cooperation among parties and their counsel is always commendable, transfer under Section 1407 and the assignment of all actions to a single judge will ensure the streamlining of discovery and all other pretrial proceedings as well."). Given the similar factual and legal allegations in these actions, *see* section I.C, *supra*, plaintiffs undoubtedly will seek largely duplicative discovery. Coordinated or consolidated discovery would avoid such duplication of effort by the parties, reduce litigation costs and minimize inconvenience to witnesses.

Counsel for plaintiffs also benefit from coordinated or consolidated pretrial proceedings by combining and streamlining their individual efforts. *See In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984) ("prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned"); *see also In re Sunshine Min. Co. Sec. Litig.*, 444 F. Supp. 223, 226 (J.P.M.L 1978) (stating that streamlining efforts of the parties and their counsel is "one of the purposes of coordinated or consolidated pretrial proceedings"). This streamlining of efforts further supports consolidation of these actions.

Moreover, parties and witnesses may be further convenienced because the Panel often transfers actions to a location where the relevant documents and witnesses are located in order to promote the just and efficient conduct of the litigation. *See, e.g., In re Sterling Fin. Corp. Sec. Litig.*, MDL No. 1879, 2007 WL 3236468, at *1 (J.P.M.L. 2007); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d at 1356. As discussed in section II, *infra*, many of

14

the individual defendants in the WaMu cases reside in Washington, and WaMu itself is

headquartered in Seattle.  Accordingly, virtually all relevant documents and witnesses are likely

to be found in the Western District of Washington.

## II.  THE ACTIONS SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON WHICH IS BY FAR THE MOST APPROPRIATE FORUM

The Western District of Washington is clearly the preferable transferee district for

the WaMu Cases.  Accordingly, and for the reasons discussed below, the WaMu Cases should be

transferred to the Western District of Washington, Seattle Courthouse, and assigned to the

Honorable Marsha J. Pechman, to whom the first of the WaMu Cases filed in the Western

District of Washington was assigned.

As a threshold matter, neither motion practice nor discovery has commenced in

any of the federal district courts in which the WaMu Cases have been filed.  Accordingly, it does

not appear that any judicial resources would be wasted should this Panel transfer the WaMu

Cases to the Western District of Washington.  On the contrary, judicial resources will be

conserved by transfer to the Western District of Washington at this early stage of the litigation.

### A.  The Location of the Defendants, the Relevant Documents and Witnesses Strongly Supports Transfer to the Western District of Washington

It is well settled that the Panel routinely transfers securities, ERISA and derivative

actions to a district where the defendant has its corporate headquarters and where many of the

individual defendants reside because "[that] district is where many relevant documents and

witnesses are likely to be found."  *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F.

Supp. 2d at 1370; *see also In re Pfizer Ins. Sec., Derivative & "ERISA" Litig.*, 374 F. Supp. 2d

1348, 1350 (J.P.M.L. 2005) (ordering transfer to the district where the defendant "has its

headquarters and many individual defendants reside, and therefore relevant witnesses and

15

documents will likely be found there"); *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (same).

Here, too, the Panel should transfer the WaMu Cases to the Western District of Washington since WaMu is a Washington corporation with its corporate headquarters in Seattle, Washington and many of the individual defendants reside in or near the Seattle metropolitan area. As a result, the Western District of Washington — over any other district — is the most appropriate transferee district for centralized pretrial proceedings, as most of the relevant witnesses and documents are likely to be found in or near Seattle, Washington. Notably, the public disclosures forming the basis of plaintiffs' claims in each of the WaMu Cases were drafted in and issued from WaMu's headquarters in Seattle, Washington, and decisions regarding the contents of those disclosures were largely made by individuals living and working in Washington. Standing alone, these facts are sufficient to demonstrate that the Western District of Washington is the center of gravity of the WaMu Cases and the forum that would best promote the convenience of the parties and witnesses. *See, e.g., In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251-52 (J.P.M.L. 1983) ("[W]e are persuaded that the Pacific Northwest, and particularly the State of Washington, is the center of gravity of this litigation and the focal point for discovery.").

Balanced against this is — nothing. The named plaintiffs in the WaMu Cases are dispersed throughout the country and, with respect to the securities and ERISA actions, purport to represent putative nationwide plaintiff classes. Consequently, there is nothing in the geographical location of the named plaintiffs and the putative plaintiff classes that can overcome the overwhelming connection of the WaMu Cases to the Western District of Washington.[7]

---

[7]     Neither WaMu nor any of the individual defendants in the WaMu Cases is a party to the action the New York Attorney General filed against eAppraiseIT. Indeed, WaMu cannot be

16

**B.    The Largest Number of Cases Are Pending in the Western District of Washington**

An examination of the WaMu Cases reveals that five of the seven actions are currently pending in the Western District of Washington. This further bolsters the evidence that the Western District of Washington is the most logical transferee district. *See, e.g., In re Burlington N. & Santa Fe Ry. Co. Employee Settlement Agreements Litig.*, 162 F. Supp. 2d 699, 700 (J.P.M.L 2001) (noting as a factor supporting transfer that three of the five actions were already pending in the Western District of Washington). *See also In re Doral Fin. Corp. Sec. Litig.*, 398 F. Supp. 2d 1369, 1370 (J.P.M.L. 2005*)* (noting as a factor supporting transfer that "nearly all" of the actions were already pending in the transferee district).

Moreover, since a related shareholder derivative action is currently pending in Washington state court "centralization in the [Western District of Washington] carries the added benefit of fostering coordinated discovery between the federal and state proceedings, should such a need arise." *In re General Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d at 1370 (noting as a factor supporting transfer that a related shareholder derivative action was pending in state court within the transferee district); *In re Delphi Corp. Sec., Derivative and "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (same).

---

a defendant to that action as it is regulated by a federal agency, namely the Department of the Treasury's Office of Thrift Supervision. Accordingly, the pendency of the New York Attorney General's complaint in the Southern District of New York does not militate against transfer to the Western District of Washington. *See In re Res. Exploration, Inc., Sec. Litig.*, 483 F. Supp. at 822 (transferring actions to a district, other than the district in which a proceeding by the SEC was pending, because, *inter alia*, the transferee district would have "a substantial quantity of documents [that] may be anticipated as part of the discovery process").

097471-0024-11475-NY01.2691135.6

**C. The Western District of Washington Is Also the Most Convenient Forum for Non-Party Witnesses**

It is also significant here that many of the relevant non-party witnesses — such as former WaMu executives and employees — are found either in or near Seattle, Washington. Accordingly, the Western District of Washington is the most convenient forum for many of the relevant non-party witnesses. Moreover, if the WaMu Cases were transferred to another federal district court, it appears that many of the relevant non-party witnesses would be outside the respective district court's subpoena power. As a result, transfer to the Western District of Washington advances the parties' ability to conduct discovery and take depositions of relevant non-party witnesses as these witnesses can be compelled to appear and produce documents.

**D. Judge Pechman Has Experience Managing Multidistrict Litigation and Relative Docket Congestion Strongly Favors Transfer to the Western District of Washington**

The Honorable Marsha J. Pechman — to whom the first of the WaMu Cases filed in the Western District of Washington was assigned — is the most logical choice to coordinate pretrial proceeding in the WaMu Cases. Judge Pechman is no stranger to multidistrict litigation and, in turn, has developed expertise in the pretrial conduct of multidistrict litigation matters. *See In re Burlington N. & Santa Fe Ry. Co. Employee Settlement Agreements Litig.*, 162 F. Supp. 2d at 700 (assigning a multidistrict litigation matter to the Honorable Marsha Pechman for coordinated or consolidated pretrial proceedings). It also does not appear that Judge Pechman has any multidistrict litigation matters currently on her docket.[8]

---

[8] *See* Judicial Panel on Multidistrict Litigation, *Distribution of Pending MDL Dockets* (as of Nov. 6, 2007), at p. 9, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf.

097471-0024-11475-NY01.2691135.6

To the extent that Washington state law issues arise during the course of the WaMu Cases, for example, in connection with the derivative actions, it would appear that Judge Pechman — who was a Washington state superior court judge for eleven years prior to her appointment to the federal bench — would be more familiar with Washington law than a judge sitting elsewhere. Although the presence of foreign state law in multidistrict litigation is not dispositive, *see In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litig.*, 438 F. Supp. 942, 943 (J.P.M.L 1977), this is yet another example of how the scales tip decidedly in favor of transfer to the Western District of Washington and assignment to Judge Pechman.

Furthermore, the current levels of docket congestion in the two districts where the WaMu Cases are pending strongly favor transfer of the WaMu Cases to the Western District of Washington. As of September 30, 2006, the median time between a civil filing and trial was *six* months longer in the Southern District of New York than in the Western District of Washington.[9] Also, as of that date, the Southern District of New York had over *six* times more civil cases pending on its docket than the Western District of Washington.[10] Notably, the Southern District of New York has thirty-eight MDL dockets pending as of November 6, 2007, while the Western District of Washington has only one, which is not assigned to Judge Pechman.[11] The Panel has routinely favored one district court over another "because that district has a significantly lighter

---

[9] The median time between a civil filing and trial is 19 months in the Western District of Washington versus 25.7 months in the Southern District of New York. *See* James C. Duff, *2006 Judicial Business of the United States Courts: Annual Report of the Director*, Table C-10, at pp. 208-10, *available at* http://www.uscourts.gov/judbus2006/contents.html.

[10] There are 2,779 civil cases pending in the Western District of Washington versus 16,852 civil cases pending in the Southern District of New York. *Id.* at Table C-1, at pp. 159-61.

[11] *See* Judicial Panel on Multidistrict Litigation, *Distribution of Pending MDL Dockets* (as of Nov. 6, 2007), at pp. 7-9, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf.

097471-0024-11475-NY01.2691135.6

civil action docket than the [other district] and, therefore, is in the best position to expeditiously process this particular litigation." *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763, 764-65 (J.P.M.L.1975); *see also In re Air Crash Disaster at Taipei Int'l Airport on July 31, 1975*, 433 F. Supp. 1120, 1122 (J.P.M.L. 1977) (same); *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 n.2 (J.P.M.L. 1972).

In sum, transfer of the WaMu Cases to the Honorable Marsha J. Pechman of the Western District of Washington is the best choice to efficiently and effectively conduct pretrial proceedings of the WaMu Cases.

## CONCLUSION

For the foregoing reasons, WaMu respectfully requests that the Panel transfer the WaMu Cases, listed in the Schedule of Actions, to the Honorable Marsha J. Pechman, United States District Judge for the Western District of Washington, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated:  November 28, 2007

Respectfully submitted,

Barry R. Ostrager
Mary Kay Vyskocil
David J. Woll
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)
**Counsel for Defendant Washington Mutual, Inc.**