UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS KOESTERER, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>      -v-<br><br>WASHINGTON MUTUAL, INC., et al.,<br><br>                    Defendants. | Case No.: 07-cv-9801<br>Judge Colleen McMahon<br><br>ECF CASE |
| JOEL ABRAMS, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>      -v-<br><br>WASHINGTON MUTUAL, INC., et al.,<br><br>                    Defendants. | Case No.: 07-cv-9806<br>Judge Alvin Hellerstein<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF
BURTON ROSENFIELD'S MOTION FOR LEAD PLAINTIFF**

ABBEY SPANIER RODD & ABRAMS, LLP
Nancy Kaboolian (NK 6346)
212 East 39th Street
New York, New York 10016
nkaboolian@abbeyspanier.com
Tel: (212) 889-3700
Fax: (212) 684-5191

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.  INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND: ...................................................................................... 2

III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................................... 4

IV. THE PROPOSED LEAD PLAINTIFF SHOULD BE APPOINTED LEAD
    PLAINTIFF ................................................................................................................... 5

   A. THE PROCEDURE MANDATED BY THE PSLRA……………………………....5

   B. BURTON ROSENFIELD SATISFIES THE PROVISIONS OF THE PSLRA……...6

      1. MOVANT HAS COMPLIED WITH THE PSLRA ............................................. 6

      2. MOVANT HAS THE LARGEST FINANCIAL INTEREST .............................. 7

      3. MOVANT OTHERWISE SATISFIES FRCP RULE 23 ..................................... 7

         (a) MOVANT'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE
             CLASS ......................................................................................................... 8

         (b) MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE
             INTERESTS OF THE CLASS .................................................................... 9

V.  THE COURT SHOULD APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL .... 9

VI. CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Cases

*Bhojwani v. Pistiolis,*
    2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. 2007) .................................................................. 5

*Ferrari v. Impath, Inc.,*
    2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. 2004) .................................................................. 5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................................... 10

*Kaplan v. Gelfond,*
    2007 U.S. Dist. LEXIS 4446 (S.D.N.Y. 2007) .................................................................... 5

*Sczesny Trust v. KPMG LLP,*
    2004 U.S. Dist. LEXIS 18896 (S.D.N.Y. 2004) ................................................................ 11

*Strougo v. Brantley Capital Corp.,*
    2007 U.S. Dist. LEXIS 42015 (S.D.N.Y. 2007) .................................................................. 9

*Vladimir v. Bioenvision,*
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. 2007) ................................................................ 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
    216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................... 10

Statutes

§78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(ii) ..................................................................................................... 4

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ................................................................................................ 7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) .......................................................................................... 9

15 U.S.C. §78u-4(e)(1) ................................................................................................................ 9

Fed.R.Civ.P. 42(a) ....................................................................................................................... 4

Section 21D ......................................................................................................................... passim

I.  **INTRODUCTION**

Burton Rosenfield ("Movant") respectfully submits this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order consolidating all of the above captioned actions, appointing him as the Lead Plaintiff in the consolidated action, and approving Lead Plaintiff's choice of counsel as Lead Counsel for the Class.1

Movant suffered losses of approximately $44,810.00 resulting from Washington Mutual's fraudulent inflation of housing appraisals and the resulting false inflation of Washington Mutual's stock price. Movant believes it has suffered the largest losses of any plaintiff moving to be appointed lead plaintiff for the consolidated actions. Movant is familiar with the applicable provisions governing the appointment of the lead plaintiff in securities class actions, understands his responsibilities to the class, and is willing and able to oversee the prosecution of this action.

Movant believes that he has the largest financial interest in the relief sought by the class. Movant will ensure that the litigation is conducted in the best interests of the members of the class and is not subject to any unique defenses that would render him incapable of adequately representing the class. Therefore, Movant respectfully requests that the Court consolidate all related actions, grant Movant's motion to be appointed lead plaintiff, and approve his selection of lead counsel.

---

[1] Movant is filing in this court because the first case was filed in this Court. At least one other case alleging violations of the federal securities laws was filed in the District Court of Washington. On November 28, 2007, defendants filed a motion before the Judicial Panel on Multidistrict Litigation to have all of the securities, derivative and ERISA cases filed against WaMu transferred to the Western District of Washington for coordinated or consolidated pretrial proceedings. The hearing on this motion is scheduled for January 30, 2008.

II.   **FACTUAL BACKGROUND:**

This is a federal class action brought on behalf of all persons or entities who purchased the securities of Washington Mutual ("WaMu" or the "Company") during the period from July 19, 2006 to November 1, 2007 (the "Class Period"), pursuing remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. WaMu trades on the New York Stock Exchange ("NYSE") under the symbol "WM", is a consumer and small banking company operating primarily in U.S. markets. Headquartered in Seattle, WA, WaMu operates in four main segments: Retail Banking, Card Services, Commercial, and Home Loans. As of December 28, 2007, it had roughly 868,720,000 shares outstanding with a market capitalization of roughly $11.39 billion.

The above-captioned actions allege that defendants knowingly, or with recklessness, issued materially false and misleading statements that misrepresented and failed to disclose that: (a) the Company was experiencing a rise in delinquency rates in its mortgage portfolios; (b) the Company failed to timely record an impairment on its mortgage portfolios; (c) the Company's securities portfolio, which includes assets backed by mortgages, was materially overvalued; and (d) based on the foregoing, defendants' positive statements about the Company's earnings and prospects were lacking in a reasonable basis at all relevant times.

On November 1, 2007, the Attorney General of New York filed a lawsuit accusing WaMu of conspiring with The First American Corporation (NYSE: "FAF") to artificially inflate housing appraisals. According to the New York Attorney General's lawsuit, First American allowed WaMu -- its largest client -- to hand pick appraisers that WaMu knew would bring in appraisal values high enough to permit WaMu's loans to close. According to statements made

2

by the NYAG, but for jurisdictional issues, his office would have pursued an action against WaMu as well.

The complaint filed by the NYAG details a scheme whereby WaMu pressured First American into increasing the appraised values of homes. According to the complaint, WaMu handpicked appraisers who WaMu knew would bring in appraisal values high enough to permit WaMu's loans to close. These inflated appraisals in turn created a greater risk of a complete or partial loss of value in a foreclosure proceeding when the property ultimately was worth less than its appraised value. As a result, many of WaMu's public statements during the class period about its ethical and legal guidelines, its internal controls and its reported financial information were false and misleading.

On October 17, 2007, after the close of the market, WaMu announced its results for the third quarter of 2007 and during a conference call, disclosed that it had suffered a 72% drop in net income for its third quarter of 2007 and would have to set aside up to $1.3 billion in the fourth quarter to cover its loan losses. Although not disclosed at the time, it is now apparent that the writedowns were caused in part by the impairment of mortgages that were originated based on inflated appraisals. WaMu's stock began a steady decline upon the announcement of the quarterly results, declining gradually by over 15% in the days leading to November 1, 2007. On November 1, 2007, following the announcement of the filing of the NYAG complaint, WaMu's share price declined further and ultimately hit a 52-week low of $18.38 on November 8, 2007, one week after the announcement.

## III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Section 21D(a)(3)(B)(ii) of the Exchange Act addresses the issue of consolidation of similar actions filed under the PSLRA:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)(I)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4(a)(3)(B)(ii).

Accordingly, a two-step process is applied in determining lead plaintiff and lead counsel status when consolidation is an issue. First, the Court shall rule on the consolidation issue. Second, after the cases have been consolidated, the Court rules on the lead plaintiff and lead counsel issues.

Movant therefore requests that the Court consolidate the related actions captioned above and then rule on the lead plaintiff and lead counsel issues in this matter. Under Fed.R.Civ.P. 42(a), a timely determination pertaining to consolidation is reasonable and will ultimately benefit the class members' interest in the prompt prosecution of their claims.

There are two actions pending with this Court. Movant believes consolidation is appropriate in the related actions filed with this Court because they involve common questions of law and fact and allege the same or similar claims under the federal securities laws on behalf of the same or similar plaintiff class. In addition, all actions will involve similar issues regarding class certification, and will undoubtedly involve identical discovery of the parties and of non-parties. There is also no reason to believe that defendants would not support consolidation of these actions, as well as any subsequently filed related actions. Accordingly, these Actions

4

should be consolidated for all purposes in the interests of judicial economy and overall efficiency. *Kaplan v. Gelfond*, 2007 U.S. Dist. LEXIS 4446, **4 (S.D.N.Y. 2007) (Courts have broad discretion to consider whether judicial economy favors consolidation); *Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 52139, *12 (S.D.N.Y. 2007) (When securities class action complaints are based on the same "public statements and reports" consolidation is appropriate if actions present common questions of law and fact and there will be no prejudice to parties); *Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, *7 (S.D.N.Y. 2004) (Courts tend to take the view that considerations of judicial economy favor consolidation).

## IV. THE PROPOSED LEAD PLAINTIFF SHOULD BE APPOINTED LEAD PLAINTIFF

### A. THE PROCEDURE MANDATED BY THE PSLRA

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiff to oversee class actions brought under the federal securities laws. Specifically, §21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice informing class members of the action and their right to file a motion for the appointment of lead plaintiff.

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice by not later than 90 days after the date of publication pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this

5

section the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members that the Court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that —
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### B.   BURTON ROSENFIELD SATISFIES THE PROVISIONS OF THE PSLRA

#### 1.   MOVANT HAS COMPLIED WITH THE PSLRA

The first complaint filed against defendants was *Koesterer v. Washington Mutual, Inc. et al*, case number 07-cv-9801, filed on November 5, 2007.  A notice pursuant to the PSLRA was published on November 5, 200 over the PRNewswire. Kaboolian Decl. Ex. A. The notice informed potential class members of the pendency of the action and their right to move to be appointed lead plaintiff and to designate their choice of Lead Counsel within 60 days. Accordingly, pursuant to the PSLRA all motions for lead plaintiff must be filed no later than January 4, 2008. The time period during which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)((3)(A) and (B) expires on January 4, 2008. Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice,

Movant herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movant duly signed a certification stating that he has reviewed a complaint in this action, and is willing to serve as the representative party on behalf of the Class. Kaboolian Decl. Ex. B. The certification demonstrates that Mr. Rosenfield has suffered losses in excess of $44,810 in connection with his purchases of the WaMu stock.

### 2. MOVANT HAS THE LARGEST FINANCIAL INTEREST

The certification demonstrates that during the Class Period, Movant purchased three thousand shares of Washington Mutual common stock at prices artificially inflated by defendants' false and misleading statements and has suffered losses of over $44,810.[2] To the best of his knowledge, Movant has the largest financial interest in the relief sought by the Class. Mr. Rosenfield, therefore, is presumptively the most adequate plaintiff pursuant to the PSLRA. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### 3. MOVANT OTHERWISE SATISFIES FRCP RULE 23

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of

---

[2] Pursuant to §21D(e)(1) of the 1934 Act, the damages for Plaintiff holding their shares through the end of the class period are calculated as "the difference between the purchase or sale price paid or received . . . and the mean trading price of Washington Mutual during the 90 day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. §78u-4(e)(1). The mean trading price of WaMu stock between October 17, 2007 and December 28, 2007 is $17.73 per share. Mr. Rosenfield purchased 2000 shares of WaMu stock at $35 a share on October 15, 2007 and 1000 more shares at $28 a share on October 31, 2007, for a total investment of $98,000.00. Mr. Rosenfield continues to hold all of this shares.

the class. *Strougo v. Brantley Capital Corp.*, 2007 U.S. Dist. LEXIS 42015, **10 (S.D.N.Y. 2007) (Typicality and adequacy are the two requirements of Rule 23(a) that must be addressed in ruling on a motion for lead plaintiff). As detailed below, Movant satisfies the typicality and adequacy requirements of Rule 23(a).

### (a) MOVANT'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS

Typicality arises when a proposed lead plaintiff's claims arise from the same conduct from which other plaintiffs' claims and injuries arise. Possible factual distinctions between plaintiffs' claims do not vitiate typicality, as the same legal theory may control even in the face of differences in fact. *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *25 (S.D.N.Y. 2007) (Typicality is established where claims arise from the same conduct from which other class members' injuries arise); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) (Lead plaintiff claims do not have to be identical to those of other class members); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (Possibility of differences in plaintiffs' factual claims alone will not destroy typicality as the same legal theory may control).

The questions of law and fact here, which predominate over questions that may affect individual claims, include: (a) whether the federal securities laws were violated by defendants' acts; (b) whether defendants' statements during the Class Period omitted and/or misrepresented material facts; (c) whether the defendants acted intentionally or recklessly; (d) whether the market price of WaMu shares were artificially inflated due to the activities complained of; and (e) the extent of damages class members sustained and the appropriate measure of those damages. The typicality requirement is satisfied here because the claims asserted by Movant are

8

based on the same legal theory and arise from the same event or practice or course of conduct that gives rise to the claims of the class members.

### (b) MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party "will fairly and adequately protect the interests in the class." Accordingly, the test for lead plaintiff adequacy is:

> "(1) [W]hether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims."

*Sczesny Trust v. KPMG LLP,* 2004 U.S. Dist. LEXIS 18896, **14-**15 (S.D.N.Y. 2004).

The interests of Movant are clearly aligned with the members of the proposed class. There is no evidence of any antagonism between Movant and the proposed class members. As detailed above, Movant shares substantially similar questions of law and fact with the members of the proposed class, their claims are typical of the members of the class, and they have taken significant steps to advance this litigation. In addition, they have amply demonstrated their adequacy to serve as class representatives by signing a certification affirming their willingness to serve as, and assume the responsibilities of class representatives. Finally, Movant has selected and retained counsel highly experienced in prosecuting securities class actions such as this to represent them. Kaboolian Decl. Ex. C. For these reasons, Movant should be appointed Lead Plaintiff in the consolidated action.

### V. THE COURT SHOULD APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. See §21D(a)(3)(B)(v). Plaintiff Rosenfield has chosen Abbey,

9

Spanier, Rodd, & Abrams, L.L.P. ("Abbey Spanier") to serve as Lead Counsel. The firm has extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Kaboolian Decl. Ex. C.

## VI. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate the related Actions; (ii) appoint Burton Rosenfield as Lead Plaintiff in the consolidated action; and (iii) approve Lead Plaintiff's choice of Abbey Spanier to serve as Lead Counsel.

Dated: January 4, 2008

                              ABBEY SPANIER RODD & ABRAMS, LLP

                              By: /s/ Nancy Kaboolian
                              Nancy Kaboolian (NK 6346)
                              212 East 39th Street
                              New York, New York 10016
                              Telephone: (212) 880-3700
                              Facsimile: (212) 779-2418

                              Proposed Lead Counsel

Samuel R. Simon, Esq.
Jacobs Law Group, P.C.
1800 J.F.K. Boulevard Suite 404
Philadelphia, PA 19103
215-569-9701