# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS KOESTERER, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, DAVID C. SCHNEIDER and THOMAS W. CASEY,<br><br>                Defendants. | Civil Action No.:  07-cv-09801 (CM) |

| | |
|---|---|
| JOEL ABRAMS and BRIAN ROFFE, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, DAVID C. SCHNEIDER and THOMAS W. CASEY,<br><br>                Defendants. | Civil Action No.:  07-cv-09806 (AKH)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MASSACHUSETTS PENSION RESERVES INVESTMENT MANAGEMENT BOARD'S MOTION FOR (1) APPOINTMENT AS LEAD PLAINTIFF, (2) APPROVAL OF ITS SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS, AND (3) CONSOLIDATION OF ALL RELATED ACTIONS** |

| | |
|---|---|
| ROBERT L. GARBER individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, STEPHEN J. ROTELLA, and THOMAS W. CASEY,<br><br>                Defendants. | Civil Action No.: 07-11422 (UA) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii-iv

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF THE FACTS ..................................................... 4

ARGUMENT .............................................................................. 7

A.    PRIM  Intends to Demonstrate That It Has the
      Largest Financial Interest in the Relief Sought by the Class ................ 7

          Approximate Losses............................................................ 7

          Total Shares and Net Shares Purchased................................ 8

          Net Funds Expended ............................................................ 9

B.    PRIM Is A Sophisticated Institutional Investor
      That Satisfies the Requirements of Rule 23........................................ 10

C.    The Court Should Approve PRIM's Choice of Lead Counsel ............. 11

D.    The Related Actions Should Be Consolidated...................................... 12

CONCLUSION............................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................     9, 10, 11

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)..............................................................     10

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................     *passim*

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................     11, 12

*Sofran v. LaBranche & Co., Inc.*,
    220 F.R.D. 398 (S.D.N.Y. 2004) ........................................................     12

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................     10

## STATUTES & RULES

15 U.S.C. § 77z-1(a)(3)(B)(i) ..........................................................     2

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ....................................................     2

15 U.S.C. § 78u-4(a)(3)(A)..............................................................     7

15 U.S.C. § 78u-4(a)(3)(B) .............................................................     1, 9

15 U.S.C. § 78u-4(a)(3)(B)(i) ..........................................................     2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). ...................................................     2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)...............................................     10

15 U.S.C. § 78u-4(a)(3)(B)(v) .........................................................     11

## UNREPORTED DECISIONS

*Lax v. First Merchants Acceptance Corp.*,
    No. 97cv02715, 1997 WL 461036
     (N.D. Ill. Aug. 11, 1997)......................................................................... 2-3

*Montoya v. Mamma.com Inc.*,
    No. 05cv2313, 2005 WL 1278097
    (S.D.N.Y. May 31, 2005)........................................................................ 3, 8

*Pinkowitz v. Elan Corp., PLC*,
    No. 02cv865, 2002 WL 1822118
    (S.D.N.Y. July 29, 2002) ...................................................................... 12

*Richardson v. TVIA, Inc.*,
    No. 06cv06304, Slip Copy, 2007 WL 1129344
    (N.D. Cal. April 16, 2007) .................................................................... 8, 9, 11

*Schonfield v. Dendreon Corp.*,
    07cv00800, Slip Copy, 2007 WL 2916533, at *3
    (W.D. Wash. Oct. 4, 2007) .................................................................... 3, 10

*Strougo v. Brantley Capital Corp.*,
    243 F.R.D. 100
    (S.D.N.Y. 2007) ..................................................................................... 3

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    No. 05cv04617, 2006 WL 197036
    (S.D.N.Y. Jan. 25, 2006)....................................................................... 7-8, 11

## OTHER

141 Cong. Rec. H13691-08,
H13700, H. R. Conf. Rpt. No. 104-369
104th Cong. 1st Sess. (Nov. 28, 1995) ........................................................ 11

H.R. Conf. Rep. No. 104-369 (1995)
*reprinted in* 1995 U.S.C.C.A.N. 679, 690 ................................................... 3, 10

The Massachusetts Pension Reserves Investment Management Board ("PRIM") respectfully submits this memorandum in support of its motion for an order: (1) appointing PRIM as Lead Plaintiff pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approving its selection of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel and (3) consolidating all related actions.[1]

## PRELIMINARY STATEMENT

New York State Attorney General Andrew Cuomo, on October 31, 2007, filed a lawsuit in which he charged that Washington Mutual, Inc. ("Washington Mutual" or the "Company") pressured First American Corporation's wholly-owned subsidiary, First American eAppraiseIT ("EA"), an appraisal management company, to inflate appraisals on real property on which Washington Mutual was issuing mortgages.  Cuomo's complaint cited numerous internal e-mails from what appeared to be a more than year long campaign by Washington Mutual to secure inflated appraisals from EA so Washington Mutual could close on more home loans than it otherwise could have.  Washington Mutual's stock price fell in reaction to the news of the Cuomo lawsuit, falling from $27.88 per share on October 31, 2007 to $25.75 per share on November 1, 2007.  This news and stock drop came just two weeks after Washington Mutual surprised investors, on October 17, 2007, when it announced large increases to its loan loss reserves for its 2007 fourth quarter and 2007 full year results.  The stock price fell on October

---

[1]       In addition to the class actions filed in this District whose captions appear above, a related class action alleging identical claims was filed in the U.S. District Court for the Western District of Washington.  *See Nelson v. Woods et al.,* Docket No. 07cv1809.  PRIM has also filed a motion to be appointed Lead Plaintiff in the action pending in the Western District of Washington.  On November 28, 2007, Defendant Washington Mutual, Inc. filed a motion with the United States Judicial Panel on Multidistrict Litigation to transfer the actions pending in the U.S. District Court for the Southern District of New York to the U.S. District Court for the Western District of Washington.

1

17, 2007 by $2.55 per share on this news.  Then, on November 6, 2007, Cuomo subpoenaed Fannie Mae and Freddie Mac with regard to loans sold to them by Washington Mutual which were supported by inflated appraisals.  Fannie Mae, in response, stated that if Washington Mutual sold it loans that were the subject of inflated appraisals, it would required those loans to be repurchased by Washington Mutual.  The Company's stock price fell a total of $4.19 per share on this news.

The shareholder lawsuits filed against Washington Mutual charge that Washington Mutual misled investors with regard to the quality of its loan portfolio, made misleading statements about the underlying values of the real property supporting its loans, and understated its loan loss reserves causing investors to purchase Washington Mutual stock at inflated prices and lose money when corrective disclosures were made.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define the term "largest financial interest," a broad body of case law establishes four key factors that should guide the Court's analysis.  That analysis considers: (1) the number of shares purchased; (2) the net number of securities purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended to acquire those shares; and (4) the approximate losses suffered by the movant.  *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants*

2

*Acceptance Corp.*, No. 97cv02715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *in accord Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007); *Montoya v. Mamma.com Inc.*, No. 05cv2313, 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005); *Schonfield v. Dendreon Corp.*, 07cv00800, Slip Copy, 2007 WL 2916533, at *3 (W.D. Wash. Oct. 4, 2007).[2]

        As demonstrated below, PRIM is the most adequate plaintiff in this case.  PRIM oversees the Pension Reserves Investment Trust ("PRIT") which, as of March 31, 2007, had total assets of $48.2 billion.  PRIT is a pooled investment trust which invests the assets of the Massachusetts State Teachers' and Employees' Retirement System and the assets of various county, authority, district and municipal retirement systems that chose to invest in the Trust.  PRIM consists of appointees of the Treasurer and Governor of Massachusetts, members of the various retirement systems and is chaired by the Treasurer of Massachusetts.  PRIM, a sophisticated institutional investor, is precisely the sort of institutional investor Congress envisioned would lead securities class actions when it enacted the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("increasing the role of institutional investors in class actions will ultimately benefit the class and courts by improving the quality of representation in securities class actions").  PRIM purchased a total of 437,000 shares of Washington Mutual between April 18, 2006 and November 1, 2007 (the "Class Period"), expending a total of $16,178,668 to acquire those shares.  PRIM suffered losses of $7,035,421 based on a first-in, first-out ("FIFO") analysis, $4,208,534 based on a last-in, first-out ("LIFO") analysis, and $4,203,832 based on a net calculation from PRIM's trading in Washington Mutual during the

---

[2]        Courts commonly refer to the above-mentioned factors as the "*Olsten*" and/or "*Lax*" factors.  For purposes of this memorandum, we will refer to them as the *Olsten* factors.

Class Period.[3]  By applying the *Olsten* factors, PRIM intends to show that it has the largest financial interest and, as such, is the most adequate lead plaintiff to direct this litigation.

## STATEMENT OF THE FACTS

Founded in 1889 and headquartered in Seattle, Washington, Washington Mutual is the largest U.S. savings and loan institution.  Washington Mutual is also one of the nation's largest home mortgage lenders, originating $116 billion in residential mortgage loans in the first three quarters of 2007 alone.  After Washington Mutual originates loans, it either sells them to third-party purchasers, including government sponsored enterprises ("GSEs") such as Fannie Mae and Freddie Mac, or holds them in its home loans portfolio.  As of September 30, 2007, the value of the loans Washington Mutual held in its home loans portfolio totaled approximately $237 billion, and made up about two-thirds of the Company's overall assets of approximately $330 billion.  In addition, about $173 billion of its $330 billion in home loan assets consisted of higher-risk loans such as adjustable rate mortgages and home equity loans and lines of credit.

Plaintiffs allege that during the Class Period, the Defendants engaged in a fraudulent scheme to artificially inflate the values of its property appraisals, mislead investors as to Washington Mutual's level of exposure to the deteriorating mortgage market thereby causing the Company to overstate its loan assets and under-reserve for loan losses.  Washington Mutual misled the investing public by disseminating materially false and misleading statements and/or concealing material adverse facts regarding the Company's true performance, profitability, and financial prospects.   Key to Washington Mutual's home loan origination business is the appraised values of the homes being purchased.  During the Class Period, Washington Mutual colluded with a third party appraisal company, EA, to artificially inflate the values of its property

---

[3]        As the first partial corrective disclosure occurred on October 17, 2007, the net share calculation has been conducted up to, and including, this partial corrective disclosure.

appraisals. These inflated property appraisals distorted Washington Mutual's loan-to-value ratios – a key predictor used to gauge future loan performance – causing the risk of default on these inflated appraised loans to appear less than it actually was. In its quarterly and annual financial statements, Washington Mutual repeatedly touted that the majority of its home loan portfolio consisted of loans with high loan-to-value ratios, misleading PRIM and other members of the Class about the quality of Washington Mutual's loan portfolio. Throughout the Class Period, Washington Mutual misrepresented its loan-to-value ratios and that these ratios were distorted, and actually were much lower, as a result of using inflated appraisals for its loans.

Washington Mutual also overstated the value of its home loan portfolio and understated its reserves for potential loan losses by using inflated appraisals for its loans. In particular, Washington Mutual overstated its earnings by maintaining an inadequate reserve against its loan losses. As a result of Defendants' misconduct, Washington Mutual's stock traded at artificially high prices during the Class Period.

On October 17, 2007, after the market closed, Washington Mutual surprised investors by revealing that it would dramatically increase loan loss reserves for its 2007 fourth quarter and full-year 2007. This stood in stark contrast to rosier announcements made just weeks earlier. In reaction to this news Washington Mutual's stock dropped from $33.07 per share on October 17, 2007, to close at $30.52 per share on October 18, 2007. On November 1, 2007, the actual reason for the Company's need to increase loan loss reserves became clear when New York Attorney General Andrew Cuomo announced that he was filing a lawsuit against EA and EA's parent, First American Corporation, detailing Washington Mutual's collusion with EA to improperly inflate property appraisals. These inflated appraisals devalued the home loans originated by Washington Mutual, leading to the need to increase loan loss reserves as disclosed on October

17, 2007. Following news of Cuomo's lawsuit, Washington Mutual's stock declined in value by $2.13 per share, dropping from $27.88 per share on October 31, 2007 to close at $25.75 per share on particularly heavy trading volume on November 1, 2007. Washington Mutual's stock continued to decline the following day, November 2, 2007, falling an additional $1.94 per share to close at $23.81 per share.

Then, on November 6, 2007, Cuomo announced that he was issuing subpoenas to two of Washington Mutual's biggest third-party loan purchasers, Fannie Mae and Freddie Mac, in order to determine whether the Washington Mutual loans purchased by them were supported by inflated appraisals. The following day, on November 7, 2007, Fannie Mae issued a press release announcing its intention to require Washington Mutual to repurchase any mortgage loans that it sold to Fannie Mae that were underwritten pursuant to inflated appraisals. In reaction to this news, Washington Mutual's stock fell even further, falling from $24.23 per share on November 6, 2007 to close at $20.04 per share on November 7, 2007, a loss in value of $4.19 per share. Washington Mutual's stock continued to decline the following day, November 8, 2007, to close at $19.39 per share.

The first securities fraud complaint against Defendants was filed on November 5, 2007 in the U.S. District Court for the Southern District of New York and asserts claims on behalf of all purchasers of the publicly traded securities of Washington Mutual. The first notice of the pendency of this action was published that same day. *See* Declaration of Jeffrey C. Block In Support of PRIM's Motion for (1) Appointment as Lead Plaintiff, (2) Approval of Its Selection of Counsel as Lead Counsel, and (3) Consolidation of all Related Actions ("Block Decl."), Ex.

A.  In total, three complaints have been filed, two in the U.S. District Courts for the Southern District of New York and one in the Western District of Washington.[4]

The PSLRA permits any member of the purported class to move for appointment as lead plaintiff within 60 days of the publication of the first notice that a class action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A).  PRIM has timely moved under the PSLRA.

## ARGUMENT

### A.    PRIM  Intends to Demonstrate That It Has the Largest Financial Interest in the Relief Sought by the Class

PRIM believes that it has the largest financial interest in the relief sought by the class and is the presumptive lead plaintiff.  Specifically, PRIM's financial interest is demonstrated by the:

- $7,035,421 in losses (calculated using the FIFO methodology) it suffered from its investment in Washington Mutual shares during the Class Period;

- 437,000 total shares of Washington Mutual it purchased during the Class Period;

- 245,100 net shares of Washington Mutual it purchased before Washington Mutual's partial disclosure on October 17, 2007;[5] and

- $4,203,832 net funds it expended to purchase Washington Mutual shares during the Class Period.

**Approximate Losses:**  The approximate losses suffered by the movant is the most significant of the four *Olsten* factors.  In fact, "plaintiffs' losses may outweigh the other *Olsten* factors in terms of relevance in determining who has the largest financial interest." *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05cv04617, 2006 WL 197036, at *3 (S.D.N.Y. Jan.

---

[4]    The complaints allege violations of Sections 10(b) and 20(a) of the Exchange Act, on behalf of purchasers of Washington Mutual securities against Washington Mutual and various officers and directors of the Company.

[5]    As discussed in more detail below, although PRIM sold more shares than it acquired during the entire Class Period, the vast majority of PRIM's sales occurred *after* Washington Mutual's first partial corrective disclosure on October 17, 2007.  As such, PRIM would not be considered a net seller. *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05cv04617, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (appointing net seller as lead plaintiff).

25, 2006) (appointing movant with the greatest financial losses even though the remaining *Olsten* factors weighed in favor of another movant); *in accord Richardson v. TVIA, Inc.,* No. 06cv06304, Slip Copy, 2007 WL 1129344, at *3 (N.D. Cal. April 16, 2007) (stating that, of the *Olsten* factors, the approximate losses is the most determinative in identifying the plaintiff with the largest financial interest).

In determining a movant's approximate losses, courts have employed the FIFO, LIFO, or net method.  Under a FIFO analysis, PRIM suffered total losses of $7,035,421, under a LIFO analysis, it suffered losses of $4,208,534 and, based on a net calculation, PRIM suffered $4,203,832 in losses.  *See* Certification of PRIM, Block Decl. at Exh. B; and loss calculations for PRIM, Block Decl. at Exh. C.  Many courts have ruled that either net losses or LIFO losses are a better indicator of an investors true financial interest in the litigation.

**Total Shares and Net Shares Purchased:**  Total shares purchased equals the number of shares purchased during the Class Period while net shares purchased equals the number of shares purchased less the number of shares sold.  PRIM purchased a total of 437,000 shares during the Class Period and retained 245,100 of these shares prior to the Company's partial corrective disclosure on October 17, 2007.  Although PRIM subsequently sold its shares following the October 17, 2007 partial disclosure, Courts have specifically noted that selling stock after a partial disclosure does not make an investor a net seller.  *Weiss*, 2006 WL 197036, at *4; *see also Montoya v. Mamma.com*, No. 05cv2313, 2005 WL 1278097, at *2-3 (S.D.N.Y. May 31, 2005) (appointing as lead plaintiff a group that included potential net sellers).

In *Weiss*, the Court appointed the plaintiff that suffered the greatest approximate loss even though another movant had purchased more gross and net shares during the class period, as well as expended more funds during the class period, than the plaintiff with the largest financial

loss. *Id.* at *3. The Court noted that the second factor (net shares purchased) "diminishes in importance upon the realization that [] partial corrective disclosures were reaching investors on a periodic basis." *Id.* at *4. The Court further noted that plaintiff had bought 83.4% of its shares prior to the initial partial disclosure and sold following the partial disclosure. *Id.; see also Richardson*, 2007 WL 1129344, at *3 (N.D. Cal. April 16, 2007) (appointing net seller as lead plaintiff since net seller was also a net *loser* that suffered more losses than any other movant seeking lead plaintiff status). In the instant case, PRIM purchased approximately 90% of its shares prior to Washington Mutual's partial corrective disclosure on October 17, 2007 and only sold most of its shares following this partial disclosure. *See* Certification of PRIM, Block Decl. at Exh. B; and the PRIM Board's loss calculation, Block Decl. at Exh. C (depicting PRIM's losses in Washington Mutual shares during the Class Period).

**Net Funds Expended:** The net funds an investor expended during the relevant period equals the difference between the total funds the investor spent to purchase those securities minus the funds it received from sales of those securities. PRIM's net losses were $4,203,832 in Washington Mutual shares during the Class Period. Thus, no argument can be made that PRIM profited from its sales during the Class Period since it suffered a net loss as a result of Washington Mutual's inflated stock price.

In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B) PRIM is the presumptive "most adequate plaintiff" and should be appointed as lead plaintiff in this action. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001).

**B.    PRIM Is A Sophisticated Institutional Investor
         That  Satisfies the Requirements of Rule 23**

The PSLRA further provides that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp. Litig.*, 264 F.3d at 222.  At the lead plaintiff stage, a movant need only make "a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met."  *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schonfield v. Dendreon Corp.*, No. 07cv00800, 2007 WL 2916533, at *4 (W.D. Wash. Oct. 4, 2007).

PRIM has submitted a Certification in which it affirms its understanding of the duties it owes to the members of the Class by expressing a commitment to oversee the prosecution of the instant litigation.  *See* Block Decl. at Exh. B.  Through this Certification, PRIM accepts the fiduciary obligations it will undertake if it is appointed lead plaintiff in this action.

Moreover, PRIM is a sophisticated public pension fund.  As such, it is the model lead plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class").

PRIM also satisfies the typicality requirements of Rule 23.  "The typicality threshold is satisfied 'where the claims arise from the same conduct from which the other class members' claims and injuries arise.'"  *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (internal citation omitted).  PRIM's interests are the same as those of other Class members.  For instance, PRIM, like other Class members, seeks to hold Defendants liable for the consequences of their

violations of the federal securities laws. In addition, there are no facts that indicate any conflicts of interest between PRIM and the other Class members. *See Weiss,* 2006 WL 197036, at *4 (noting that net seller satisfied the adequacy and typicality requirements of Rule 23); *Richardson*, 2007 WL 1129344, at *3-4 (same); *Montoya*, 2005 WL 1278097, at *2 (indicating that "in-and-out purchasers" that sold a substantial portion of their shares following a partial disclosure can allege that "the subject of the fraudulent statement or omissions was the cause of the actual loss suffered"). Indeed, the events and course of conduct that give rise to PRIM's claims are the same events and course of conduct that give rise to the claims of the Class. Since PRIM's claims are based on the same legal theories and arise from the same events giving rise to the claims of other Class members, the typicality requirement of Rule 23 is satisfied.

**C.      The Court Should Approve PRIM's<br>Choice of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval. *See* Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d at 276 (holding that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class." *See* Statement of Managers -- The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 62, 104th Cong. 1st Sess. (Nov. 28, 1995). PRIM has selected Berman DeValerio to serve as Lead Counsel. Berman DeValerio has been highly successful in prosecuting numerous securities fraud class actions and other complex class actions around the country and is well qualified to represent the Class. *See, e.g.,*

Berman DeValerio's Firm Biography attached as Exhibit D to the Block Decl.   Accordingly, the
Court should approve PRIM's selection of Berman DeValerio as Lead Counsel for the Class.

### D.    The Related Actions Should Be Consolidated

PRIM believes that the securities class actions filed to date relating to the same or similar
factual and legal issues are:

| Abbreviated Case Name | Case No. |
| --- | --- |
| *Koesterer v. Washington Mutual, Inc. et al.* | 07-cv-9801 |
| *Abrams et al. v. Washington Mutual, Inc. et al.* | 07-cv-9806 |
| *Garber v. Washington Mutual, Inc. et. al.* | 07-cv-11422 |
| *Nelson v. Woods et al.* | 07-cv-1809 (W.D. Wash.) |

These actions present virtually identical factual and legal issues, as they arise out of the
same alleged misstatements regarding the Company's violations of the federal securities laws.
Accordingly, consolidation is appropriate here.  *See Kaplan*, 240 F.R.D. at 91 (S.D.N.Y. 2007)
(finding that differences in defendants or class periods "do not render consolidation inappropriate
if the cases present sufficiently common questions of fact and law, and the differences do not
outweigh the interests of judicial economy served by consolidation"); *Pinkowitz v. Elan Corp.,
PLC,* No. 02cv865, 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (granting consolidation
despite divergence in the defendants, class periods, and causes of action).

The complaints in these actions "rely upon the same series of allegedly false and
misleading public statements and omissions."  *Olsten*, 3 F. Supp. 2d at 293; *Sofran v. LaBranche
& Co., Inc*., 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (consolidation proper where two complaints
assert "essentially similar and overlapping claims").   Despite the different start dates and
defendants, all of the securities class actions filed to date rely on common questions of fact and
law; to wit, that defendants' statements to the investing public misrepresented or omitted to state
material facts in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5

promulgated thereunder.  In addition, consolidation of these actions would be in the interests of judicial economy.

## CONCLUSION

For all the above reasons, PRIM respectfully requests that the Court: (1) appoint PRIM as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act; (2) approve PRIM's selection of Lead Counsel for the Class; (3) consolidate all related actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: January 4, 2008                              Respectfully submitted,

**ZWERLING, SCHACHTER
  & ZWERLING, LLP**

By:   ___s/ Richard A. Speirs_____
          Richard A. Speirs (RS8872)

41 Madison Avenue
New York, NY  10010
Telephone: (212) 223-3900
Facsimile:  (212) 371-5969
E-mail:  rspeirs@zsz.com

**BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO**
Jeffrey C. Block (JCB-0387)
Abigail R. Romeo
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

*Counsel for PRIM and Proposed Lead Counsel for
the Class*

G:Securities/WashingtonMutual/Pleadings/1-4-08_WashingtonMutual_Leadplaintiff_BriefSDNYII.doc