# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS KOESTERER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, DAVID C. SCHNEIDER, and THOMAS W. CASEY,<br><br>    Defendants. | Electronically Filed<br><br>Civil Action No. 1:07-CV-09801-CM<br><br>(ECF Case) |
| JOEL ABRAMS and BRIAN ROFFE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, STEPHEN J. ROTELLA, and THOMAS W. CASEY,<br><br>    Defendants. | Civil Action No. 1:07-CV-09806-AKH |
| ROBERT L. GARBER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>WASHINGTON MUTUAL, INC., KERRY K. KILLINGER, STEPHEN J. ROTELLA, and THOMAS W. CASEY,<br><br>    Defendants. | Civil Action No. 1:07-CV-11422-UA |

**DECLARATION OF GEOFFREY C. JARVIS IN SUPPORT OF
THE MOTION OF THE WAMU INSTITUTIONAL INVESTOR GROUP TO
CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR
<u>APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

Geoffrey C. Jarvis declares under penalty of perjury this day 4th day of January, 2008:

1.      I am a partner at the law firm of Grant & Eisenhofer P.A.  I submit this declaration in support of the Motion of City of Philadelphia Board of Pensions and Retirement, Alamada County Employees' Retirement Association, Helaba Invest Kapitalanlagegesellschaft mbH, and Metzler Asset Management GmbH (collectively, the "WaMu Institutional Investor Group") To Consolidate Actions, To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Lead Counsel.

2.      Attached hereto as Exhibit A is a true are true and correct copies of the signed certifications of the members of the WaMu Institutional Investor Group pursuant to the requirements of the Private Securities Litigation Reform Act of 1995.  15 U.S.C. § 78u-4(a)(2).

3.      Attached hereto as Exhibit B is a true and correct copy of the notice to class members concerning the first-filed of the above-captioned actions that was published on November 5, 2007 on *PR Newswire*, advising the public of the pendency of a class action filed on behalf of shareholders of Washington Mutual Inc. ("WaMu").

4.      Attached hereto as Exhibit C is a true and correct copy of the firm biography for Schiffrin Barroway Topaz & Kessler, LLP, one of the law firms seeking the Court's approval as Lead Counsel.

5.      Attached hereto as Exhibit D is a true and correct copy of the firm biography for Grant & Eisenhofer P.A., one of the law firms seeking the Court's approval as Lead Counsel.

I hereby declare under penalty of perjury that the foregoing is true and correct.

    *s/ Geoffrey C. Jarvis*    
    GEOFFREY C. JARVIS

# EXHIBIT A

### CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

City of Philadelphia Board of Pensions and Retirement ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the Complaint filed in connection with this matter.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Attached in Schedule A are Plaintiff's transactions in Washington Mutual, Inc. (NYSE: WM) securities during the Class Period.

5.     I, Donald C. Marino, Chair, Litigation Group for the Law Department of the City of Philadelphia, am authorized to make legal decisions on behalf of City of Philadelphia Board of Pensions and Retirement.

6.     Plaintiff is currently serving or has served as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification in the following:

*In re Coca-Cola Enterprises, Inc. Sec. Litig.*, No. 1:06-CV-00275-TWT (N.D. Ga.)

*Garber v. KLA-Tencor Corp.*, No. 3:06-cv-4065-MJJ (N.D. Cal.)

*Andropolis v. Red Robin Gourmet Burgers, Inc., et al.*, No. 1:05-CV-01536 (D. Colo.)

*Hill, et al. v. Tribune Co., et al.*, Consolidated Civil No. 1:05-CV-02602 (N.D. Ill.)

*In re R&G Financial Corp. Sec. Litig.*, Master File No. 05-4186 (JES) (S.D.N.Y.)

7.     Plaintiff has sought to serve as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification in the following:

*Johnson v. Dana Corp., et al.*, No. 3:05-CV-07388-JGC (N.D. Ohio)

*Greenberg v. American Home Mortgage Investment Corp.*, No. 07-CV-3152 (E.D.N.Y.)

*Eastwood Enterprises, LLC v. Farha*, No. 8:07-cv-1940 (M.D. Fla.)

*Hubbard v. BankAtlantic Bancorp, Inc.*, No. 07-cv-61623 (S.D. Fla.)

8.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __3₁/__ day of January, 2007.

City of Philadelphia Board of Pensions and Retirement

By: _____

Mr. Donald C. Marino
*Chair, Litigation Group for the*
*Law Department of the City of Philadelphia*

**City of Philadelphia Board of Pensions and Retirement**

## SCHEDULE A

| Date | Purchase or Sale | Type of Securities | Number of Securities | Price of Securities |
|---|---|---|---|---|
| 5/24/2006 | Purchase | Com Stk | 1,980 | 44.7458 |
| 6/26/2006 | Purchase | Com Stk | 5,627 | 44.8320 |
| 7/28/2006 | Purchase | Com Stk | 1,790 | 45.0300 |
| 7/28/2006 | Purchase | Com Stk | 5,484 | 44.7250 |
| 8/30/2006 | Purchase | Com Stk | 8,874 | 42.4440 |
| 9/25/2006 | Purchase | Com Stk | 2,081 | 42.9982 |
| 10/2/2006 | Purchase | Com Stk | 7,173 | 43.1100 |
| 10/5/2006 | Purchase | Com Stk | 32,500 | 43.5245 |
| 10/27/2006 | Purchase | Com Stk | 6,270 | 42.6440 |
| 11/15/2006 | Purchase | Com Stk | 1,840 | 43.0600 |
| 2/13/2007 | Purchase | Com Stk | 12,100 | 44.4924 |
| 2/14/2007 | Purchase | Com Stk | 10,200 | 45.2964 |
| 2/15/2007 | Purchase | Com Stk | 7,500 | 45.0091 |
| 2/16/2007 | Purchase | Com Stk | 7,200 | 45.1426 |
| 2/20/2007 | Purchase | Com Stk | 10,500 | 45.4219 |
| 3/6/2007 | Purchase | Com Stk | 31,800 | 41.7325 |
| 3/28/2007 | Purchase | Com Stk | 8,525 | 40.3956 |
| 4/27/2007 | Purchase | Com Stk | 6,593 | 42.3633 |
| 5/16/2007 | Purchase | Com Stk | 11,800 | 42.8300 |
| 5/22/2007 | Purchase | Com Stk | 34,391 | 43.7072 |
| 5/29/2007 | Purchase | Com Stk | 7,551 | 43.4370 |
| 5/31/2007 | Purchase | Com Stk | 1,413 | 43.7400 |
| 6/20/2007 | Purchase | Com Stk | 1,600 | 42.8500 |
| 6/22/2007 | Purchase | Com Stk | 1,161 | 42.6300 |
| 6/29/2007 | Purchase | Com Stk | 445 | 43.2700 |
| 8/15/2007 | Purchase | Com Stk | 18,900 | 34.2338 |
| 8/15/2007 | Purchase | Com Stk | 11,900 | 34.4250 |
| 8/15/2007 | Purchase | Com Stk | 4,600 | 34.2190 |
| 8/16/2007 | Purchase | Com Stk | 9,100 | 32.6349 |
| 9/19/2007 | Purchase | Com Stk | 12,600 | 38.3200 |
| 10/22/2007 | Purchase | Com Stk | 1,370 | 29.0470 |
| 10/25/2007 | Purchase | Com Stk | 17,200 | 27.2317 |
| 11/27/2007 | Purchase | Com Stk | 27,600 | 17.2668 |
| 12/4/2007 | Purchase | Com Stk | 1,863 | 18.9200 |
| 5/2/2006 | Sale | Com Stk | 2,520 | 44.7991 |
| 5/3/2006 | Sale | Com Stk | 450 | 45.0658 |
| 6/23/2006 | Sale | Com Stk | 0.227 | 40.0441 |

**City of Philadelphia Board of Pensions and Retirement**

| | | | | |
|---|---|---|---|---|
| 10/12/2006 | Sale | Com Stk | 21,979 | 43.5800 |
| 10/12/2006 | Sale | Com Stk | 10,521 | 43.5800 |
| 11/15/2006 | Sale | Com Stk | 1,840 | 43.0600 |
| 11/17/2006 | Sale | Com Stk | 1,840 | 43.1050 |
| 11/29/2006 | Sale | Com Stk | 8,298 | 43.1850 |
| 12/26/2006 | Sale | Com Stk | 8,874 | 45.5730 |
| 1/26/2007 | Sale | Com Stk | 1,100 | 45.3100 |
| 1/29/2007 | Sale | Com Stk | 8,700 | 44.4300 |
| 2/12/2007 | Sale | Com Stk | 2,347 | 43.7274 |
| 2/22/2007 | Sale | Com Stk | 251 | 44.7200 |
| 2/23/2007 | Sale | Com Stk | 8,286 | 43.9250 |
| 2/28/2007 | Sale | Com Stk | 3,500 | 42.9125 |
| 5/17/2007 | Sale | Com Stk | 2,932 | 42.9756 |
| 5/22/2007 | Sale | Com Stk | 1,590 | 44.0800 |
| 6/20/2007 | Sale | Com Stk | 1,161 | 43.3291 |
| 6/25/2007 | Sale | Com Stk | 1,600 | 42.6634 |
| 6/25/2007 | Sale | Com Stk | 1,160 | 42.6300 |
| 7/13/2007 | Sale | Com Stk | 4,048 | 42.6450 |
| 7/24/2007 | Sale | Com Stk | 2,922 | 39.0900 |
| 7/25/2007 | Sale | Com Stk | 4,047 | 39.1548 |
| 8/13/2007 | Sale | Com Stk | 48,049 | 35.9463 |
| 8/14/2007 | Sale | Com Stk | 3,131 | 34.4900 |
| 8/15/2007 | Sale | Com Stk | 17,700 | 32.8142 |
| 8/21/2007 | Sale | Com Stk | 3,600 | 37.4400 |
| 8/21/2007 | Sale | Com Stk | 6,800 | 37.7156 |
| 8/29/2007 | Sale | Com Stk | 3,130 | 36.1790 |
| 8/30/2007 | Sale | Com Stk | 16,400 | 36.1820 |
| 9/13/2007 | Sale | Com Stk | 3,577 | 35.9027 |
| 9/19/2007 | Sale | Com Stk | 12,600 | 38.3200 |
| 9/24/2007 | Sale | Com Stk | 3,576 | 36.3700 |
| 9/25/2007 | Sale | Com Stk | 12,600 | 35.4656 |
| 11/8/2007 | Sale | Com Stk | 17,200 | 19.6189 |
| 12/10/2007 | Sale | Com Stk | 1,855 | 19.1048 |
| 12/20/2007 | Sale | Com Stk | 23,800 | 14.1860 |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Alameda County Employees' Retirement Association ("ACERA" or "Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.    ACERA did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

2.    ACERA is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.    Attached in Schedule A are Plaintiff's transactions in Washington Mutual, Inc. (NYSE: WM) securities during the Class Period.

4.    ACERA has fully reviewed the facts and allegations of the complaints filed in this action and has authorized the filing of the motion for appointment as lead plaintiff on its behalf in this action.

5.    We, Robert L. Gaumer, General Counsel, and Charles Conrad, General Manager, are authorized to make legal decisions on behalf of ACERA.

6.    Plaintiff intends to actively monitor and vigorously pursue this action for the benefit of the class and has retained the law firm of Schiffrin Barroway Topaz & Kessler, LLP, which has extensive experience in securities litigation and in the representation of institutional investors, to represent ACERA in this action.

7.    ACERA will endeavor to provide fair and adequate representation and work directly with the efforts of Class counsel to ensure that the largest recovery for the Class consistent with good faith and meritorious judgment is obtained.

8.      ACERA is currently serving or has served as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification in the following:

*In re Coca-Cola Enterprises, Inc. Sec. Litig.*, No. 1:06-CV-00275-TWT (N.D. Ga.)

9.      Plaintiff has otherwise sought to serve as a representative party for a class action filed under the federal securities laws during the three years prior to the date of this Certification in the following:

*Mizzaro v. Home Depot, Inc.*, No. 1:06-CV-1151 (ODE) (N.D. Ga.)
*Pappas v. Countrywide Financial Corp, et. al.*, No. CV 07-5295 (ODW) (C.D. Ca.)

10.     ACERA will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this __19th__ day of December, 2007.

Alameda County Employees' Retirement Association

By: _____

Mr. Robert L. Gaumer
*General Counsel*

_____

Mr. Charles Conrad
*General Manager*

**Alameda County Employees' Retirement Association**

## SCHEDULE A

| Date | Purchase or Sale | Type of Securities | Number of Securities | Price of Securities |
|---|---|---|---|---|
| 11/22/2006 | Purchase | Com Stk | 20,000 | 42.9171 |
| 11/22/2006 | Purchase | Com Stk | 27,900 | 42.9491 |

**Helaba** *Invest*

Kapitalanlagegesellschaft mbH
Junghofstraße 24
60311 Frankfurt am Main

## CERTIFICATION OF HELABA INVEST KAPITALANLAGEGESELLSCHAFT mbH

The undersigned, *Uwe Trautmann* and *ppa. Andreas Präßigheuer,*
*Managing Director of HelabaInvest*
make this Certification pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4, and states as

follows:

1.    We have reviewed the Complaint against Washington Mutual, Inc.  ("WaMu")

and are duly authorized to make this Certification on behalf of Helaba Invest

Kapitalanlagegesellschaft mbH ("Helaba").

2.    We have reviewed the records of Helaba's transactions in the securities of WaMu

for the proposed class period ("Class Period").  Those transactions are listed in the chart attached

as Schedule A to this Certification.

3.    Helaba intends to actively monitor and vigorously pursue this actions for the

benefit of the class, rather than simply relying on its attorneys.  Helaba has retained the law firms

of Grant & Eisenhofer P.A. and Diaz Reus Rolff & Targ LLP to represent it.  These firms are

knowledgeable and experienced in securities law and litigation, particularly with regard to the

role and responsibilities of institutional investors in class actions.

4.    Like other investors who purchased WaMu securities during the Class Period,

Helaba believes that its losses occurred as a result of the defendants' fraudulent conduct and

violations of the securities laws.  Helaba believes that its claims against the defendants are

typical of those of other members of the class.

5.    Helaba did not purchase the securities that are the subject of the various

complaints at the direction of counsel or to participate in any private action arising under the

federal securities laws.  Helaba invested in WaMu solely for its own business purposes.

**Helaba** *Invest*
Kapitalanlagegesellschaft mbH
Junghofstraße 24
60311 Frankfurt am Main

6.      Helaba is willing to serve as the representative party on behalf of the class of
WaMu security holders who invested during the Class Period.  Helaba intends to pursue this
litigation for the best interests of all class members and take whatever steps are necessary
regardless of geographic location.

During the three-year period preceding the date of this Certification, Helaba has not sought to
serve as a representative party for a class in an action under the federal securities laws in a
securities class action.

7.      Helaba will not accept any payment for serving as representative party on behalf
of the class beyond its *pro rata* share of any recovery, except as ordered and approved by the
Court.

We declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct.

Dated: January  2 , 2008        **Helaba** *Invest*
                                Kapitalanlagegesellschaft mbH
                                Junghofstraße 24
                                60311 Frankfurt am Main

Uwe Trautmann
Managing Director of
Helaba Invest

ppa. Andreas Prölingheuer

2

**SCHEDULE A**

**Washington Mutual, Inc.**
**Class Period:  4/18/06 - 12/10/07**
**Helaba Invest Kapitalanlagegesellschaft mbH**
**Schedule A**

| ------------------------Purchases------------------------ | | | | ------------------------Sales------------------------ | | | |
|---|---|---|---|---|---|---|---|
| **Trade Date** | **Shares** | **Price** | **Total** | **Trade Date** | **Shares** | **Price** | **Total** |

**HI-PF-Fonds / 444**

| Trade Date | Shares | Price | Total |
|---|---|---|---|
| Open position | 33,000 | | |
| 4/28/2006 | 1,300 | $45.0215 | $58,527.95 |
| 8/29/2006 | 1,800 | $42.3767 | $76,278.06 |
| 11/28/2006 | 3,100 | $42.9477 | $133,137.87 |
| 2/9/2007 | 1,000 | $43.5800 | $43,580.00 |
| 4/11/2007 | 12,400 | $39.0000 | $483,600.00 |
| 9/5/2007 | 1,800 | $36.0300 | $64,854.00 |
| 10/9/2007 | 9,100 | $35.6333 | $324,263.03 |
| 10/10/2007 | 2,500 | $35.3680 | $88,420.00 |
| 10/10/2007 | 10,200 | $35.4302 | $361,388.04 |
| 10/11/2007 | 1,200 | $35.3857 | $42,462.84 |
| 10/11/2007 | 20,200 | $35.7693 | $722,539.86 |
| 10/12/2007 | 1,000 | $35.1600 | $35,160.00 |
| 10/12/2007 | 10,200 | $35.3017 | $360,077.34 |
| 10/15/2007 | 4,900 | $34.3682 | $168,404.18 |
| 10/18/2007 | 18,100 | $30.4586 | $551,300.66 |
| 10/19/2007 | 3,900 | $28.9879 | $113,052.81 |
| 10/22/2007 | 11,000 | $29.2075 | $321,282.50 |
| 10/23/2007 | 19,400 | $28.7878 | $558,483.32 |
| 10/24/2007 | 5,500 | $28.2442 | $155,343.10 |
| 10/25/2007 | 3,200 | $27.8476 | $89,112.32 |
| 10/26/2007 | 3,200 | $28.6284 | $91,610.88 |
| 10/29/2007 | 15,000 | $27.9482 | $419,223.00 |
| 10/29/2007 | 3,200 | $27.9552 | $89,456.64 |
| 10/30/2007 | 3,300 | $28.0030 | $92,409.90 |
| 10/31/2007 | 3,800 | $28.3107 | $107,580.66 |
| 11/2/2007 | 4,900 | $24.1774 | $118,469.26 |
| 11/5/2007 | 12,800 | $23.2316 | $297,364.48 |
| 11/6/2007 | 13,500 | $23.8691 | $322,232.85 |
| 11/7/2007 | 14,700 | $20.3539 | $299,202.33 |
| 11/7/2007 | 16,400 | $21.2694 | $348,818.16 |
| 11/12/2007 | 10,300 | $20.8105 | $214,348.15 |
| 11/13/2007 | 13,600 | $21.3643 | $290,554.48 |
| 11/14/2007 | 21,200 | $22.2549 | $471,803.88 |
| 11/15/2007 | 24,100 | $20.6672 | $498,079.52 |
| 11/16/2007 | 5,300 | $19.9254 | $105,604.62 |
| 11/27/2007 | 22,200 | $17.2891 | $383,818.02 |
| 11/29/2007 | 58,900 | $17.6781 | $1,041,240.09 |

**Washington Mutual, Inc.**
**Class Period: 4/18/06 - 12/10/07**
**Helaba Invest Kapitalanlagegesellschaft mbH**
**Schedule A**

| Trade Date | Shares | Price | Total | Trade Date | Shares | Price | Total |
|---|---|---|---|---|---|---|---|
| ------------------------Purchases------------------------ | | | | ------------------------------Sales------------------------------ | | | |

**HI-ZW-Fonds / 482**

| Trade Date | Shares | Price | Total | Trade Date | Shares | Price | Total |
|---|---|---|---|---|---|---|---|
| Open position | 15,900 | | | | | | |
| 11/13/2006 | 800 | $42.7838 | $34,227.04 | | | | |
| 11/21/2006 | 1,000 | $42.9650 | $42,965.00 | | | | |
| 4/11/2007 | 6,400 | $39.0000 | $249,600.00 | | | | |
| 10/9/2007 | 2,800 | $35.6333 | $99,773.24 | | | | |
| 10/10/2007 | 800 | $35.3680 | $28,294.40 | | | | |
| 10/10/2007 | 3,100 | $35.4302 | $109,833.62 | | | | |
| 10/11/2007 | 400 | $35.3857 | $14,154.28 | | | | |
| 10/11/2007 | 6,300 | $35.7693 | $225,346.59 | | | | |
| 10/12/2007 | 300 | $35.1600 | $10,548.00 | | | | |
| 10/12/2007 | 3,200 | $35.3017 | $112,965.44 | | | | |
| 10/15/2007 | 1,500 | $34.3682 | $51,552.30 | | | | |
| 10/18/2007 | 6,700 | $30.4586 | $204,072.62 | | | | |
| 10/19/2007 | 1,500 | $28.9879 | $43,481.85 | | | | |
| 10/22/2007 | 4,100 | $29.2075 | $119,750.75 | | | | |
| 10/23/2007 | 7,300 | $28.7878 | $210,150.94 | | | | |
| 10/24/2007 | 2,100 | $28.2442 | $59,312.82 | | | | |
| 10/25/2007 | 1,200 | $27.8476 | $33,417.12 | | | | |
| 10/26/2007 | 1,200 | $28.6284 | $34,354.08 | | | | |
| 10/29/2007 | 1,200 | $27.9552 | $33,546.24 | | | | |
| 10/30/2007 | 1,200 | $28.0030 | $33,603.60 | | | | |
| 10/31/2007 | 1,400 | $28.3107 | $39,634.98 | | | | |
| 11/2/2007 | 2,600 | $24.1774 | $62,861.24 | | | | |
| 11/5/2007 | 5,700 | $23.2316 | $132,420.12 | | | | |
| 11/6/2007 | 5,600 | $23.8691 | $133,666.96 | | | | |
| 11/7/2007 | 5,500 | $20.3539 | $111,946.45 | | | | |
| 11/7/2007 | 6,100 | $21.2694 | $129,743.34 | | | | |
| 11/12/2007 | 3,700 | $20.8105 | $76,998.85 | | | | |
| 11/13/2007 | 4,900 | $21.3643 | $104,685.07 | | | | |
| 11/14/2007 | 20,200 | $22.2549 | $449,548.98 | | | | |
| 11/15/2007 | 9,300 | $20.6672 | $192,204.96 | | | | |
| 11/16/2007 | 2,100 | $19.9254 | $41,843.34 | | | | |
| 11/19/2007 | 4,500 | $18.6100 | $83,745.00 | | | | |
| 11/27/2007 | 5,100 | $17.2891 | $88,174.41 | | | | |

**HI-R8-Fonds / 548**

| Trade Date | Shares | Price | Total | Trade Date | Shares | Price | Total |
|---|---|---|---|---|---|---|---|
| Open position | 0 | | | | | | |
| 9/13/2006 | 700 | $42.2558 | $29,579.06 | 11/3/2006 | 1,700 | $42.3700 | $72,029.00 |
| 9/14/2006 | 2,400 | $42.4182 | $101,803.68 | 3/14/2007 | 1,000 | $39.3500 | $39,350.00 |
| 9/15/2006 | 241 | $42.5156 | $10,246.26 | 5/3/2007 | 1,700 | $42.8566 | $72,856.22 |
| 9/15/2006 | 1,059 | $42.5249 | $45,033.87 | | | | |

**Washington Mutual, Inc.**
**Class Period: 4/18/06 - 12/10/07**
**Helaba Invest Kapitalanlagegesellschaft mbH**
**Schedule A**

| ----------Purchases---------- | | | | ----------Sales---------- | | | |
| Trade Date | Shares | Price | Total | Trade Date | Shares | Price | Total |
|---|---|---|---|---|---|---|---|

**HI-Aktien USA-Fonds / 614**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Open position | 5,300 | | | | | | |
| | | | | | | | |
| 4/20/2006 | 1,400 | $44.8400 | $62,776.00 | 5/24/2006 | 1,700 | $44.9218 | $76,367.06 |
| 4/28/2006 | 200 | $45.0600 | $9,012.00 | 6/28/2006 | 100 | $45.0900 | $4,509.00 |
| 5/9/2006 | 700 | $46.3871 | $32,470.97 | 7/31/2006 | 1,100 | $44.7000 | $49,170.00 |
| 5/19/2006 | 100 | $44.9900 | $4,499.00 | 9/5/2006 | 100 | $42.7200 | $4,272.00 |
| 5/31/2006 | 100 | $45.9100 | $4,591.00 | 9/21/2006 | 100 | $42.7800 | $4,278.00 |
| 9/20/2006 | 400 | $42.7400 | $17,096.00 | 9/28/2006 | 100 | $43.5100 | $4,351.00 |
| 10/19/2006 | 4,100 | $42.3500 | $173,635.00 | 12/14/2006 | 5,400 | $44.6500 | $241,110.00 |
| 10/20/2006 | 700 | $42.5600 | $29,792.00 | 1/30/2007 | 100 | $44.1400 | $4,414.00 |
| 12/8/2006 | 100 | $43.8200 | $4,382.00 | 2/21/2007 | 1,100 | $44.9500 | $49,445.00 |
| 1/24/2007 | 5,300 | $45.3500 | $240,355.00 | 2/22/2007 | 200 | $44.7200 | $8,944.00 |
| 2/13/2007 | 300 | $44.7600 | $13,428.00 | | | | |
| 3/22/2007 | 100 | $41.9800 | $4,198.00 | | | | |
| 4/10/2007 | 1,000 | $38.8700 | $38,870.00 | | | | |
| 4/18/2007 | 900 | $42.1700 | $37,953.00 | | | | |
| 4/19/2007 | 400 | $42.2700 | $16,908.00 | | | | |
| 9/28/2007 | 1,700 | $35.3100 | $60,027.00 | | | | |
| 10/22/2007 | 1,700 | $29.1882 | $49,619.94 | | | | |
| 10/29/2007 | 2,900 | $28.0200 | $81,258.00 | | | | |
| 11/19/2007 | 4,700 | $18.4900 | $86,903.00 | | | | |

## CERTIFICATION OF METZLER INVESTMENT GmbH

The undersigned, Stefanie Buchmann and Matthias Plewnia, make this Certification pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4, and states as follows:

1.    We have reviewed the Complaint against Washington Mutual, Inc. ("WaMu") and are duly authorized to make this Certification on behalf of Metzler Investment GmbH ("Metzler").

2.    We have reviewed the records of Metzler's transactions in the securities of WaMu for the proposed class period ("Class Period"). Those transactions are listed in the chart attached as Schedule A to this Certification.

3.    Metzler intends to actively monitor and vigorously pursue this actions for the benefit of the class, rather than simply relying on its attorneys. Metzler has retained the law firms of Grant & Eisenhofer P.A. and Diaz Reus Rolff & Targ LLP to represent it. These firms are knowledgeable and experienced in securities law and litigation, particularly with regard to the role and responsibilities of institutional investors in class actions.

4.    Like other investors who purchased WaMu securities during the Class Period, Metzler believes that its losses occurred as a result of the defendants' fraudulent conduct and violations of the securities laws. Metzler believes that its claims against the defendants are typical of those of other members of the class.

5.    Metzler did not purchase the securities that are the subject of the various complaints at the direction of counsel or to participate in any private action arising under the federal securities laws. Metzler invested in WaMu solely for its own business purposes.

6.    Metzler is willing to serve as the representative party on behalf of the class of WaMu security holders who invested during the Class Period. Metzler intends to pursue this litigation for the best interests of all class members and take whatever steps are necessary regardless of geographic location.

7.    During the three-year period preceding the date of this Certification, Metzler has sought to serve as a representative party for a class in an action under the federal securities laws in the following securities class actions:

Appointed as a lead plaintiff:

*In re Levi Strauss & Co. Sec. Litig.*, 03-CV-5605 (N.D. Cal. 2003).

*In re Corinthian Colleges Inc. Shareholder Litig.*, No. 04-CV-5025 (C.D. Cal. 2004).

*South Ferry LP #2 v. Killinger*, No. CV04-1599C (W.D. Wash. 2004).

*In re New York Community Bancorp. Sec. Litig.*, No. 04-CV-4165 (E.D.N.Y. 2004).

*In re Molson Coors Brewing Co. Sec. Litig.*, 05-CV-0294 (D. Del. 2005).

*In re Chicago Bridge & Iron Co. Sec. Litig.*, 06-CV-1283 (S.D.N.Y. 2006).

Not appointed as a lead plaintiff:

*In re Delphi Corp. Sec. Litig.*, No. 05-CV-2637 (S.D.N.Y. 2005).

*In re GlaxoSmithKline plc*, No. 07-CV-5574 (S.D.N.Y. 2007).

8.    Metzler will not accept any payment for serving as representative party on behalf of the class beyond its *pro rata* share of any recovery, except as ordered and approved by the Court.

2

We declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Dated: December 28, 2007

Metzler Investment GmbH

Metzler Investment GmbH

_____

Stefanie Buchmann

_____

Matthias Plewnia

2

**Washington Mutual, Inc.**
**Class Period: 4/18/06 - 12/10/07**
**Metzler Investment GmbH**
**Schedule A**

| ----------------------Purchases---------------------- | | | | | ---------------------------Sales--------------------------- | | | |
|---|---|---|---|---|---|---|---|---|
| Trade Date | Shares | Price | Total | | Trade Date | Shares | Price | Total |

**MI-FONDS 383 / ASL2**

| Open position | 0 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/21/2006 | 21,500 | $45.9700 | $988,355.00 | | | | | |
| 4/11/2007 | 1,800 | $39.0088 | $70,215.84 | | | | | |
| 4/12/2007 | 1,500 | $38.8709 | $58,306.35 | | | | | |
| 10/9/2007 | 3,900 | $35.6333 | $138,969.87 | | | | | |
| 10/10/2007 | 1,100 | $35.3680 | $38,904.80 | | | | | |
| 10/10/2007 | 4,300 | $35.4302 | $152,349.86 | | | | | |
| 10/11/2007 | 8,600 | $35.7693 | $307,615.98 | | | | | |
| 10/11/2007 | 500 | $35.3857 | $17,692.85 | | | | | |
| 10/12/2007 | 4,300 | $35.3017 | $151,797.31 | | | | | |
| 10/12/2007 | 400 | $35.1600 | $14,064.00 | | | | | |
| 10/15/2007 | 2,100 | $34.3682 | $72,173.22 | | | | | |
| 10/18/2007 | 7,900 | $30.4586 | $240,622.94 | | | | | |
| 10/19/2007 | 1,700 | $28.9879 | $49,279.43 | | | | | |
| 10/22/2007 | 4,800 | $29.2075 | $140,196.00 | | | | | |
| 10/23/2007 | 8,600 | $28.7878 | $247,575.08 | | | | | |
| 10/24/2007 | 2,400 | $28.2442 | $67,786.08 | | | | | |
| 10/25/2007 | 1,400 | $27.8476 | $38,986.64 | | | | | |
| 10/26/2007 | 1,400 | $28.6284 | $40,079.76 | | | | | |
| 10/29/2007 | 1,400 | $27.9552 | $39,137.28 | | | | | |
| 10/30/2007 | 1,400 | $28.0030 | $39,204.20 | | | | | |
| 10/31/2007 | 1,700 | $28.3107 | $48,128.19 | | | | | |
| 11/2/2007 | 3,100 | $24.1774 | $74,949.94 | | | | | |
| 11/5/2007 | 6,900 | $23.2316 | $160,298.04 | | | | | |
| 11/6/2007 | 6,600 | $23.8691 | $157,536.06 | | | | | |
| 11/7/2007 | 7,200 | $21.2694 | $153,139.68 | | | | | |
| 11/7/2007 | 6,400 | $20.3539 | $130,264.96 | | | | | |
| 11/12/2007 | 4,400 | $20.8105 | $91,566.20 | | | | | |
| 11/13/2007 | 5,800 | $21.3643 | $123,912.94 | | | | | |
| 11/14/2007 | 8,900 | $22.2549 | $198,068.61 | | | | | |
| 11/15/2007 | 10,300 | $20.6672 | $212,872.16 | | | | | |
| 11/16/2007 | 2,300 | $19.9254 | $45,828.42 | | | | | |
| 11/27/2007 | 9,600 | $17.2891 | $165,975.36 | | | | | |

**MI-FONDS 405 / GA2-PariU**

| Open position | 0 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/28/2006 | 18,500 | $45.0300 | $833,055.00 | | 8/3/2006 | 1,600 | $44.3763 | $71,002.08 |
| 2/9/2007 | 2,100 | $43.5800 | $91,518.00 | | 8/9/2006 | 1,000 | $44.0390 | $44,039.00 |
| 4/11/2007 | 1,800 | $39.0088 | $70,215.84 | | | | | |
| 4/12/2007 | 1,500 | $38.8709 | $58,306.35 | | | | | |
| 10/9/2007 | 3,300 | $35.6333 | $117,589.89 | | | | | |
| 10/10/2007 | 3,700 | $35.4302 | $131,091.74 | | | | | |
| 10/10/2007 | 900 | $35.3680 | $31,831.20 | | | | | |

**Washington Mutual, Inc.**
**Class Period: 4/18/06 - 12/10/07**
**Metzler Investment GmbH**
**Schedule A**

| ---------------Purchases--------------- | | | | ----------------Sales---------------- | | | |
| Trade Date | Shares | Price | Total | Trade Date | Shares | Price | Total |
|---|---|---|---|---|---|---|---|
| 10/11/2007 | 7,400 | $35.7693 | $264,692.82 | | | | |
| 10/11/2007 | 400 | $35.3857 | $14,154.28 | | | | |
| 10/12/2007 | 400 | $35.1600 | $14,064.00 | | | | |
| 10/12/2007 | 3,700 | $35.3017 | $130,616.29 | | | | |
| 10/15/2007 | 1,800 | $34.3682 | $61,862.76 | | | | |
| 10/18/2007 | 6,800 | $30.4586 | $207,118.48 | | | | |
| 10/19/2007 | 1,400 | $28.9879 | $40,583.06 | | | | |
| 10/22/2007 | 4,200 | $29.2075 | $122,671.50 | | | | |
| 10/23/2007 | 7,300 | $28.7878 | $210,150.94 | | | | |
| 10/24/2007 | 2,100 | $28.2442 | $59,312.82 | | | | |
| 10/25/2007 | 1,200 | $27.8476 | $33,417.12 | | | | |
| 10/26/2007 | 1,200 | $28.6284 | $34,354.08 | | | | |
| 10/29/2007 | 1,200 | $27.9552 | $33,546.24 | | | | |
| 10/30/2007 | 1,200 | $28.0030 | $33,603.60 | | | | |
| 10/31/2007 | 1,500 | $28.3107 | $42,466.05 | | | | |
| 11/2/2007 | 2,600 | $24.1774 | $62,861.24 | | | | |
| 11/5/2007 | 5,900 | $23.2316 | $137,066.44 | | | | |
| 11/6/2007 | 5,700 | $23.8691 | $136,053.87 | | | | |
| 11/7/2007 | 6,200 | $21.2694 | $131,870.28 | | | | |
| 11/7/2007 | 5,500 | $20.3539 | $111,946.45 | | | | |
| 11/12/2007 | 3,700 | $20.8105 | $76,998.85 | | | | |
| 11/13/2007 | 4,900 | $21.3643 | $104,685.07 | | | | |
| 11/14/2007 | 7,700 | $22.2549 | $171,362.73 | | | | |
| 11/15/2007 | 8,800 | $20.6672 | $181,871.36 | | | | |
| 11/16/2007 | 1,900 | $19.9254 | $37,858.26 | | | | |
| 11/27/2007 | 8,300 | $17.2891 | $143,499.53 | | | | |

**MI-FONDS 376 / KVBS**
Open position       0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9/26/2006 | 1,100 | $43.2318 | $47,554.98 | 3/8/2007 | 300 | $42.0000 | $12,600.00 |
| 6/11/2007 | 100 | $42.6900 | $4,269.00 | 4/13/2007 | 100 | $38.9000 | $3,890.00 |
| 7/9/2007 | 200 | $42.9790 | $8,595.80 | 12/10/2007 | 1,300 | $19.9529 | $25,938.77 |
| 11/14/2007 | 300 | $21.4614 | $6,438.42 | | | | |

# EXHIBIT B

1 of 1 DOCUMENT

Copyright 2007 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

November 5, 2007 Monday 7:18 PM GMT

**LENGTH:** 629 words

**HEADLINE:** Wolf Popper Announces Filing of Securities Class Action Lawsuit Against Washington Mutual, Inc. - WM

**DATELINE:** NEW YORK Nov. 5

**BODY:**

NEW YORK, Nov. 5 /PRNewswire/ -- Wolf Popper LLP has filed a class action lawsuit against Washington Mutual, Inc. ("Washington Mutual")(NYSE:WM)and certain of its officers and directors in the United States District Court for the Southern District of New York, on behalf of investors who purchased Washington Mutual common stock on the open market from July 19, 2006 through October 31, 2007 (the "Class Period"). This is the first action filed against Washington Mutual and alleges claims for securities fraud. The case has been assigned Civil Action No. 07 Civ. 9801.

The complaint charges that during the Class Period Washington Mutual improperly exerted pressure on a third-party appraisal firm, eAppraiseIT (a division of the First American Corporation), to inflate the appraised value of homes used as collateral for loans originated by Washington Mutual. Washington Mutual failed to disclose this scheme, which violated federal and state laws and regulations requiring an independent appraisal process. The inflated appraisals caused Washington Mutual's financial results to be misstated, including causing its loan assets to be overstated while its provision for doubtful accounts and reserves for loan losses were materially understated.

On October 17, 2007, Washington Mutual revealed that its anticipated fourth quarter 2007 writedowns of home loan assets would be $1.3 billion greater than previously disclosed. These writedowns were caused, at least in part, by the impairment of loan assets that were originated based on the inflated appraisals fraudulently orchestrated by the defendants. Between October 17 and October 31, Washington Mutual's stock price declined by $5.19 per share, or 15.6%.

On November 1, 2007, the Attorney General of the State of New York filed a lawsuit against First American Corporation and eAppraiseIT, alleging their complicity in a scheme to provide inflated appraisals to Washington Mutual. On November 1, 2007 and November 2, 2007, following the announcement of the NY AG's lawsuit against First American, Washington Mutual shares fell further, closing at $23.81 on November 2, 2007, down $4.07 per share, or 15%, from the October 31, 2007 closing price.

If you purchased or acquired Washington Mutual common stock during the Class Period, you may move the court no later than January 4, 2008, and request that

Wolf Popper Announces Filing of Securities Class Action Lawsuit Against
Washington Mutual, Inc. - WM PR Newswire November 5, 2007 Monday 7:18 PM GMT

the Court appoint you as lead plaintiff. A lead plaintiff is a representative
party acting on behalf of other class members in directing the litigation. To be
appointed lead plaintiff, the Court must decide that your claim is typical of
the claims of other class members, and that you will adequately represent the
class. Your share in any recovery will not be enhanced or diminished by the
decision whether or not to serve as a lead plaintiff.

Wolf Popper LLP has extensive experience representing shareholders in class
actions and has successfully recovered billions of dollars for defrauded
investors and shareholders. The reputation and expertise of the firm in
shareholder and other class action litigation has been repeatedly recognized by
the courts, which have appointed the firm to major positions in complex
multi-district and consolidated litigations.

For more information or to pursue your right to be appointed lead plaintiff,
please contact:

Wolf Popper LLP

James Harrod, Esq.

845 Third Avenue

New York, NY 10022

Tel.: 212.759.4600 or 877.370.7703 (toll free)

Fax: 212.486.2093 or 877.370.7704 (toll free)

Email:

irrep@wolfpopper.com

website:

http://www.wolfpopper.com

/

Attorney Advertising -- Prior results do not guarantee a similar outcome

CONTACT: James Harrod, Esq. of Wolf Popper LLP, +1-212-759-4600 or
+1-877-370-7703, irrep@wolfpopper.com

Web site: http://www.wolfpopper.com/

SOURCE Wolf Popper LLP

URL: http://www.prnewswire.com

LOAD-DATE: November 6, 2007

# EXHIBIT C

# FIRM PROFILE



280 King of Prussia Road * Radnor, PA 19087 * Telephone: (610) 667.7706 * Fax: (610) 667.7056

Schiffrin Barroway Topaz & Kessler, LLP, specializes in representing shareholders and consumers in complex class action litigation in state and federal courts throughout the United States. Since our inception, SBTK has recovered billions of dollars on behalf of defrauded shareholders and aggrieved consumers. The firm is led by its senior partners, Richard S. Schiffrin, Andrew L. Barroway, Marc A. Topaz, and David Kessler, with assistance from partners Stuart L. Berman, Katharine M. Ryan, Gregory M. Castaldo, Michael K. Yarnoff, Joseph H. Meltzer, Darren J. Check, Andrew L. Zivitz, Sean M. Handler, John A. Kehoe, Lee D. Rudy, Kay E. Sickles, Eric L. Zagar and numerous experienced associates and staff.

Since its inception in 1987, SBTK has specialized exclusively in the prosecution of class actions, with unique expertise and skill litigating securities class actions.  Now in its 20th year, SBTK has grown into one of the largest and most successful firms in the field.  Recognized by courts and its clients for achieving exemplary results, SBTK, with its main office located in suburban Philadelphia, Pennsylvania, is comprised of over 60 attorneys, a superior support staff and an in-house investigative team.  With SBTK's extensive experience prosecuting securities fraud actions, derivative actions and transactional litigation against public companies and their officers and directors, SBTK has emerged as the leading firm in the campaign to eradicate the egregious practice of options backdating.  Recognizing SBTK's experience and commitment to corporate governance reform, courts across the country have appointed SBTK as lead or co-lead counsel in more than 50 options backdating actions.  SBTK's depth and breadth of its practice places it in a unique position to track, advise, prosecute and resolve complex securities actions.

In the course of representing various institutional investors from the United States, Canada, Europe, and around the world, including pension funds, mutual fund managers, investment advisors, insurance companies, and hedge funds, SBTK has recovered billions of dollars on behalf of its clients and the classes it represents.  SBTK, with the guidance and assistance of its clients serving as lead plaintiff, is especially proud of its ability to create and structure resolutions with financially troubled companies and, when appropriate, to institute corporate governance reforms when serving as lead counsel in shareholder actions.

In addition, SBTK has recently opened an office in suburban San Francisco, California, and has added three California-based attorneys as "of counsel" to the firm, each of whom has significant class action and complex litigation experience. Demonstrating its commitment to the west coast expansion, several SBTK partners and associates have recently taken the California Bar and are awaiting their results.

# Noteworthy Achievements

During the firm's successful history, SBTK has recovered billions of dollars for defrauded stockholders and consumers. The following are among the firm's notable achievements:

*In re Tyco International, Ltd. Securities Litigation*,
*No. 02-1335-B (D.N.H. 2002):*
SBTK, which served as co-lead counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3 billion settlement with Tyco. The largest securities class action settlement by a corporate defendant in history. The action asserted federal securities claims on behalf of all purchasers of Tyco securities between December 13, 1999 and June 7, 2002 against Tyco, certain former officers and directors of Tyco and the Company's auditor PricewaterhouseCoopers. Tyco is alleged to have overstated its income during the Class Period by $5.8 billion. Defendants Kozlowski and Swartz have been sentenced to up to 25 years in prison after being convicted of grand larceny, falsification of business records and conspiracy for their roles in the alleged scheme to defraud investors. Defendant Walsh has also pled guilty to committing fraud.

In October 2004, the Court denied in large part the defendants' motions to dismiss and the parties began the discovery phase of the case. On June 12, 2006, Judge Barbadoro granted the Plaintiffs' motion for class certification for violations of sections 10(b), 20(a) and 20A of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. The Court held that the claims asserted satisfy Federal Rule of Civil Procedure 23(a)'s requirements for numerosity, commonality, typicality and adequacy, as well as Rule 23(b)'s requirements that common issues predominate over individual issues and that a class action is superior to other available methods for the fair resolution of the dispute.

The settlement, which represents the single largest payment from any corporate defendant in the history of securities class action litigation, requires Tyco pay $2.975 billion in cash to settle securities and accounting fraud claims relating to the Kozlowski era, but specifically excludes auditor PriceWaterhouseCoopers ("PwC") and, by the time the settlement will be presented to the Court for final distribution, it will exceed $3 billion in value, inclusive of interest.

As part of the settlement, Tyco has agreed to assign the claims it has against PwC related to the accounting fraud to the Class, which intends to vigorously pursue both its own claims and the assigned claims. As Tyco's auditor, PwC was in a unique position to uncover the fraud and to prevent the damages to Tyco's shareholders. Instead, PwC is alleged to have failed in its duties as a corporate watchdog. In addition, as Tyco already has its own claims being pursued against certain of the individual defendants, the Class has assigned its claims against Dennis Kozlowski, Frank Walsh and Mark Swartz to Tyco in exchange for receiving a 50% interest in any net recoveries achieved against these non-settling defendants.

*In re Tenet Healthcare Corp. Securities Litigation,*
*No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):*
SBTK serves as co-lead counsel on behalf of the State of New Jersey and its Division of
Investment against Tenet Healthcare Corp. and certain of its former officers and directors.
Among other things, the Lead Plaintiff alleges that defendants made a series of materially false
or misleading statements and omissions concerning Tenet's business model and financial health
from January 11, 2000 through November 7, 2002. After defeating defendants' motions to
dismiss and performing substantial document and deposition discovery, a partial settlement
has been reached in the amount of $216.5 million in cash which will be submitted for
preliminary approval by the Court in the coming weeks. The Partial Settlement is being funded
primarily by Tenet and its insurance carriers ($215 million), with personal contributions in the
aggregate amount of $1.5 million being made by two of Tenet's former officers, Jeffrey
Barbakow and Thomas Mackey. In addition to the substantial cash recovery, the prosecution of
this action has played a prominent role in Tenet's initiation of sweeping corporate governance
reforms which have led to Tenet being ranked by various institutional rating entities as among
the best corporations in America for its corporate governance. The case will continue against
KPMG as the Court denied KPMG's motion to dismiss the action in its entirety in December,
2005.

*In re AremisSoft Corp. Securities Litigation,*
*C.A. No. 01-CV-2486 (D.N.J. 2002):*
SBTK is particularly proud of the results recently achieved in this case before the Honorable Joel
A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds
of millions of dollars by former officers of the Company, who are now fugitives. In settling the
action, SBTK, as sole Lead Counsel, assisted in reorganizing the Company as a new Company to
allow for it to continue operations, while successfully separating out the securities fraud claims
and the bankrupt Company's claims into a litigation trust. The Settlement, which was recently
approved, calls for the class to receive the majority of the equity in the new Company, as well as
their pro rata share of any amounts recovered by the litigation trust. The Court-appointed
cotrustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, have retained SBTK to continue
prosecuting the actions on behalf of the litigation trust. In this capacity, we have filed an action
in the Isle of Man, and have successfully frozen more than $200 million of stolen funds from one
of the fugitives, and are in the process of attempting to recover the money on behalf of the trust.
In addition, we are continuing to litigate the trust's claims against the remaining fugitive.

*In re The Interpublic Group of Companies Securities Litigation,*
*No. 02 Civ. 6527 (S.D.N.Y. 2002):*
SBTK served as sole Lead Counsel in this action on behalf of an institutional investor and
recently received final approval of a settlement consisting of $20 million in cash and 6,551,725
shares of IPG common stock with expected distribution by early summer 2005. As of February
2005, the stock had an approximate value of $87 million, resulting in a total settlement value of
approximately $107 million. In granting its approval, the Court praised SBTK for acting
responsibly and noted the firm's professionalism, competence and contribution to achieving such
a favorable result.

*In re Digital Lightwave, Inc. Securities Litigation,*
*Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):*
The firm served as Co-Lead Counsel in one of the nation's most successful securities class
actions. After extensive litigation and negotiations, a settlement consisting primarily of stock
ultimately grew to a value of over $170 million between the time in which the settlement was

negotiated and the time at which it was distributed. SBTK took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses. We believe that this represents the largest percentage recovery for shareholders in securities class action history.

**In re Initial Public Offering Securities Litigation,**
**Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):**
SBTK holds a prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, SBTK was one of only six selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which accompany the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history. At the present time, the Court has preliminarily approved a $1 billion settlement with the insurers and their officers and directors. The case is proceeding against the underwriting defendants.

**In re Global Crossing, Ltd. ERISA Litigation,**
**No. 02 Civ. 7453 (S.D.N.Y. 2004):**
SBTK served as Co-Lead Counsel in this complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee retirement Income Security Act of 1974 to certain company-provided 401(k) plans and their participants. These breaches surrounded the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the Plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

**In re Honeywell International ERISA Litigation,**
**No. 03-1214 (DRD) (D.N.J. 2004):**
SBTK is serving as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell pension plans. The suit alleges that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. A settlement f plaintiffs' claims, which includes a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios, is currently pending court approval.

*In re Remeron Antitrust Litigation,*
*No. 02-CV-2007 (D.N.J. 2004):*
SBTK is Co-Lead Counsel in an action challenging Organon, Inc.'s filing of certain patents and
patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully
extend their monopoly in the market for Remeron. Specifically, the lawsuit alleges that
defendants violated state and federal antitrust laws in their efforts to keep competing products
from entering the market, and seeks damages sustained by consumers and third-party payors.
After lengthy litigation, including numerous motions and over 50 depositions, the matter settled
for $36 million. The settlement is pending final approval by the court.

*Henry v. Sears, et al.,*
*Case No. 98 C 4110 (N.D. Ill. 1999):*
The firm served as Co-Lead Counsel for one of the largest consumer class actions in history,
consisting of approximately 11 million Sears credit card holders whose interest rates were
improperly increased in connection with the transfer of the credit card accounts to a national
bank. SBTK successfully negotiated a settlement representing approximately 66% of all class
members' damages, thereby providing a total benefit exceeding $156 million. All $156 million
was distributed automatically to the Class members, without the filing of a single proof of claim
form. In approving the settlement, the District Court stated: ". . . I am pleased to approve
the settlement. I think it does the best that could be done under the circumstances on behalf of
the class. . . . The litigation was complex in both liability and damages and required both
professional skill and standing which class counsel demonstrated in abundance."

*Jordan v. State Farm Insurance Company,*
*Case No. 97 CH 11 (Cir. Ct., McLean County, Ill. 1998):*
Plaintiffs alleged that State Farm had engaged in fraudulent sales practices known as "churning,"
and marketing and selling "vanishing premium" policies that do not actually "vanish." After
several years of discovery, motion practice and settlement negotiations, SBTK, as Liaison
Counsel, successfully resolved the action for $225 million in cash, dividend enhancements and
other monetary benefits for current and former State Farm policyholders.


*In re Liberate Technologies Securities Litigation,*
*No. C-02-5017 (MJJ) (N.D. Cal. 2005):*
Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially
inflate the price of its stock, ultimately forcing it to restate its earnings. As sole Lead Counsel,
SBTK successfully negotiated a $13.8 million settlement, which represents almost 40% of the
damages suffered by the class. In approving the settlement, the district court complimented Lead
Counsel for its "extremely credible and competent job."

*In re InfoSpace, Inc. Securities Litigation,*
*Master File No. C-01-0913-Z (D. Wash. 2001):*
SBTK served as Co-Lead Counsel on behalf of plaintiffs alleging that InfoSpace and certain of
its officers and directors overstated revenues by using improper accounting methods, overstated
the demand for InfoSpace's wireless services, misstated InfoSpace's financial relationships with
major customers, and falsely represented that InfoSpace would receive subscription fees from
users of web-enabled cell phones. After two years of hard-fought litigation and complex
mediation, a settlement of $34.3 million was obtained for members of the class.

*In re Riverstone Networks, Inc. Securities Litigation,*
*Case No. CV-02-3581 (N.D. Cal. 2002):*
SBTK served as sole lead counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of mediation, the parties reached a settlement of $18.5 million which has been preliminarily approved by the Court.

*In re Assisted Living Concepts, Inc. Securities Litigation,*
*Lead Case No. 99-167-AA (D. Or. 1999):*
SBTK served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's start-up losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

*Wanstrath v. Doctor R. Crants, et al.,*
*No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999):*
SBTK served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved, and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

*In re Cumulus Media Inc. Securities Litigation,*
*Lead Case No. 00-C-391 E.D. Wis. 2000):*
SBTK served as Lead Counsel and successfully litigated the action and negotiated a settlement of $13 million in cash and 240,000 shares of freely tradable stock in Cumulus Media, which traded for approximately $19 per share, for a total settlement value of $17.5 million at the time the settlement was approved by the Court.


# PARTNERS

**RICHARD S. SCHIFFRIN**, founding partner of the firm, is licensed to practice law in Illinois and Pennsylvania, and has been admitted to practice before numerous United States District Courts. In his seven years of practice with the Office of the Public Defender of Cook County, Illinois, Mr. Schiffrin represented hundreds of clients in both bench and jury trials, as

well as appeals. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and has served as a faculty member at numerous legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics — Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Most recently, Mr. Schiffrin spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the Public Funds Symposium 2005 in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the *Pennsylvania Public Employees Retirement Summit (PAPERS)* in Harrisburg, Pennsylvania. Mr. Schiffrin oversees all aspects of litigation on behalf of the firm. Mr. Schiffrin has been recognized for his expertise in numerous cases, including most prominently:

### *In re Tenet Healthcare Corp., 02-CV-8462 (C.D. Cal.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Tenet Healthcare and certain of its officers and directors defrauded Medicare out of hundreds of millions of dollars, materially overstated Tenet's revenues, and performed unnecessary cardiac surgeries to increase the Company's earnings. After three years of hard-fought litigation and complex mediation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement involving a $216.5 million payment from Tenet and the Company's former CEO and COO, and specific corporate governance improvements.

### *In re AremisSoft Corp. Securities Litigation, C.A. No. 01-CV-2486 (D.N.J. 2002):*

Schiffrin Barroway Topaz & Kessler is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom remain fugitives. In settling the action, Schiffrin Barroway Topaz & Kessler, as sole Lead Counsel, assisted in reorganizing the Company as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, approved by the court, enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained Schiffrin Barroway Topaz & Kessler to further assist with prosecuting the actions on behalf of the litigation trust.

After filing an action in the Isle of Man, where the trust successfully froze more than $200 million of stolen funds from one of the fugitives, the trust achieved a settlement of this action for $200 million, which was returned to the United States and paid to the trust. Recently, the trust commenced another action in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

Thus far, counsel on behalf of the trust and its beneficiaries have achieved settlements with the Company and certain of its directors and officers as well as the Company's auditors, lawyer and underwriters, for a total of more than $250 million. The beneficiaries of the trust have already received in excess of 28% of their recognized losses.

*Henry v. Sears, et al., Case No. 98 C 4110 (N.D. Ill. 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of the largest class of credit card holders in history. At stake was the right of Sears and its newly formed affiliate, Sears National Bank ("SNB"), to retroactively increase the interest rates on eleven million credit card accounts with outstanding balances resulting from purchases made prior to the accounts being transferred to SNB. Schiffrin Barroway Topaz & Kessler alleged that such conduct violated the Truth-in-Lending Act, the National Banking Act and state consumer fraud statutes. After extensively litigating various aspects of liability, an additional nine months were then spent determining damages. The extraordinary complexity of the damage calculations required Mr. Schiffrin and experts from both parties to develop, test and utilize a novel computer model to ascertain total damages for the class and individualized damages for each class member. Ultimately, Mr. Schiffrin and his partner, Mr. Kessler, were able to negotiate a $156 million settlement, which represented approximately 66% of total damages. In approving the settlement, District Court Judge Leinenwebber of the Northern District of Illinois stated:

*. . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance.*

The entire settlement fund of $156 million was distributed without the filing of a single proof of claim form by any class member.

*Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

*Jordan v. State Farm Insurance Company, Case No. 97 CH 11 (Cir. Ct., McLean County, Ill. 1998):*

Schiffrin Barroway Topaz & Kessler brought a claim on behalf of multiple plaintiffs alleging that State Farm had engaged in fraudulent sales practices by "churning" policies and marketing and selling "vanishing premium" policies that never "vanished." After several years of discovery, motion practice and settlement negotiations, Mr. Schiffrin played a critical role in resolving the action for $225 million in cash, dividend enhancements and other monetary benefits for current and former State Farm policyholders. Schiffrin Barroway Topaz & Kessler also has achieved substantial settlements in 20 additional cases alleging fraudulent sales practices by various insurance companies.

Mr. Schiffrin has also represented defrauded shareholders and companies in complex class and derivative actions, including the following:

**_Huscher v. Curley, et al., No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (In re Sotheby's Holdings, Inc. Derivative Litigation):_**

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action arising out of Sotheby's alleged antitrust price fixing conspiracy with auction house rival Christie's International PLC. A multi-million dollar settlement was negotiated by Mr. Schiffrin whereby Diana Brooks (Sotheby's President at the time of the alleged wrongdoing) agreed to relinquish all of her Sotheby's stock options, and the Company's insurance carrier made a substantial monetary payment to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the litigation.

**ANDREW L. BARROWAY**, managing partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues, and recently spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm, and co-manages the firm's securities department. Of his numerous successful representations of shareholders, the following stand out as exceptional:

**_In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):_**

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

**_In re Digital Lightwave, Inc. Securities Litigation, Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):_**

The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions. After extensive litigation and negotiations, a settlement consisting primarily of stock ultimately grew to a value of over $170 million between the time in which the settlement was negotiated and the time at which it was distributed. Schiffrin Barroway Topaz & Kessler took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses. Schiffrin Barroway Topaz & Kessler believes that this represents the largest percentage recovery for shareholders in securities class action history.

Mr. Barroway, along with his partner, Mr. Kessler, has also negotiated substantial settlements of securities class actions in which Schiffrin Barroway Topaz & Kessler was Lead or Co-Lead Counsel against Pinnacle Holdings, Cell Pathways, Gateway, Mercator and NetSolve. Mr. Barroway currently represents numerous public pension funds, private investment funds, money management firms, and individuals in securities fraud litigation as Lead or Co-Lead Counsel.

**MARC A. TOPAZ,** a senior partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the Temple Law Review and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the New York University Tax Law Review. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz manages the firm's derivative, transactional and antitrust departments. In this regard, Mr. Topaz has been actively involved in litigating the following prominent cases:

### *In re MTC Electronic Shareholder Litigation, No. CV-93-0876 (E.D.N.Y. 1993):*

Schiffrin Barroway Topaz & Kessler served as Co-Counsel in a case involving securities fraud by MTC, its officers and directors, underwriters and accountants. The case presented novel issues of Chinese law, and required the construction of a database of hundreds of thousands of documents utilized in numerous party and non-party depositions. A $72 million settlement was achieved on the eve of trial.

### *In re Oppenheimer Capital, L.P., Unitholders Litigation, Consolidated No. 16022NC (Del. Ch. 1997):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that a merger proposed by Pimco Advisors benefitted certain Pimco insiders by disproportionately allocating tax benefits achieved from the restructuring of a limited partnership, and failing to provide adequate compensation to the Oppenheimer shareholders. Plaintiffs moved to enjoin the transaction and a settlement was reached whereby defendants agreed to pay a special dividend to Oppenheimer limited partners of approximately $16 million.

### *Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

**DAVID KESSLER**, a senior partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania. Mr. Kessler co-manages the firm's nationally recognized securities department. In addition, Mr. Kessler often lectures on securities litigation and was a featured speaker on hot topics in securities litigation in a seminar entitled "The Explosion and Evolution of Class Action Law" in December 2004 in Philadelphia, Pennsylvania, and the Corporate Governance Summit on Corporate Accountability in July 2003 in New York City. Mr. Kessler has achieved the following outstanding results in federal securities cases:

*In re Initial Public Offering Securities Litigation, Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):*

Mr. Kessler, along with Mr. Schiffrin, is presently heading up the firm's litigation efforts in its prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, Schiffrin Barroway Topaz & Kessler was one of only six selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which accompany the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history. At the present time, the court has preliminarily approved a $1 billion settlement with the issuers and their officers and directors. The class has also reached an agreement in principle to resolve the action against JP Morgan for $425 million, which is in the process of being memorialized and submitted to the Court for approval. The case is proceeding against the remaining underwriting defendants.

*In re PNC Financial Services Group, Inc. Litigation, Case No. 02-CV-271 (W.D. Pa. 2002):*

Schiffrin Barroway Topaz & Kessler served as Co-Lease Counsel and was instrumental in opbtaining a $30 million recovery for class members from PNC and the assignment of certain claims it may have had against its audit and other third party law firms and insurance companies, with respect to an alleged fraudulent scheme wherein non-performing assets were removed from PNC's books and transferred to special purpose entities that PNC allegedly still controlled. An additional $6.6 million was recovered from the insurance company and the law firms and an agreement in the principle has now been reached with the audit to resolve all claims for another $9.075 million, providing for a total recovery from the securities litigation of $45.675 million upon approval of the auditor settlement.  When coupled with the $156 million restitution fund established through government actions against some of the same defendants and third parties, the total recovery for class members exceeds $200 million.

*In re Assisted Living Concepts, Inc. Securities Litigation, Lead Case No. 99-167-AA (D. Or. 1999):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and

directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's startup losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

### *In re Cumulus Media Inc. Securities Litigation, Lead Case No. 00-C-391 (E.D. Wis. 2000):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and successfully litigated the action and negotiated a settlement of $13 million in cash and 240,000 shares of freely tradable stock in Cumulus Media, which traded for approximately $19 per share, for a total settlement value of $17.5 million at the time the settlement was approved by the Court.

**KATHARINE M. RYAN**, a partner of the firm, graduated *cum laude* from Villanova University School of Law in May 1984. Ms. Ryan is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Third Circuit and the United States Supreme Court. Ms. Ryan recently participated as a speaker in a legal teleconference entitled "Is the PSLRA's Safe Harbor Provision Safe?" Ms. Ryan is actively involved in litigating several of the firm's most prominent cases and was integral in the excellent results achieved in the following cases:

### *In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

### *In re New Power Holdings, Inc. Securities Litigation, No. 02 Civ. 1550 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Company's offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices.

**STUART L. BERMAN**, a partner of the firm, received his law degree from George Washington University National Law Center, and his undergraduate degree from Brandeis University. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Berman manages the firm's lead plaintiff department and has been instrumental in courts appointing many of the firm's institutional and individual clients as lead plaintiffs in important cases, such as:

*In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462- RSWL (C.D. Cal. 2002),*

*State of New Jersey and its Division of Investment v. Sprint Corporation, et al., No. 2:03-CV-02071-JWL (D. Kan. 2003),*

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002), State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003),*

*In re Delphi Corp. Sec. Litig., 1:05-CV-2637 (NRB) (S.D.N.Y. 2005);*

*In re Vaxgen Inc. Securities Litigation, No. C 03-01129 JSW (N.D. Cal. 2003),*

*In re American Business Financial Services, Inc., No. 04- 0265 (E.D. Pa. 2004)*

*In re Autobytel, Inc. Securities Litigation, No. CV04-8987 MMM (JWJx) (C.D. Cal. 2004).*

Mr. Berman represents and works with institutional investors worldwide in securities litigation and other related matters. In addition, Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, and has been a speaker at such events as The European Pension Symposium in Florence, Italy; the Public Funds Symposium 2005 in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; and the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities for Institutional Investors 2006 in Amsterdam, Netherlands; and the European Investment Roundtable 2006 in Barcelona, Spain. He speaks with institutional investors located around the world regarding their rights and obligations associated with securities fraud class actions and individual actions. Mr. Berman works closely with the firm's institutional investors and counsels them on fulfilling their fiduciary obligations and exercising their rights in all types of securities related actions.

Mr. Berman has specialized in the area of securities litigation for the past nine years. He is particularly proud of the results achieved in In re AremisSoft Corp. Sec. Litig., C.A. No. 01-CV-2486 (D.N.J. 2002), a case on which Mr. Berman and his partner, Richard Schiffrin, have worked extensively. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom are now fugitives. In settling the action, Schiffrin Barroway Topaz & Kessler, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, which was approved by the Court, called for the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The Court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained Schiffrin Barroway Topaz & Kessler to continue prosecuting the actions on behalf of the litigation trust. After extensive litigation in the Isle of Man, including the successful freezing of more than $200 million of stolen funds, the trust recently settled its action against one of the principal wrongdoers and recovered approximately $200 million. Thus far, the trust has distributed to beneficiaries of the trust more than 28% of their recognized losses (excluding the value of the equity of the new Company), and is poised to recover even more. Recently, the trust commenced further litigation in Cyprus, where it obtained

a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

**GREGORY M. CASTALDO**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey. Mr. Castaldo has been actively involved in litigating the following cases:

### *In re Tenet Healthcare Corp., 02-CV-8462 (C.D. Cal.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Tenet Healthcare and certain of its officers and directors defrauded Medicare out of hundreds of millions of dollars, materially overstated Tenet's revenues, and performed unnecessary cardiac surgeries to increase the Company's earnings. After three years of hard-fought litigation and complex mediation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement involving a $216.5 million payment from Tenet and the Company's former CEO and COO, and specific corporate governance improvements.

### *In re Liberate Technologies Securities Litigation, No. C-02-5017 (MJJ) (N.D. Cal. 2005):*

Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, Schiffrin Barroway Topaz & Kessler successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

### *In re Sodexho Marriott Shareholders Litigation,*

Consol. C.A. No. 18640-NC, Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

Mr. Castaldo is also presently *State of New Jersey and Its Division of Investment v. Sprint Corporation, et al.,* No. 03-2071-JWL (D. Kan. 2003) among other actions.

**MICHAEL K. YARNOFF**, a partner of the firm, received his law degree from Widener University School of Law. Mr. Yarnoff is licensed to practice law in Pennsylvania, New Jersey, and Delaware and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. He serves in the firm's securities litigation department and has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

### *In re CVS Corporation Securities Litigation, C.A. No. 01-11464 JLT (D.Mass.):*

After more than three years of contentious litigation and a series of protracted mediation sessions, Schiffrin Barroway Topaz & Kessler, LLP, serving as co-lead counsel, secured a $110 million recovery for class members in the CVS Securities Litigation. Specifically, the suit alleged that CVS violated accounting practices by delaying discounts on merchandise in an effort

to prop up its earnings. In addition, the suit charged that in 2001, the Company and its Chief Executive Officer, Thomas M. Ryan, improperly delayed announcement of its intention to close approximately 200 underperforming stores, and that an industry-wide pharmacist shortage would have a materially negative impact on the Company's performance. Settlement was reached just days prior to the commencement of trial, and shortly after the district court had denied the defendants' motions for summary judgment. This substantial recovery, which represents the third-largest settlement in a securities class action case in the First Circuit, received final approval from District Judge Joseph Tauro on September 27, 2004.

### *In re InfoSpace, Inc. Securities Litigation, Master File No. C-01-0913-Z (D. Wash. 2001):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that InfoSpace and certain of its officers and directors overstated revenues by using improper accounting methods, overstated the demand for InfoSpace's wireless services, misstated InfoSpace's financial relationships with major customers, and falsely represented that InfoSpace would receive subscription fees from users of web-enabled cell phones. After two years of hard-fought litigation and complex mediation, a settlement of $34.3 million was obtained for members of the class.

### *In re Riverstone Networks, Inc. Securities Litigation, Case No. CV-02-3581 (N.D. Cal. 2002):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five-months of mediation, the parties reached a settlement of $18.5 million.

**JOSEPH MELTZER**, a partner of the firm, concentrates his practice in the areas of ERISA and antitrust complex litigation. He is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice before numerous United States District Courts and United States Courts of Appeals, including the United States Court of Appeals for the Third Circuit.

Mr. Meltzer manages the firm's ERISA Litigation Department, which has excelled in the highly specialized area of prosecuting claims on behalf of retirement savings plans. Mr. Meltzer is lead counsel in several pending nationwide class actions brought under ERISA, including *Lewis v. El Paso Corp.* (S.D. Tex.); *In re Sears, Roebuck & Co. ERISA Litigation* (N.D. Ill.); *In re Loral Space ERISA Litigation* (S.D.N.Y.) and *In re Schering-Plough Corp. ERISA Litig.,* where the firm obtained an important ruling from the Third Circuit reversing the District Court's dismissal and confirming the rights of pension plan participants to pursue these claims. *See* 420 F.3d 231, *amended by* No. 04-CV-3073, 2005 U.S. App. LEXIS 19826 (3d Cir., Sept. 15, 2005). He is a frequent lecturer on ERISA litigation and employee benefits issues, is a member of the ABA's Section Committee on Employee Benefits and has been recognized by numerous courts for his ability and expertise in this complex area of the law. Since helping to establish the ERISA Litigation Department, Mr. Meltzer has recovered well over $250 million for retirement plan participants, including in the following prominent cases:

*In re AOL Time Warner ERISA Litig.*, C.A. No. 02-8853 (S.D.N.Y.):  The firm served as Co-Lead Counsel in one of the most successful ERISA class actions.  Following extensive litigation, including motions for summary judgment, Mr. Meltzer helped negotiate a settlement of $100 million for a class of retirement plan participants.  To date, this is the second largest settlement for a case of this type and the largest in a case involving a non-bankrupt company.

*In re Global Crossing Ltd. ERISA Litig.*, No. 02-7453 (S.D.N.Y.):  The firm served as Co-Lead Counsel in one of the earliest ERISA class actions involving employer securities and seeking relief under ERISA sec. 502(a)(2).  After extensive litigation and complex negotiations, the firm helped secure a recovery of over $78 million for retirees whose nest eggs were badly impacted by the collapse of Global Crossing.

Mr. Meltzer also manages the firm's Antitrust Department and serves as lead counsel in numerous nationwide antitrust actions where he represents such clients as the Pennsylvania Turnpike Commission, the Southeastern Pennsylvania Transportation Authority (SEPTA) and the Sidney Hillman Health Center of Rochester.  As lead counsel, he has helped obtain several multi-million dollar settlements, including settlements in *In re Remeron Antitrust Litigation*, 02-CV-2007 (D.N.J.) ($36 million settlement) and *In re Augmentin Antitrust Litigation*, 02-442 (E.D. Va.) ($29 million settlement).  Mr. Meltzer also lectures on issues related to antitrust litigation and is a member of the ABA's Section Committee on Antitrust Law.

In addition to the ERISA Litigation and Antitrust Departments, Mr. Meltzer manages the firm's Consumer Fraud Department.  An honors graduate of the University of Maryland, he received his law degree with honors from Temple University School of Law.  Prior to joining Schiffrin & Barroway, Mr. Meltzer practiced at Barrack, Rodos & Bacine in Philadelphia, where he had prominent roles in prosecuting several complex class actions to successful conclusions and also defended clients in antitrust and commercial litigation.

**DARREN J. CHECK**, a partner of the firm, concentrates his practice in the area of securities litigation and institutional investor relations.  He is a graduate of Franklin & Marshall College where he received a degree in History, *with honors*.  Mr. Check received his law degree from Temple University School of Law and is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado. Mr. Check began his career at Schiffrin Barroway Topaz & Kessler by working extensively with partner David Kessler on In re Initial Public Offering Securities Litigation, No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002), widely considered the largest securities class action in history.

Currently, Mr. Check concentrates his time as the firm's Director of Institutional Relations. He consults with institutional investors from around the world regarding their rights and responsibilities with respect to their investments and taking an active role in shareholder litigation. Mr. Check assists clients in evaluating what systems they have in place to identify and monitor shareholder litigation that has an affect on their investments, and also assists them in evaluating the strength of such cases and to what extent they may be affected by the conduct that has been alleged.  He currently works with clients in the U.S., Canada, United Kingdom, France, Italy, Sweden, Denmark, Finland, Norway, Germany, Austria, and the Netherlands. Mr. Check regularly speaks on the subjects of shareholder litigation, corporate governance, investor activism, and how Schiffrin Barroway Topaz & Kessler's services can be of use to investors.

Recently, Mr. Check spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the 2005 European Pension Symposium in Florence, Italy; the Public Funds Summit 2005 in Phoenix, Arizona; the European Investment Roundtable in Barcelona, Spain; The Rights & Responsibilities Of Institutional Investors: European and U.S. Approaches To Active Ownership in Amsterdam, Netherlands; the Corporate Governance & Responsible Investment Summit, Stockholm, Sweden; Pension Fund Investment World – Germany in Frankfurt, Germany; and the 2007 European Pension Symposium in Lisbon, Portugal.

**ANDREW L. ZIVITZ,** a partner of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Zivitz practiced with the Philadelphia law firms of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Drinker Biddle & Reath, LLP, where he litigated complex commercial and environmental matters.

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Zivitz concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in several of the largest class action securities cases currently pending nationwide. In addition, Mr. Zivitz has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

*In re Tenet Healthcare Corp., 02-CV-8462 (C.D.Cal.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of  plaintiffs, alleging that Tenet Healthcare and certain of its officers and directors defrauded Medicare out of hundreds of millions of dollars, materially overstated Tenet's revenues, and performed unnecessary cardiac surgeries to increase the Company's earnings. After three years of hard-fought litigation and complex mediation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement involving a $216.5 million payment from Tenet and the Company's former CEO and COO, and specific corporate governance improvements.

*In re Computer Associates, No. 02-CV-1226 (E.D.N.Y.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement of $150 million from the company.

*In re McLeod USA Inc., No. C02-0001-MWB (N.D. Iowa):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that McLeod USA and certain of its officers misrepresented the health and prospects of the company's business. After more than three years of litigation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement of $30 million from the defendants.

*In re Ligand Pharmaceuticals, Inc., 04-CV-1620-DMS (S.D. Cal):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and was instrumental in obtaining a recovery of $8.0 million for class members against Ligand Pharmaceuticals and certain of its officers. Plaintiffs brought claims against the defendants on the grounds that they touted the financial condition of the company and their ability to predict and monitor inventory returns when, in fact, the Company's revenues and earnings were artificially inflated and defendants had no ability to meaningfully predict or gauge inventory returns.

*In re Aon Corp., No. 02-CV-5631 (N.D. Ill.):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and was instrumental in obtaining a recovery of $7.25 million for class members against Aon Corp. and certain of its officers. Plaintiffs brought claims against the defendants on the grounds that they touted the prospects and successes of the company's multi-million dollar "Business Transformation Plan," when in fact they knew that the plan was damaging the company's business.

**SEAN M. HANDLER**, a partner of the firm, received his Bachelor of Arts degree from Colby College, graduating *with distinction* in American Studies. Mr. Handler then earned his Juris Doctor, *cum laude*, from Temple University School of Law.

After law school, Mr. Handler practiced labor law at Reed Smith, LLP in Philadelphia. Since joining Schiffrin Barroway Topaz & Kessler, Mr. Handler has concentrated his practice in the area of securities litigation, with a particular emphasis on client development, litigation strategy and lead plaintiff litigation. In this role, Mr. Handler has been responsible for numerous reported decisions.

In addition to these responsibilities, Mr. Handler also spends considerable time litigating ongoing securities litigation matters on behalf of institutional clients, including:

*In re Delphi Corporation Securities Litigation, No. 06-10026 (GER) (E.D. MI.)*

*Smajlaj v. Brocade Communications Systems, Inc., et al., No. 05-cv-02042 (CRB) (N.D. Cal.)*

*State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003).*

**JOHN A. KEHOE**, a partner of the firm, received his B.A. from DePaul University, and an M.P.A., *with high honors*, from the University of Vermont. He earned his J.D., *magna cum laude*, from Syracuse University College of Law, where he was an Associate Editor of the Syracuse Law Review, Associate Member of the Moot Court Board, and Alternate Member of the National Appellate Team.

During his legal career, Mr. Kehoe has litigated high profile securities and antitrust actions in federal and state courts, including *Ohio Public Employees Retirement System et al. v. Freddie Mac et al.*, 03-CV-4261 (S.D.N.Y) (resulting in a $410 million combined class and derivative settlement); *In re Bristol-Myers Squibb Sec. Litig.*, 02-CV-2251 (S.D.N.Y) (resulting in a $300 million class settlement); *In re Adelphia Communications Corp. Sec. & Der. Litig.*, No. 03 MD 1529 (S.D.N.Y) ( resulting in a $460 million class settlement); and *In re Vitamins Antitrust*

*Litig.,* MDL No. 1285 (D.D.C) (resulting in more than $2 billion in federal and state class and direct action settlements).

Mr. Kehoe is currently among the lead trial attorneys representing individual and institutional investors in 309 separate class actions that have been consolidated for pretrial purposes in *In re Initial Public Offering Sec. Litig.,* No. 21 MC 92 (S.D.N.Y.) ( resulting in over $1 billion in class settlements with additional claims pending against various underwriter defendants). He is also serving as lead or co-lead counsel in *Reynolds v. Repsol YPF S.A.*, 06-CV-00733 (S.D.N.Y.); *Mizzaro v. Home Depot Inc.,* 06-CV-1151 (N.D. Ga.); and *In re AremisSoft Corp. Sec. Litig.*, 01-CV-2486 (D.N.J.)

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kehoe spent six years as an associate at Clifford Chance LLP, where he represented Fortune 500 corporations and their officers and directors in complex commercial litigation and in actions brought by the Department of Justice, the Securities and Exchange Commission and the Federal Trade Commission.

Mr. Kehoe is a member of the Association of the Bar of the City of New York and the New York Bar Association and is admitted to practice before the courts of New York State (1999) and the U.S. District Court for the Southern District of New York (2000).

**LEE D. RUDY**, a partner of the firm, received his law degree from Fordham University in 1996. In law school he was a senior editor of the Fordham Urban Law Journal and published *A Procedural Approach to Limited Public Forum Cases*, 22 Ford. Urb. L.J. 1255 (1995). He received his undergraduate degree, *cum laude*, from the University of Pennsylvania in 1992. Mr. Rudy is licensed to practice law in Pennsylvania and New York. From 1996 to 2002, Mr. Rudy was an Assistant District Attorney in the Manhattan District Attorney's Office, where he prosecuted dozens of felony jury trials to verdict. From 2003 to 2005, Mr. Rudy was an Assistant United States Attorney in the District of New Jersey, where he investigated and prosecuted numerous fraud and violent crime cases, and where he tried several major fraud cases to verdict in federal court. Mr. Rudy co-manages the firm's mergers and acquisition and shareholder derivative litigation department along with Marc Topaz and Eric Zagar.

**KAY E. SICKLES**, a partner of the firm, received her law degree from the University of Pennsylvania School of Law. She received her undergraduate degree from Colgate University, graduating, *with honors,* from the History department. Prior to joining the firm, Ms. Sickles was an associate with Sandals & Langer, LLP, where she litigated complex class actions arising out of violations of the ERISA and antitrust statutes. She is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the Ninth and Seventh Circuit Courts of Appeal, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey.

Ms. Sickles concentrates her practice in the area of securities litigation and specializes in settlement matters. She has played a lead role in effectuating some of the most significant settlements of securities class action in recent years, including the partial settlement with Tenet Healthcare Corp. and certain officer of that corporation for $216.5 million in *In re Tenet Healthcare Corp. Sec. Litig.,* No. CV-02-8462-RSWL (Rzx) (C.D. Ca. 2006); the settlement for cash and common stock worth over $90 million in *In re Interpublic Sec. Litig.,* Civ. 6527 (DLC) (S.D.N.Y. 2004); and the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation,* Master File No. 98 Civ. 4839 (TCP) and *In re*

*Computer Associated 2002 Cass Action Securities Litigation*, Master File No., 02-CV-1226 (TCP) (E.D.N.Y.).

**ERIC L. ZAGAR**, a partner of the firm, received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the Michigan Law Review. He has practiced law in Pennsylvania since 1995, and previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice in Pennsylvania.

Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen,* Case No. 01- CC-03930 (Orange County, CA) (Broadcom Corp. Derivative Action); *In re PolyMedica Corporation Shareholder Derivative Litigation,* Case No. 01-3446 (Middlesex County, MA); *In Re Dynacq Int'l. Shareholder Derivative Litigation,* Case No. 2002- 07135 (Harris County, TX); and *Castillo v. Cavallaro, et al.,* Case No. A467663 (Clark County, NV) (Station Casinos, Inc. Class and Derivative Action). Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.

# ASSOCIATES AND OTHER PROFESSIONALS

**JULES D. ALBERT**, an associate of the firm, received his J.D. in 2005 from the University of Pennsylvania Law School, where he was a Senior Editor of the University of Pennsylvania Journal of Labor and Employment Law and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated *magna cum laude* with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and concentrates his practice in the mergers and acquisitions and stockholder derivative actions department.

**KATIE L. ANDERSON**, an associate of the firm, received her law degree from Widener University School of Law. She received her undergraduate degree from the University of Pittsburgh. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Anderson served as a Deputy Attorney General for the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, where she was responsible for enforcing a wide range of consumer oriented laws.

Ms. Anderson is licensed to practice law in Pennsylvania and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of mass tort litigation.

**IAN D. BERG**, an associate of the firm, received his J.D. and B.A. from Northwestern University. Mr. Berg concentrates his practice in the area of securities litigation and he plays a significant role in investigating and evaluating potential cases, including proprietary claims and direct actions on behalf of institutional clients. Prior to joining Schiffrin, Barroway, Topaz & Kessler, Mr. Berg primarily practiced in the areas of commercial litigation and land use on behalf of corporations and real estate investment trusts. He is licensed to practice law in Pennsylvania and Illinois.

**ROBERT W. BIELA**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the Environmental Law and Policy Journal. Mr. Biela received his undergraduate degree from West Chester University. Prior to joining the firm, Mr. Biela was an associate at Mager White and Goldstein, LLP. Mr. Biela is licensed to practice law in the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania. His practice focuses primarily in the area of securities litigation.

**KATHERINE B. BORNSTEIN**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania and Maryland. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Bornstein was an associate at Provost & Umphrey Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice at Schiffrin Barroway Topaz & Kessler in the areas of ERISA, antitrust and consumer protection.

**NICHOLE BROWNING**, an associate of the firm, received her B.A. degree from Emory University in 1994 and her J.D. degree from The American University, Washington College of Law in 1997.  Ms. Browning attended the Universidad de Chile in Santiago, Chile in 1995, where she studied human rights law.  She completed her final year of law school at Emory University School of Law.

Ms. Browning has spent most of her legal career representing plaintiffs in federal securities fraud and corporate governance claims.  At Schiffrin Barroway Topaz & Kessler LLP, Ms. Browning concentrates her practice in the areas of securities litigation and stockholders' derivative actions.

Ms. Browning is admitted to practice law in Georgia and has been admitted to practice before the Eleventh Circuit Court of Appeals, the United States District Court for the Northern District of Georgia, and all Georgia trial and appellate courts.  Ms. Browning is the co-author of "Private Securities Litigation Reform Act of 1995 (PSLRA) Update", which was a chapter in the *Class Actions ICLE of Georgia* (2002).

**JONATHAN R. CAGAN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Cagan received his undergraduate degree, *cum laude*, from Temple University. Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals. Mr. Cagan concentrates his practice in the area of securities litigation and specializes in discovery matters.

**EDWARD W. CIOLKO**, an associate of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. Prior to joining the firm, he served as an Attorney Advisor to Commissioner Sheila F. Anthony at the Federal Trade Commission. He is licensed to practice law in the State of New Jersey, and has been admitted to

practice before the United States District Court for the District of New Jersey. Mr. Ciolko concentrates his practice in the areas of antitrust, ERISA, and consumer protection.

**ALISON K. CLARK**, an associate of the firm, received her law degree, *cum laude*, from Boston University School of Law, and received her undergraduate degree in Political Science, with honors, from Lehigh University.  Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Clark was an attorney with a Fairfield County, Connecticut law firm, where she practiced in the areas of civil and commercial litigation, and real estate transactions. Ms. Clark is licensed to practice law in Connecticut, and has been admitted to practice before the United States District Court for the District of Connecticut. Ms. Clark concentrates her practice in the mergers and acquisitions and shareholder derivative department.

**MARK S. DANEK**, an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables. He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**JENNIFER L. ENCK,** an associate of the firm, received her law degree, *cum laude*, from Syracuse University College of Law in 2003 and her undergraduate degree in International Politics from The Pennsylvania State University in 1999.  Ms. Enck also received a Masters degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs.  Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Enck was an associate with Spector, Roseman & Kodroff, P.C. in Philadelphia, where she worked on a number of complex antitrust, securities and consumer protection cases.  Ms. Enck is licensed to practice law in Pennsylvania.  She concentrates her practice in the areas of securities litigation and settlement matters.

**ROBERT J. GRAY**, an associate of the firm, received his law degree from the Temple University School of Law.  Mr. Gray received Bachelor of Sciences degree from La Salle University with a dual major of Accounting and Finance.  Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gray was an associate at Philadelphia boutique litigation firm practicing in the areas of complex commercial litigation and corporate transactions.  Mr. Gray also worked as in-house counsel for a small, publicly-traded holding company.

Prior to beginning his law career, Mr. Gray worked as a forensic accountant for six years, conducting a variety of investigations for numerous governmental agencies and law firms.  He received his C.P.A. license in 1997.

Mr. Gray is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.  He concentrates his practice in the area consumer protection.

**JOHN GROSS**, an associate of the firm, received his law degree from Widener School of Law, and his undergraduate degree from Temple University. Mr. Gross is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the

Eastern District of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gross was an insurance defense litigation associate at a large, Philadelphia based firm. Mr. Gross now concentrates his practice in the areas of securities litigation, antitrust litigation and shareholder derivative actions.

**MARK K. GYANDOH**, an associate of the firm, received his undergraduate degree from Haverford College and his law degree from Temple University School of Law. While attending law school Mr. Gyandoh served as the research editor for the Temple International and Comparative Law Journal. He also interned as a judicial clerk for the Honorable Dolores K. Sloviter of the U.S. Court of Appeals for the Third Circuit and the Honorable Jerome B. Simandle of the U.S. District Court for New Jersey. After law school Mr. Gyandoh was employed as a judicial clerk for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division.

Mr. Gyandoh is the author of "Foreign Evidence Gathering: What Obstacles Stand in the Way of Justice?," 15 Temp. Int'l & Comp. L.J. (2001) and "Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to Be Learned from the United States" found in Redefining Europe (2005). Mr. Gyandoh is licensed to practice in New Jersey and Pennsylvania and concentrates in the area of ERISA, antitrust and consumer protection.

**BENJAMIN J. HINERFELD** is an associate at the firm, and concentrates his work in securities litigation.  In 1996, he graduated from the University of Pittsburgh School of Law, where he served as Lead Note and Comment Editor of the Journal of Law and Commerce. From 1996 to 1997, he clerked for the Hon. Sandra Schultz Newman of the Supreme Court of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Hinerfeld worked in a securities litigation firm in Wilmington, Delaware.

From 2000 to 2003, Mr. Hinerfeld was a writing consultant with the Undergraduate Writing Center at the University of Texas at Austin. During that time he also co-authored, with Dr. Sarah Jane Rehnborg and Catherine Fallon, "Investing in Volunteerism: The Impact of Service Initiatives in Selected Texas State Agencies" a report prepared by The RGK Center for Philanthropy and Community Service, LBJ School of Public Affairs. He received his bachelor's degree from Vassar College and a master's degree in American History from the University of Texas at Austin.

Mr. Hinerfeld is licensed to practice law in Pennsylvania.

**MICHAEL J. HYNES**, an associate of the firm, received his law degree from Temple University School of Law, and is a graduate of Franklin and Marshall College. Mr. Hynes is licensed to practice law in Pennsylvania, New Jersey and Montana, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Hynes practiced law at Cozen O'Connor, where he concentrated on bankruptcy and commercial litigation. He was an attorney with the Defenders' Association of Philadelphia from 1991 to 1996, where he defended thousands of misdemeanor and felony cases. At Schiffrin Barroway Topaz & Kessler, Mr. Hynes concentrates his practice in the areas of securities litigation and shareholder derivative litigation.

**TARA P. KAO**, an associate of the firm, received her J.D. from Villanova University School of Law, where she was a Managing Editor of Student Works for the Villanova Law Review.  Ms.

Kao received her Bachelor of Science in Business/Finance, *with honors*, from Carnegie Mellon University.  She is licensed to practice law in Pennsylvania, and concentrates her practice in the area of mergers and acquisitions and shareholder derivative actions.

**D. SEAMUS KASKELA, a**n associate of the firm, received his law degree from Rutgers School of Law – Camden, and received his undergraduate degree in Sociology from Saint Joseph's University. Prior to graduating from law school and joining Schiffrin Barroway Topaz & Kessler, LLP, Mr. Kaskela was a law clerk with a large Philadelphia law firm, where he worked in the complex civil litigation department. Mr. Kaskela is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania (pending) and the United States District Court for the District of New Jersey. Mr. Kaskela works in the firm's case development department

**JENNIFER L. KEENEY**, an associate of the firm, received her law degree, *cum laude*, from Temple University Beasley School of Law, where she was the Special Projects Editor for the Temple International and Comparative Law Journal. Ms. Keeney earned her undergraduate degree in History, *with honors*, from Washington University in St. Louis in 2003. She is licensed to practice in Pennsylvania and concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**ERIC LECHTZIN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Lechtzin received his undergraduate degree in Political Science and Economics, *magna cum laude*, from Temple University, where he received Phi Beta Kappa honors. Mr. Lechtzin is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Lechtzin was an associate with the firm of Grant & Eisenhofer, P.A., where his practice was concentrated in federal securities class actions and corporate governance litigation. Mr. Lechtzin spent the first ten years of his career at two large Philadelphia law firms where he represented corporate and public sector clients in a wide range of complex commercial litigation, including toxic torts, labor and employment, insurance, and environmental law. Mr. Lechtzin has extensive trial experience and has argued appeals before the Supreme Court of Pennsylvania and other appellate courts. Mr. Lechtzin concentrates his practice with Schiffrin Barroway Topaz & Kessler in the area of securities class action litigation and is Lead or Co-Lead Counsel in several class action securities cases currently pending nationwide. In addition, Mr. Lechtzin has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following: *In re Global Crossing Access Charge Litigation*, No. 04-MD-1630 (S.D.N.Y.), in which Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs and helped obtain a settlement of $15 million from the company; *In re Van der Moolen Holding N.V. Securities Litigation*, No. 1:03-CV-8284 (S.N.D.Y.), in which Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs and helped obtain a settlement of $8 million from the company; and *Scott Tanne v. Autobytel, Inc. et al*., No. CV 04-8987 (C.D. Cal.), in which Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel on behalf of plaintiffs and obtained a settlement of $6.75 million from the company.

**JAMES A. MARO, JR.,** an associate of the firm, received his law degree from the Villanova University School of Law in 2000. He received a B.A. in Political Science from the Johns Hopkins University in 1997. Mr. Maro is licensed to practice law in Pennsylvania and New

Jersey and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of mergers and acquisitions and shareholder derivative actions.

**RICHARD A. MANISKAS**, an associate of the firm, received his law degree from Widener University School of Law, and received his undergraduate degree from the University of Pittsburgh. While in law school, Mr. Maniskas served as Internal Editor of the *Widener Journal of Public Law*. He is licensed to practice law in Pennsylvania and the District of Columbia, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Maniskas works in the firm's case development department.

**LISA MELLAS**, an associate of the firm, received her law degree from the University of Florida College of Law and her undergraduate degree from the University of Florida.  Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Ms. Mellas was an associate at White and Williams, LLP, where she practiced in the Property Department.  Ms. Mellas is licensed to practice in New York, New Jersey and Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the District of New Jersey. She concentrates her practice at Schiffrin Barroway Topaz and Kessler in the area of consumer protection and ERISA

**JAMES H. MILLER**, an associate of the firm, received his J.D. in 2005 from Villanova University School of Law, where he was enrolled in Villanova University's J.D./M.B.A. program. Mr. Miller received his Master of Business Administration from Villanova University in 2005, and received his Bachelor of Chemical Engineering from Villanova University in 2002. Mr. Miller is licensed to practice law in Pennsylvania and concentrates his practice in the areas of mergers and acquisitions and shareholder derivative actions.

**CASANDRA A. MURPHY**, an associate of the firm, received her law degree from Widener University School of Law and her undergraduate from Gettysburg College. Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Ms. Murphy was an associate at Post & Schell, P.C. where she practiced general casualty litigation. Ms. Murphy is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United State District Court for the Eastern District of Pennsylvania. Ms. Murphy has lectured for the Pennsylvania Bar Institute and the Philadelphia Judicial Conference. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

**CHRISTOPHER L. NELSON**, an associate of the firm, received his law degree from Duke University School of Law, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator.

Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Fourth, Fifth and Ninth Circuits, and the United States District Court for the Eastern District of Pennsylvania.

Mr. Nelson concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in numerous pending nationwide class action securities cases.

**MICHELLE M. NEWCOMER,** an associate of the firm, received her law degree from Villanova University School of Law. Ms. Newcomer received her undergraduate degrees in Finance and Art History from Loyola College in Maryland in 2002. Ms. Newcomer is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**KAREN E. REILLY**, an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Reilly practiced at Pelino & Lentz, P.C., in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

**STEVEN D. RESNICK**, an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, *cum laude*, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick now concentrates his practice in the area of mass tort and product liability litigation.

**EMANUEL SHACHMUROVE**, an associate of the firm, received his law degree from The University of Michigan Law School, where he was an Associate Editor of the Michigan Journal of Law Reform. Mr. Shachmurove received his Bachelor of Science in Economics, *cum laude*, from The Wharton School at the University of Pennsylvania, where he was a Joseph Wharton Scholar. Mr. Shachmurove concentrates his practice in mergers and acquisitions and shareholder derivative litigation.

**BHARATI O. SHARMA**, an associate of the firm, received her law degree from the American University Washington College of Law, a Master of Public Administration from The George Washington University, and her undergraduate degree from the University of Pittsburgh. Ms. Sharma is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey.

Ms. Sharma is a former judicial law clerk to the Honorable Stephen Skillman, Superior Court of New Jersey, Appellate Division, and a former member of American University's International Law Review. She is the founder and current President of the South Asian Bar Association of Philadelphia. Ms. Sharma also serves on the Executive Committees of the North American South Asian Bar Association and the Philadelphia Bar Association Young Lawyer's Division.

Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Sharma practiced complex civil litigation at a Philadelphia law firm. She now concentrates her practice in the areas of pharmaceutical and product liability litigation.

**BENJAMIN J. SWEET**, an associate of the firm, received his juris doctor from The Dickinson School of Law, and his BA, *cum laude*, from the University Scholars Program of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the Dickinson Law Review, and was also awarded Best Oral Advocate in the ATLA Junior Mock Trial Competition. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Sweet practiced in the Pittsburgh office of Reed Smith LLP, where he specialized in complex civil litigation. While at Reed Smith, Mr. Sweet co-authored "Assignability of Non-Compete Covenants," 74 Pa. Bar. Q. 64 (April 2003). Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Ninth Circuit.

Mr. Sweet concentrates his practice in the area of securities litigation and has helped obtain several multi-million dollar settlements on behalf of class members in several nationwide federal securities class actions, including *In re CVS Pharmacy, Inc. Secs. Litig.*, No. 01-11464 (D.Mass. 2005) ($110 million recovery for Class members), *In re Zomax Inc. Secs. Litig.*, No. 04-cv-1155 (D.Minn. 2005) (multi-million dollar cash and stock recovery for Class members), *In re Flextronics Int'l Ltd. Secs. Litig.*, No. 03-cv-2102 (N.D. Cal. 2004) ($4.25 million recovery for Class members) and *In re Black Box Corp. Secs. Litig.*, No. 03-cv-412 (W.D. Pa. 2004) (multi-million dollar recovery for Class Members). Mr. Sweet is currently Lead or Co-Lead Counsel in several pending nationwide class action securities cases, including *In re Tyco Int'l Ltd. Secs. Litig.*, MDL Docket No. 02-1335-B (D.N.H.) and *In re PNC Financial Services Group, Inc. Secs. Litig.*, No. 02cv271 (W.D. Pa.).

**MICHAEL C. WAGNER**, is an associate of the firm, received his undergraduate degree in Government from Franklin & Marshall College, and his law degree from the University of Pittsburgh School of Law in 1996. Mr. Wagner is licensed to practice law in Pennsylvania, and he has been admitted to practice in the United States Court of Appeals for the Third Circuit, and United States District Courts for the Eastern and Western Districts of Pennsylvania, for the Eastern District of Michigan, and for the District of Colorado.

Before joining Schiffrin Barroway Topaz & Kessler, Mr. Wagner worked at Rubin, Fortunato & Harbison, a boutique law firm in Paoli, PA, representing Fortune 100 corporations, as well as individuals and small businesses, in employment matters across the country. Mr. Wagner earlier worked for several years at Spector, Gadon & Rosen, in Philadelphia, concentrating his practice in complex commercial and corporate litigation. At Schiffrin Barroway Topaz & Kessler, Mr. Wagner focuses his practice in the areas of securities litigation and shareholder derivative litigation.

**JOSEPH A. WEEDEN**, an associate of the firm, received his law degree from the University of North Carolina School of Law, where he received the Gressman-Politt Award for outstanding oral advocacy. Mr. Weeden also received his undergraduate degree from the University of North Carolina at Chapel Hill, where he was a Joseph E. Pogue Scholar. Prior to joining the firm, Mr. Weeden was an associate at Kaufman & Canoles, P.C., where he practiced in the areas of commercial and business law. Mr. Weeden is licensed to practice law in Virginia, and concentrates his practice in the area of complex ERISA litigation.

**GERALD D. WELLS, III**, an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the Environment Law & Technology Journal. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of

Pennsylvania, the United States District Court for the District Court of New Jersey, and the United States District Court for the Eastern District of Michigan.

Mr. Wells concentrates his practice in the areas of antitrust, ERISA, and consumer protection, and FLSA/overtime litigation and has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Bristol-Myers Squibb ERISA Litigation*, No. 02-CV-10129 (LAP) ($41.22 million in cash plus structural remedies valued at up to $52 million) and *Falk v. Amerada Hess Corp., et al.,* No. 03-CV-2491-FSH-PS ($2.25 million in cash plus structural remedies valued at up to $23.8 million); and *In re Westar Energy Inc. ERISA Litig.,* No. 03-4032-JAR (D. Kan.) ($9.25 million cash settlement). Mr. Wells currently serves as counsel in several pending nationwide class and collective actions.

**ROBIN WINCHESTER**, an associate of the firm, received her law degree from Villanova University School of Law, and received her undergraduate degree in Finance from St. Joseph's University. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania. Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of shareholder derivative actions.

**TERENCE S. ZIEGLER**, an associate of the firm, received his law degree from the Tulane University School of Law. Mr. Ziegler received a Bachelor of Business Administration degree with a concentration in Finance from Loyola University. Mr. Ziegler is licensed to practice law in the State of Louisiana, and has been admitted to practice before the United States Court of Appeals for the Fifth Circuit, the United States District Court for the Eastern District of Louisiana and the United States District Court for the Middle District of Louisiana. Mr. Ziegler concentrates his practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

# OF COUNSEL

**ROBERT M. BRAMSON** has more than twenty-five years of experience in the litigation of antitrust and consumer cases, class actions and other complex litigation. Mr. Bramson received his undergraduate degree in economics, *summa cum laude*, from the University of California at Berkeley in 1977, and obtained his law degree from the Boalt Hall School of Law in 1981. Mr. Bramson is a member of the California Bar.

Mr. Bramson has represented both plaintiffs and defendants in numerous antitrust cases, and has acted as lead counsel in two such actions taken to trial - *Pacific West Cable Co. v. City of Sacramento, et al.* (E.D. Cal.) ($12 Million settlement on 24th day of trial, at close of plaintiff's case; Sherman Act §2 monopolization claims) and *Coleman et al. v. Sacramento Cable Television* (Sacramento Sup. Ct.) ($2.4 Million judgment after 17-day trial; class action/B & P §17200 case; B & P §17204 discriminatory pricing claims).

Mr. Bramson specializes in antitrust, business torts and communications litigation, as well as in class action cases. He served for many years on the Board of Directors of the National

Association of Consumer Advocates and co-chaired its class action committee. He is a contributing author to the National Consumer Law Center's publication Consumer Class Actions. He acted as reporter for the National Association of Consumer Advocates in preparing its influential Standards and Guidelines For Consumer Class Actions, 176 F.R.D. 375 (1997).

Mr. Bramson's lecture topics have included "Strategic and Ethical Issues in Litigating 17200 Cases" (Bar Association of San Francisco, San Francisco 2001), "Equitable Remedies In Class Actions and Under California's Section 17200 Statute" (National Association of Consumer Advocates, Chicago 2000), "Ethical Issues Arising in Class Action Settlements" (National Consumer Law Center, Wash. DC and San Diego 1999 and 1998) "California's Business & Professions Code Section 17200" (California Bar Association, Lake Tahoe 1997), "Preparation of Competitive Business Practices Cases" (Continuing Education of the Bar, Sacramento 1997), and "The Cable Communications Policy Act of 1984" (California State University, Fullerton 1993).

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Bramson is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.


**ALAN R. PLUTZIK** specializes in complex business litigation in state and federal courts throughout the United States. Areas of particular emphasis include class actions, securities fraud and corporate governance litigation, consumer law, antitrust, constitutional and communications law. Mr. Plutzik is admitted to practice in California and the District of Columbia (inactive member), and is a member of the bars of the United States Supreme Court, the Second, Eighth, Ninth, Tenth and District of Columbia Circuits and numerous federal district courts throughout the United States.

Mr. Plutzik received his law degree from the University of California at Berkeley's Boalt Hall School of Law in 1977. He received his undergraduate degree from St. John's College, Annapolis, Maryland, in 1971, and also holds an M. A. from Stanford University. Over the course of his twenty-nine year career, Mr. Plutzik has also handled a wide variety of class actions and derivative cases. He has represented, among other clients, corporate shareholders and limited partners challenging conduct by their general partners, officers or directors; consumers and businesses harmed by price-fixing and other anticompetitive conduct; consumers in actions against insurance companies, banks and other lenders; investors in securities fraud cases and derivative suits; employees in ERISA and wage/hour cases; purchasers of mislabeled and defective products; victims of toxic pollution; persons harmed by defective products; and cellular telephone and cable television subscribers.

Mr. Plutzik has also handled a substantial number of cases that raise First Amendment and other constitutional issues, and has represented broadcasters, cable television companies, communications common carriers and consumers in litigation and in administrative proceedings before the Federal Communications Commission and the California Public Utilities Commission.

Mr. Plutzik has written or lectured on topics that include class actions, California consumer law, substantive and procedural issues under the federal securities laws, First Amendment issues applicable to new media, cable television franchising and cable television companies' access to utility poles and real estate developments. He has appeared as a guest radio commentator on the

Len Tillem Show on KGO-Radio in San Francisco, discussing class actions, consumer protection law and investor rights.

Mr. Plutzik has served as a judge pro tem on the Contra Costa County Superior Court. He is also President of the Warren W. Eukel Teacher Trust, a community-based charity that honors outstanding teachers in Contra Costa County, California.

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Plutzik is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**L. TIMOTHY FISHER** specializes in consumer and securities class actions and complex business litigation. He has been actively involved in several cases in which multi-million dollar recoveries were achieved for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and fraud. Mr. Fisher is a member of the California Bar.

Mr. Fisher received his Juris Doctorate from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Fisher is an associate in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.


## CONSULTANTS

**KEVIN P. CAULEY** serves in the firm's business development and institutional relations department. Mr. Cauley is a graduate of Temple University. Prior to joining the firm, Mr. Cauley was Director of Business Development for a multi-family office in New York City. Mr. Cauley also has prior experience in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania. He is also an active member of The Pennsylvania Future Fund, A.O.H. Division 88 "Officer Danny Boyle Chapter," The Saint Andrews Society, The Friendly Sons of Saint Patrick, The Clover Club of Philadelphia, The Foreign Policy Research Institute, a Board Member of The Princeton Committee on Foreign Relations, and is an elected member to The Pennsylvania Society and The Union League of Philadelphia, where he serves on the Armed Services Committee.

**PETER KRANEVELD**, an advisor to the firm, will work with Schiffrin Barroway Topaz & Kessler to analyze and work on issues such as corporate governance, shareholder rights and activism and how these fit into the interests of the firm's large international client base of pension funds and other institutional investors.  An economist by training. Mr. Kraneveld has a long history of working with pension funds and other institutional shareholders.  He recently completed an eight year stint working with Dutch pension fund PGGM, a public pension fund for the healthcare sector in the Netherlands, and one of the largest pension funds in Europe.  Mr. Kraneveld's last three years at PGGM were spent as a Special Advisor for International Affairs where his main responsibilities included setting up a network among national and international lobbying organizations, domestic and foreign pension funds and international civil servants and using it to promote the interests of the pension fund industry.  Mr. Kraneveld served as Chief Economist for PGGM's Investments Directorate from 1999 until 2004 where his accomplishments included the Tactical Asset Allocation process and designing alternative scenarios for Asset Liability Management.

Prior to his work with PGGM, Mr. Kraneveld worked with the Organisation for Economic Co-operation and Development (OECD) and the Dutch Ministry of Economic Affairs.

**DAVID RABBINER** serves as Schiffrin Barroway Topaz & Kessler's Director of Investigative Services. As the firm's lead investigations necessary to further and strengthen the firm's class-action litigation efforts. Although his investigative services are primarily devoted to securities matters, Mr. Rabbiner routinely provides litigation support, conducts due diligence, and lends general investigative expertise and assistance to the firm's other class-action practice areas. Mr. Rabbiner plays an integral role on the firm's legal team, providing critical investigative services to obtain evidence and information to help ensure a successful litigation outcome. Before joining Schiffrin Barroway Topaz & Kessler, Mr. Rabbiner enjoyed a broad-based, successful career as an FBI Special Agent, including service as an Assistant Special Agent in Charge, overseeing multiple criminal programs, in one of the Bureau's largest field offices. He holds an A.B. in English Language and Literature from the University of Michigan and a Juris Doctor from the University of Miami School of Law.

# EXHIBIT D

# GRANT & EISENHOFER P.A.

## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with more than 40 attorneys that concentrates on federal securities and corporate governance litigation and other complex class actions. G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The firm was named to the National Law Journal's Plaintiffs' Hot List each of the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York and Washington, G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, New York City Retirement System, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the firm's partners have gained national reputations in securities and corporate litigation. The firm has obtained over six billion dollars in cases where the firm has served as lead counsel. Institutional Shareholder Services' scorecard of securities litigators consistently ranks G&E in the top 5 firms in total shareholder recoveries as well as in the top 5 firms for average shareholder recovery. G&E has been lead counsel in some of the largest securities class action recoveries in U.S. history:

> $3.2 billion settlement from Tyco International Ltd.

> $450 million Pan-European settlement from Royal Dutch Shell

> $444 million settlement from Global Crossing Ltd.

> $300 million recovery from Oxford Health Plans

> $300 million settlement from DaimlerChrysler Corporation

> $276 million judgment & settlement from Safety-Kleen

G&E has also achieved landmark results in corporate governance litigation:

> *Caremark / CVS Merger* - G&E represented institutional shareholders challenging the conduct of the Caremark board in connection with the merger agreement with CVS, and its rejection of a competing proposal. G&E was able to force Caremark to provide additional disclosures to public shareholders and to renegotiate the merger agreement with CVS

to provide Caremark shareholders with an additional $3.19 billion in cash consideration and statutory appraisal rights.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client will enable proxy access for shareholders to nominate director candidates, long considered the "holy grail" for investor activists.

*In re Digex, Inc. Shareholders Litigation* - $420 million settlement – the largest recovery in the history of the Delaware Court of Chancery.

*Teachers' Retirement System of Louisiana v. HealthSouth* – ousted holdover board members loyal to indicted CEO Richard Scrushy, and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – resulted in the seminal ruling that "dead-hand" poison pills are *illegal*.

*State of Wisconsin Investment Board v. Medco Research, Inc., et al*. - forced corrective disclosures and delayed vote on merger, resulting in $48 million increase to *shareholders*.

*TRSL v. Thomas M. Siebel, et al*. – forced Siebel Systems to restructure its entire compensation system as well as cancel 26 million management stock options with a value of over $56 million.

*Unisuper Ltd. v. News Corp., et al*. – forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

G&E currently serves as lead counsel in the securities class actions involving, among others, Tyco International, Marsh & McLennan, Parmalat and Refco.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions. They also frequently write and speak on securities and corporate governance issues. Jay Eisenhofer recently co-authored "The Shareholder Activism Handbook" and was named by Treasury and Risk Magazine one of the 100 most influential people in finance.

G&E is proud of its success in 'fighting for institutional investors' in courts and other forums across the country and throughout the world.

**Grant & Eisenhofer's Attorneys**

**Jay W. Eisenhofer**

Jay Eisenhofer, founder and managing partner of G&E, has been lead counsel in many of the largest securities class action recoveries in history including the $3.2 billion settlement in the Tyco case, the $450 million settlement in the Global Crossing case, and the historic $450 million pan-European settlement in the Shell case. Mr. Eisenhofer was the lead attorney in the seminal cases of *American Federation of State & County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.* where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law. Mr. Eisenhofer has been prominently featured in Law Dragon's formidable 'Law Dragon 500' list of leading litigators in America, Treasury and Risk Management magazine selected Mr. Eisenhofer as one of the 100 Most Influential People in Finance, and the National Law Journal has selected Grant & Eisenhofer as one of the top ten plaintiffs' law firms in the country for the last two years. He has served as litigation counsel to many of the largest public and private institutional investors in the world, including CalPERS, Colorado Public Employees Retirement Association, the Florida State Board of Administration, the Teachers' Retirement System of Louisiana, Ohio Public Employee Retirement Systems, Stichting Pensioenfonds ABP, and Franklin Advisers, Inc. He is currently lead counsel in the securities class actions involving Apple Computer and Marsh & McLennan, among others.

Mr. Eisenhofer is a graduate of the University of Pittsburgh (1978), and the Villanova University School of Law, *magna cum laude* (1986), Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming G&E in 1997.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in AFSCME Employees Pension Plan v. American International Group, Inc." *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "In re Walt Disney Co. Deriv. Litig. and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practicing Law Institute*, July, 2006; "In re Cox Communications, Inc.: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

**Stuart M. Grant**

Stuart M. Grant is a founder and managing partner of Grant & Eisenhofer. His practice consists primarily of representing institutional investors nationwide in securities and corporate governance litigation, proxy contests, and other related matters. Mr. Grant has successfully argued on behalf of institutional investors in many groundbreaking cases including: *Gluck v. CellStar* (in which State of Wisconsin Investment Board was the first institution named as lead plaintiff pursuant to the PSLRA over the objection of first filed plaintiffs), and *In re Digex Stockholders Litigation* (in which lead plaintiff provisions were established in Delaware, and in which plaintiffs achieved the largest settlement in Delaware Chancery Court history) , and *In re UniSuper Ltd., et al. v. News Corporation, et al.* (a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter). Most recently, Mr. Grant was lead trial counsel in the six-week securities class action trial of *In re Safety-Kleen Corp. Bondholders Litigation*, which resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million, and settlements with the remaining defendants for $84 million.

Mr. Grant is a frequent speaker on securities issues, particularly from the institutional investor perspective, at the Practising Law Institute, the Council of Institutional Investors and at other securities fora. In 2004, he taught at PricewaterhouseCoopers/University of Delaware Directors' College. Mr. Grant has also testified on behalf of institutional investors before the SEC and before the Third Circuit Panel on Appointment of Class Counsel. He has published numerous articles on securities litigation including: "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act," 1070 PLI/CORP. 547 (1998); Practising Law Institute, 1998; "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2000," 1199 PLI/CORP. 455 (2000); Practising Law Institute, 2000; "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2001," 1269 PLI/CORP. 689 (2001); "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2002," 1332 PLI/CORP. 695 (2002); "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2003," 1386 PLI/CORP. 553 (2003); "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004); "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness," 1505 PLI/CORP. 83 (2005); "*Unisuper v. News Corporation:* Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power," 1557 PLI/CORP. 17 (2006); "Institutional Investors and Section 18 of The Exchange Act," The Review of Securities & Commodities Regulation, Vol. 33, No. 5, S&P, March 14, 2000; and "Class Certification and Section 18 of the Exchange Act," the Review of Securities and Commodities Regulation, Vol. 35, No. 21, S&P, December 11, 2002.

Prior to forming Grant & Eisenhofer in 1997, Mr. Grant was a litigation partner in the Wilmington office of the Philadelphia-based firm of Blank Rome Comisky & McCauley, and prior to that an associate at Skadden Arps Slate Meagher & Flom, LLP. Since 1994, he has been an Adjunct Professor of Law at the Widener University School of Law in Wilmington, leading a securities litigation seminar for third-year law students, and is also a Certified Teacher for the National Institute of Trial Advocacy (NITA). Mr. Grant graduated in 1982 *cum laude* from Brandeis University with a B.A. in Economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the United States District Court for the Southern District of New York.

**Megan D. McIntyre**

Ms. McIntyre, a G&E partner, practices in the areas of corporate, securities, and complex commercial litigation. Among other significant work, she has represented institutional investors -- both public and private -- in corporate cases in the Delaware Court of Chancery, as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial in the Spring of 2005. In 2006, she was a member of the litigation team in the landmark case of *UniSuper Ltd. v. News Corporation*, where the Delaware Court of Chancery ruled that shareholders may contractually limit directors' authority without amending the certificate of incorporation. Ms. McIntyre has successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions, and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law. She was also the principal author of the firm's amicus curiae brief on behalf of the Council of Institutional Investors (CII), filed in the Delaware Supreme Court in the Walt Disney derivative litigation, urging the Court's adoption as Delaware law of the CII's standards or criteria for determining director "independence." At present, she has a lead role in class actions involving Refco and Able Laboratories, in shareholder derivative actions involving Tyson Foods and Cablevision, and in several cases on behalf of clients who have opted out of securities class actions to pursue individual actions.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and has authored or co-authored a number of articles involving issues of Delaware corporate law and the federal securities laws, including: "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is So Fraught With Uncertainty That They May Be Void for Vagueness," 1505 PLI/Corp 83 (Sept. 2005); "Class Certification and Section 18 of the Exchange Act," The Review of Securities and Commodities Regulation, Vol. 35, No. 21, *Standard & Poor's* (Dec. 2002); "The Statutory Right of Inspection: An Important But Often Overlooked Tool," *Corporate Governance Advisor*, Vol. 9, No. 2 (May/June 2001); and "Causes of Action Available to Investors Under Delaware Law, Parts I and II," *Insights* (Oct. 1996; Nov. 1996).

Ms. McIntyre is a graduate of The Pennsylvania State University (1991) and The Dickinson School of Law (*magna cum laude* 1994), where she was an Articles Editor for the Dickinson Law Review. Ms. McIntyre is a member of the Delaware State Bar Association. Prior to joining Grant & Eisenhofer, Ms. McIntyre was associated with the Wilmington, Delaware offices of both Skadden Arps Slate Meagher & Flom, LLP and Blank Rome Comisky & McCauley, in their respective litigation departments.

**Geoffrey C. Jarvis**

Mr. Jarvis is a partner of Grant & Eisenhofer focusing on securities litigation for institutional investors. He had a major role in the Oxford Health Plans Securities Litigation and the DaimlerChrysler Securities Litigation, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial. At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions, and also has a lead role in class actions pending against Tyco, Alstom and Sprint.

Mr. Jarvis graduated from Cornell University in 1980 with a B.A. in Government and Economics, and was elected to Phi Beta Kappa. He received his J.D., *cum laude*, from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well in counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis previously was associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistle Blower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the United States Court of Appeals for the Third Circuit.

Mr. Jarvis recently authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, as well as co-authoring "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004 (co-authored with Jay Eisenhofer and James R. Banko).

## Sidney S. Liebesman

Mr. Liebesman, a partner at G&E, concentrates his practice in shareholder derivative litigation, primarily in the Delaware Chancery Court internal investigations, and complex class action litigation involving shareholder rights, securities fraud, and consumer protection. Mr. Liebesman represents a number of sophisticated institutional investors in high-profile securities fraud actions, including *In re Tyco International, Ltd. Securities Litigation, In re Enron Corp. Securities Litigation, In re WorldCom, Inc. Securities Litigation* and *In re Global Crossing Ltd. Securities Litigation.*

Mr. Liebesman is a graduate of the Villanova University School of Law (1995) and the University of Delaware (1986). While attending Villanova Law School, he served as an Editor of the Villanova Environmental Law Journal and was a finalist in the 35th Annual Reimel Moot Court competition.

Mr. Liebesman has lectured before various groups on corporate governance and litigation matters, and speaks regularly at conferences for public pension fund trustees and administrators. Mr. Liebesman has also authored several articles including, "Caught By the Net, What To Do If A Message Board Messes With Your Client" (co-author), ABA Business Law today, Vol. 10, No. 1; "Internet Message Board Litigation—Time Is Of The Essence" (co-author), ABA Network, Vol. 8, Issue 1; "Brief on Baseball's Antitrust Exemption," Villanova Sports & Entertainment Law Forum Vol. 2; and "Triggering an Obligation: Receipt of an EPA PRP Letter and Insurer's Duty to Defend," Villanova Environmental Law Journal Vol. 5.

Mr. Liebesman was formerly a police officer with the New Castle County, Delaware Police Department, where he served on the Department's Emergency Response Team and received many commendations. He has lectured to law enforcement officers and agencies regarding civil rights litigation. He is also the founder and president of the Chesapeake Police and Fire Foundation, created for the benefit of survivors of police officers and firefighters killed in the line of duty.

**John C. Kairis**

As a G&E partner, Mr. Kairis represents sophisticated institutional investors in class action and individual "opt-out" securities litigation, and in derivative and corporate governance litigation in Delaware Chancery Court and other courts throughout the country. Mr. Kairis has been a leader of G&E teams that have achieved landmark results for clients, including some of the largest recoveries in securities class action history. He is currently representing British pension fund Hermes Focus Asset Management Europe Ltd. and other purchasers of Parmalat Finanziaria securities in a securities class action against Parmalat. He is also representing Teachers' Retirement System of Louisiana in a securities class action against Hollinger International, Inc. and its officers, directors and auditors and just concluded litigation and a settlement on behalf of Stichting Pensioenfonds ABP, the pension fund for government and education authorities in the Netherlands, in an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners.

Mr. Kairis has achieved significant corporate governance improvements for G&E's institutional investor clients, including the recent agreement by HealthSouth Corporation to replace its conflicted directors with independent directors approved by a committee including the institutional investor plaintiff. The groundwork for this case was established through Mr. Kairis' successful prosecution of a books and records case under Section 220 of the Delaware General Corporation Law, which resulted in HealthSouth disclosing documents they had previously refused to produce. Mr. Kairis has mediated and obtained favorable settlements for G&E clients in both major securities cases (including *Wyser-Pratte Management Co. v. Telxon Corp.*) and consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch and Lomb.

Mr. Kairis is a graduate of the University of Notre Dame (1984), and the Ohio State University School of Law (1987), where he served as Articles Editor for the Law Review, and received the American Jurisprudence Award and the John E. Fallon Memorial Award for scholastic achievement. Recently, he authored the article "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3 (June 14, 2006). He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc. and the Cornerstone West Development Corporation. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

**Michael J. Barry**

As a partner at G&E, Mr. Barry works with G&E clients in the area of corporate governance, having developed significant expertise in drafting and reviewing bylaws and lobbying companies for corporate governance improvements. He also is an experienced derivative and securities class action litigator. His work in a recent case challenging excessive executive compensation at Siebel Systems, Inc. resulted in extensive corporate governance reforms and a rollback of over $56 million in stock options. When directors at Willamette Corporation fought a hostile takeover by Weyerhauser, Mr. Barry's work on behalf of shareholders resulted in G&E clients cashing in their shares for a significant premium. Mr. Barry also has extensive experience representing shareholders in appraisal actions arising from cash-out mergers. Mr. Barry currently is part of the G&E teams litigating securities claims arising from the collapse of Global Crossing Ltd. and Qwest Communications International, Inc.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia based defense firm, where he gained significant experience in corporate and commercial matters as well as Constitutional disputes. Mr. Barry defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He also represented prisoners on death penalty and constitutional appeals, as well as insurance consumers and claimants on significant coverage disputes.

Mr. Barry is a graduate of Carnegie Mellon University (B.F.A. 1990) and the University of Pittsburgh School of Law (*summa cum laude*, 1993), where he was an Executive Editor of *The University of Pittsburgh Law Review* and a member of the Order of the Coif.

**James J. Sabella**

Mr. Sabella is a partner of Grant & Eisenhofer, resident in G&E's New York City office. He has over 30 years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions, involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and in litigation involving claims against accounting firms and underwriters. He also has handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Prior to joining G&E, Mr. Sabella practiced for 28 years at several large Manhattan law firms, most recently as a partner in Sidley Austin Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice, as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a graduate of Columbia Law School (1976) where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College (1972) and a B.S. from the Columbia School of Engineering (1973), where he was valedictorian.

**David E. Sellinger**

David E. Sellinger is a partner at Grant & Eisenhofer. Prior to joining G&E, he was a partner in two prominent Washington, DC law firms, where he handled complex civil litigation in the state and federal courts, as well as white-collar criminal matters. His extensive background representing both defendants and plaintiffs ranges from shareholder and partnership disputes to a wide range of fraud and business tort and other commercial cases. He also has handled intellectual property matters. He has represented clients in parallel criminal, civil and administrative proceedings, and has conducted internal investigations. Early in his career, Mr. Sellinger served as an Assistant U.S. Attorney for the District of Columbia, where he prosecuted over 35 jury trials. He is the former Chair of the Litigation Section of the D.C. Bar, and has served as the President of the Assistant U.S. Attorneys' Association for the District of Columbia, and as a member of the Executive Committee of the Council for Court Excellence.

A 1972 graduate of Harvard College, Mr. Sellinger received his law degree from New York University, where he was Articles Editor of the Law Review, in 1976. After law school, he served as a law clerk to the late Judge Robert A. Ainsworth, Jr. on the U.S. Court of Appeals for the Fifth Circuit.

Mr. Sellinger has written and spoken extensively on civil litigation and white-collar criminal issues. Some of his lecture and publication topics include: "Why Your Law Department Needs White-Collar Criminal Capability Before You Have An Inkling Of A Criminal Problem," *The Metropolitan Corporate Counsel* (October 2003); "Patent Damages: Trial and Litigation Strategies," *D.C. Bar Continuing Legal Education Program* (Sept. 2003, Oct. 2004); "Managing Your Compliance Program And Its Effects," *Corporate Legal Institutes* (June 1995); "Business Crimes And Corporate Criminal Liability," *National Soft Drink Association, Legal Briefing Conference* (1987); "Protecting The Corporation And Its Management From Criminal Liability," *Federal Litigators Group Conference* (1987); "The New Federal Bank Bribery And Bank Fraud Laws Enacted Under The Comprehensive Crime Control Act Of 1984," *ABA Litigation Section Annual Meeting* (1985); "The Good-Faith Exception To The Exclusionary Rule," *ABA Annual Meeting* (1985); "The Self-Evaluation Privilege: Preserving Confidentiality Of Compliance Information," *Washington Legal Foundation, Working Paper Series* (1996).

## Cynthia A. Calder

Cynthia Calder, a G&E partner, concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.* (vindicating the shareholders' right to vote), *Carmody v. Toll Brothers* (finding the dead-hand poison pill defensive measure was illegal under Delaware law), *Jackson National Life Insurance Co. v. Kennedy* (breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders), *Haft v. Dart Group Corp.* (resolving a contest for control of a significant public corporation) and *Paramount Communications Inc. v. QVC Network* (obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation).

Ms. Calder is a graduate of the University of Delaware (*cum laude* 1987) and the Villanova University School of Law (1991). She is a member of the Delaware Bar Association.

Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk to the Honorable Maurice A. Hartnett, III, then a Vice Chancellor of the Delaware Court of Chancery and now a retired Justice of the Delaware Supreme Court. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate in the Wilmington office of Blank Rome LLP.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including: "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer,* Vol. 11, No. 3, "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2 and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

## Stephen G. Grygiel

Stephen Grygiel, a Partner with Grant & Eisenhofer, focuses his practice on complex securities and corporate governance litigation. Mr. Grygiel has litigated and tried a variety of shareholder dissolution actions, adversary proceedings in bankruptcy court, and other corporate and commercial matters. He has litigated, among others, issues concerning the validity of stock issued in private companies, minority shareholders' rights under statutes, by-laws and contracts, valuations and requisite consideration for founders' stock, minority discounts and control premiums for valuation purposes, the interplay of security interests and stock ownership rights,

secured party seizures of stock, and a bankruptcy estate's ownership of funds fraudulently obtained from banks through a sophisticated check-kiting scheme. Mr. Grygiel has also litigated private cost recovery actions under CERCLA, representing plaintiffs in the *Laurel Park Coalition v. Goodyear* (Connecticut) and *Hanlin v. IMC* (Maine) cases. Having written, and contributed to, articles addressing private cost recovery actions and the intersection of CERCLA and common law rights of action, he has also lectured on those topics to industry professionals.

Mr. Grygiel graduated *magna cum laude* in 1979 from Hamilton College, where he was elected to Phi Beta Kappa and won other honors and academic awards. He graduated from Harvard Law School in 1986. Following law school, Mr. Grygiel clerked for the Chief Justice of Maine's Supreme Judicial Court.

## Keith M. Fleischman

Keith M. Fleischman is a Partner in G&E's New York office, focusing on high profile securities litigation cases. Named a "Super Lawyer" by *Super Lawyer Magazine* in 2006, Mr. Fleischman is a nationally recognized litigator and trial lawyer with over 20 years experience with the Justice Department, U.S. Attorney's Office and large plaintiffs firms.

Mr. Fleischman has served as lead or co-lead counsel and on the executive committee for many notable and successful litigations, including America Online, Ann Taylor, Motorola, Aetna and John Hancock, which collectively resulted in hundreds of millions of dollars in settlements to the respective classes. In 1995, Mr. Fleischman was plaintiffs' Chief Trial Counsel in *Robbins v. Koger Properties, Inc.,* in which a federal jury found Deloitte & Touche liable for securities violations and awarded the class $80+ million after a month-long trial. Mr. Fleischman also successfully argued before the Second Circuit the case of *Novak v. Kasaks*, the precedent–setting decision regarding the pleading standard and disclosure of confidential informants under the PSLRA.

During his eight years as prosecutor, Mr. Fleischman tried numerous cases to verdict and served as Chief Trial Counsel in one of the largest savings and loan prosecutions successfully brought by the federal government, *United States v. Health*. Additionally, he served as a Trial Practice Instructor for the Attorney General's Advocacy Institute, U.S. Department of Justice, as a member of the New England Bank Fraud Task Force, Coordinating Committee, and as a member of the Connecticut Bank Fraud Working Group. Mr. Fleischman has received awards from the Director of the FBI and the Attorney General for his work while serving in the Justice Department.

Mr. Fleischman received his B.A. from the University of Vermont in 1980 and a J.D. from California Western School of Law in 1984. He lectures in the U.S. and abroad on the investigation, litigation and prevention of securities fraud.

## Charles T. Caliendo

A Senior Counsel in Grant & Eisenhofer's New York office, Mr. Caliendo represents institutional investors in class action securities, opt-out and shareholder derivative litigation.

Before joining the firm, Mr. Caliendo served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund "market timing" and "late trading." Prior to that, Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, M&A, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled: "The Investment Protection Bureau: An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Some of Mr. Caliendo's other published works include: Co-Author: "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001); and Co-Author: "Board of Directors' 'Revlon Duties' Come Into Focus", *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

## Leslie A. Conason

Ms. Conason is a Senior Counsel with Grant & Eisenhofer's New York City office. Her practice focuses on securities litigation and corporate governance actions on behalf of public and private funds in class and individual actions. Prior to joining G&E, Ms. Conason was responsible for managing all securities litigation for the City of New York, where she was in charge of securities litigation for the $100 billion in pension assets held by the workers and retirees for the City of New York. During her tenure, the New York City Pension Funds gained a national reputation for the responsible, creative and proactive use of securities litigation to maximize recoveries on losses due to corporate wrongdoing and for effecting significant improvements in corporate governance of the companies at issue. In the landmark class action *In re Cendant Corporation*, the New York City Pension Funds served as Lead Plaintiff and were instrumental in obtaining a $3.2 billion recovery for the class, the highest settlement in a class at that time.

While running securities litigation for the City of New York, Ms. Conason's primary goal was to ensure that the cases filed by the NYC Pension Funds were client driven and not initiated and settled for the benefit of plaintiffs' class action lawyers. As counsel to the NYC Pension Funds, Ms. Conason entered the battle for lead plaintiff in numerous major cases. By filing individual cases in select instances, such as *Bristol-Myers Squibb* and *Qwest Communications*, the New York City Pension Funds recovered more than 13 times what they would have recovered had they remained as members of the class. When viewed as a percentage of provable damages, New York City's settlement represented by far the best outcome out of the hundreds of *WorldCom* cases filed.

Prior to her tenure with the City of New York, Ms. Conason was a litigator in the New York headquarters of the well-known international corporate law firm of Weil Gotshal & Manges. She has also been associated with a number of litigation boutiques specializing in public policy issues.

Ms. Conason graduated *magna cum laude* from the College of Arts and Sciences at Cornell University, received a master's degree in English Literature from the University of Chicago and her law degree from Fordham University School of Law. Ms. Conason was a Law Clerk to the Honorable Charles L. Brieant, Jr., former Chief Judge of the United States District Court for the Southern District of New York.

She is a member of the Securities Litigation Working Group of the National Association of Public Pension Attorneys, is a member of various bar and professional associations and has written and lectured widely on securities fraud litigation from the institutional investor's point of view.

## Reuben Guttman

Reuben Guttman's practice involves complex litigation and class actions. He has represented clients in claims brought under the Federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the WARN Act, RICO, and various employment discrimination, labor and environmental statutes. He has also litigated and/or tried claims involving fraud, breach of fiduciary duty, antitrust, business interference, and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million were recovered from the oil industry. He served as lead counsel in a series of cases that resulted in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Litigation brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in congressional oversight and changes in procurement practices affecting the nation's nuclear weapons complex. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and editor of dozens of articles and scholarly works. He has appeared on *ABC Nightly News* and CNN, and has been quoted in major publications, including *The Wall Street Journal, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News*, and national wire services including the Associated Press and Reuters. In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School in 1985, and his bachelor's degree from the University of Rochester. He is a faculty member at the Emory University School of Law Edison-Kessler Trial Advocacy Program and is a founding member of the American Association for Justice (AAJ) Qui Tam Litigation Committee. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Shanghai. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws.

## Ann Lugbill

Ann Lugbill has represented dozens of plaintiffs in False Claims Act qui tam, whistleblower, class action, corporate securities fraud, and employment-related cases for over 20 years. At Grant & Eisenhofer, Ms. Lugbill works on False Claims Act qui tam litigation involving whistleblowers who expose corporate fraud and abuse.

Ms. Lugbill co-authored *False Claims Act: Whistleblower Litigation* (Michie 1st Ed. 1994, Lexis, 2d Ed. 1999) and *Representing the Terminated Employee in Ohio* (Anderson 2d Ed. 1997, Supp. 2004), as well as articles on employment law, legal ethics, and attorneys' fees. Ms. Lugbill filed Jack Gravitt's pioneering False Claims Act qui tam case in 1984 and was featured in a Mike Wallace "60 Minutes" segment on her qui tam case involving false certifications as to the Buy America Act. She has been counsel in dozens of qui tam cases, co-counseling cases throughout the United States, including in Texas, Virginia, Massachusetts, Pennsylvania, New York, Ohio, Nebraska, Illinois, Kentucky, and the District of Columbia

Ms. Lugbill earned her law degree from the University of Virginia Law School in 1980, and her Bachelor's degree from Kalamazoo College in Kalamazoo, Michigan. After law school, she worked for the United States Government as an attorney and then entered private practice in Cincinnati, Ohio.

An active leader in the Ohio legal community, Ms. Lugbill was a founding member and officer of the Ohio Employment Lawyers Association and Chair of the Cincinnati Bar Association Grievance Committee from 2003-2005. She continues to serve as co-chair of the Josh Morrow Workplace Fairness Fund, a nonprofit fund that provides costs for employment plaintiffs and whistleblowers in meritorious cases.

## Mary S. Thomas

Prior to joining Grant & Eisenhofer in 2006, Mary Thomas gained a 12-year track record in business litigation with two of Los Angeles' leading law firms. Her practice included trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

Ms. Thomas co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005). She was also one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook*. She also served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court.

A *magna cum laude* graduate of Harvard Law School, Ms. Thomas earned her Bachelors Degree from the University of Delaware. After more than a decade practicing on the West Coast, she is pleased to be back in her home community.

## Lesley Weaver

Lesley Weaver is Senior Counsel in G&E's Wilmington office, focusing on the litigation and management of complex class actions in federal and state courts. Her practice focuses on federal securities actions against public companies on behalf of pension funds and institutional shareholders. Ms. Weaver has extensive experience with motion practice, oral argument, developing and implementing discovery strategy, as well as deposition, expert discovery and case resolution.

Ms. Weaver has been involved in many notable decisions and settlements, including In re Cardinal Health, Inc. Securities Litigation, Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, In re Boeing Securities Litigation, In re NorthPoint Securities Litigation, In re Commtouch Securities Litigation, In re Vicuron Securities Litigation, and In re Cavanaugh.

Ms. Weaver earned her law degree in 1997 from the University of Virginia School of Law, after graduating *magna cum laude* from Harvard University. Ms. Weaver is fluent in German and Danish, and speaks some Swedish and French.

**Diane Zilka**

A Senior Counsel with G&E, Ms. Zilka is integral to G&E's successful efforts to prosecute securities fraud and corporate governance cases on behalf of public and private funds in class and individual actions. She played a key role in achieving significant recoveries for funds managed by private institutional investors *in Styling Technology Corporation* and on behalf of the State of Wisconsin Investment Board and the other class members in *Just For Feet Securities Litigation*. Ms. Zilka was part of the trial team in *Safety Kleen Bondholder Litigation* that recovered more than $275 million in judgments and settlements on behalf of investors. She represents United Kingdom private pension funds and others as lead plaintiffs in *In re Parmalat Securities Litigation* and German, Swiss, and Norwegian institutional investors in securities fraud actions against Vivendi S.A. In the corporate governance arena, Ms. Zilka has successfully defended the State of Connecticut pension funds before the SEC in a challenge by the Disney Corporation to the funds' corporate governance proxy proposal. She is currently part of the team pursuing breach of fiduciary duty claims against officers and directors of American International Group and Countrywide Financial Corporation. Ms. Zilka co-authored, with Stuart Grant, "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007).

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a New York City law firm and a member of its investor protection practice group. In addition to securities fraud and corporate governance matters, Ms. Zilka has extensive experience litigating a wide range of other complex matters, including mergers and acquisitions, proxy disclosures and contests, limited partnership issues, ERISA and bankruptcy matters. She has also represented investors in proceedings before the New York Stock Exchange and the American Arbitration Association.

Ms. Zilka is a graduate of the State University of New York at Binghamton (1982) and Fordham University School of Law (1985). She is a member of the American, Delaware, Pennsylvania and New York State Bar Associations and a member of the Association of the Bar of the City of New York. She volunteers with Literacy Volunteers Serving Adults in Delaware and has enjoyed being a "Big Sister" with Big Brothers Big Sisters Association of Philadelphia.

**Stephen K. Benjamin**

Stephen K. Benjamin brings to Grant & Eisenhofer an extensive career in law, business, politics, government and civic life. In January 1999, South Carolina Governor Jim Hodges appointed Mr. Benjamin to the Governor's Cabinet. The South Carolina Senate unanimously confirmed his appointment as Director of the South Carolina Department of Probation, Parole and Pardon Services, where he served as Chief Executive of the 950 employee, state law enforcement agency.

Prior to accepting his Cabinet appointment, Mr. Benjamin served as Regional Manager of Public Affairs for International Paper Company, where he managed the company's legislative and public affairs activities in South Carolina, North Carolina, Georgia, and Virginia. Prior to joining International Paper, he was Manager of Corporate Affairs at Carolina Power & Light Company, and served an Associate in the Administrative and Regulatory practice of the prominent McNair Law Firm in Columbia, South Carolina. He has also served as an assistant prosecutor in South Carolina's 4th Judicial Circuit.

The South Carolina Bar Association named him a co-recipient of the 2001 Young Lawyer of the Year and he is a recipient of the 2000 Compleat Lawyer Award given by the University of South Carolina School of Law. In 1999 the National Bar Association named him the National Young Lawyer of the Year and the University of South Carolina recognized him as Young Alumni of the Year.  He is the recipient of the Lincoln C. Jenkins, Jr. Award given by the Columbia (SC) Urban League for accomplishments as a young professional and was featured as one of Ebony Magazine's 30 Leaders of the Future.

Steve Benjamin's community leadership experiences are extensive. Currently, he sits on the University of South Carolina School of Law Partnership Board, the Boards of Directors of the USC Development Foundation, The Columbia Urban League, The Greater Columbia Chamber of Commerce and The South Carolina Chamber of Commerce.  He serves as the Chair-Elect of the Midlands Education and Business Alliance and as a Statewide Co-Chair of Choose Children First.

Mr. Benjamin received his Bachelors Degree in Political Science from the University of South Carolina in 1991, and his J.D. Degree from the University of South Carolina School of Law in 1994.

**Jeff A. Almeida**

At Grant & Eisenhofer, Jeff Almeida has represented shareholders in several securities fraud actions against Fortune 500 companies, as well as being involved in derivative litigation and litigation involving illegal or abusive tax shelters. Prior to joining G&E in August 2004, Mr. Almeida was associated for seven years as an attorney with a major Philadelphia law firm, where he practiced in the complex commercial litigation department focusing on class action litigation, commercial contracts, and insurance defense.

Mr. Almeida is a graduate of Trinity College in Hartford, Connecticut (*Phi Beta Kappa*, 1994) and William and Mary Law School in Williamsburg, Virginia (1997).  Mr. Almeida is a member of the Pennsylvania, New Jersey and American Bar Associations.

**Naumon A. Amjed**

Naumon A. Amjed concentrates his practice in complex securities fraud litigation in both class action and opt-out cases.  At Grant & Eisenhofer, he is involved in the representation of institutional investors in securities fraud actions related to scandals at Enron and Global Crossing.  Mr. Amjed is also currently involved in prosecuting securities fraud class action lawsuits against Marsh & McLennan Companies, Inc., Pfizer Inc., and Alstom SA, among others.

Mr. Amjed is a graduate of the Villanova University School of Law (*cum laude* 2003), where he was a quarterfinalist in the Reimel Moot Court Competition and President of the Corporate Law Society.  While in law school, Mr. Amjed served as an extern for the Honorable Pamela Pryor Dembe of the Court of Common Pleas in Philadelphia County.  His charitable activities included active participation in the Villanova University School of Law's Public Interest Fellowship Society and the Martin Luther King Day of Service.  Mr. Amjed currently serves as a board member on the Villanova University School of Law Minority Alumni Society. Mr. Amjed holds a Bachelors Degree in Business Administration from Temple University (*cum laude* 2000), where he double majored in Finance and Economics.  As an undergraduate, Mr. Amjed gained business experience interning at Morgan Stanley and Towers Perrin.

**Peter B. Andrews**

Prior to joining Grant & Eisenhofer, Peter B. Andrews was a law clerk for the Honorable Alan M. Black of the Court of Common Pleas, Lehigh County, Pennsylvania. He then joined a large Philadelphia law firm where his practice primarily consisted of representing securities broker-dealers, registered representatives, and investment advisors in federal and state litigation, as well as in arbitrations before the NASD, NYSE, and American Arbitration Association. Mr. Andrews also has experience related to employment disputes and restrictive covenants, ERISA, and the representation of insurance brokers.

Mr. Andrews has authored several articles for publication, including: "New Disclosure Requirements for Brokered CD's" (co-author), *The Source (Financial Planning Association Newsletter),* December 2002.

Peter Andrews is a 1998 graduate of The Dickinson School of Law, and a 1992 graduate of Colby College, where he majored in economics. Mr. Andrews is a member of the Philadelphia and Pennsylvania Bar Associations.


**James R. Banko**

James Banko practices in the areas of corporate, securities, and complex commercial litigation and has concentrated his practice primarily in the Commercial Part of the New York Supreme Court in cases involving shareholder rights and securities fraud. Mr. Banko represents sophisticated institutional investors in a high-profile securities fraud class action – *In re Tyco International, Ltd. Securities Litigation* – as well as in an "opt out" action involving, *inter alia*, allegations against Bristol-Myers and several officers and directors.

Mr. Banko is one of the authors of "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance–Based Theory of Loss Causation," by Jay W. Eisenhofer, Geoffrey C. Jarvis, and James R. Banko, published in *The Business Lawyer*; Vol. 59.

Mr. Banko graduated from Reed College (1981), the New York University Graduate School of Arts and Sciences (1987) and the University of Pennsylvania School of Law (1990), where he was a member of the Journal of International Business Law.


**Ananda N. Chaudhuri**

At G&E, Ananda Chaudhuri focuses on securities litigation and deceptive advertising. He received his law degree in 2005 from University of Pennsylvania, where he was a member of the Journal of International Law and Policy and a member of the Film, Music & Media Society.

Mr. Chaudhuri received his BA in Journalism and Anthropology from New York University. Mr. Chaudhuri's experience includes positions as a Summer Associate at Adkins, Kelston, Zavez, P.C. in Boston, and research and writing positions at Pennsylvania Employment Law Publishing (Philadelphia), *Self Magazine*, and *Working Woman* magazine in New York City.


**P. Bradford deLeeuw**

Brad deLeeuw concentrates his practice in complex securities litigation, including class action litigation, shareholder derivative litigation and opt-out actions on behalf of institutional shareholders. Mr. deLeeuw was substantially involved in G&E's representation of a large public pension fund's litigation against Siebel Systems, Inc. The suit resulted in the return of stock options worth an estimated $56 million and the institution of substantial executive compensation and corporate governance reforms. Mr. deLeeuw also counsels clients seeking to foster corporate

governance reforms by means of shareholder proposals and exempt solicitations under the Proxy Rules. Previously, Mr. deLeeuw advised clients with respect to diverse securities law issues, such as the formation and operation of domestic and offshore alternative investment vehicles and compliance with disclosure and regulatory reporting obligations.

Mr. deLeeuw is a graduate of Wake Forest University (1993, B.A. Economics), Washington and Lee University School of Law (1996, J.D.) and Georgetown University Law Center (2000, L.L.M. Securities and Financial Regulation, *with distinction*).

## Lydia Ferrarese

Lydia Ferrarese is involved in the G&E legal team defending equity holders in the Parmalat class action litigation against financial institutions and against directors and statutory auditors for international fraud in violation of securities laws and regulations.

Prior to joining Grant & Eisenhofer, Ms. Ferrarese (who received her initial law degree in Italy) served as a visiting attorney with several prominent law firms in New York, Boston and Los Angeles. She was also an Associate at firms in Milano and Bologna, Italy. Ms. Ferrarese drafted numerous agreements and opinions on corporate issues for major Italian and multi-national corporations, focusing on Mergers and Acquisitions. In 1996, Ms. Ferrarese served as an Assistant Professor of Civil Law at the Ariosto School in Bologna, Italy.

Ms. Ferrarese received her LL.M. in Corporate, Banking and Finance Law at Fordham University School of Law in New York City, and her J.D. equivalent from the University of Bologna, Italy in 1993. She was a contributing writer and editor of the "*Guide for the Italian Importer to the United States*" by Michael Doland, 2000, and editor of the article, "Dissolution of a corporation and minority shareholders' rights" *Le Societa', Ipsoa,* May 2001.

## Christine Mackintosh

Christine Mackintosh adds depth and experience to G&E's complex litigation and trial capabilities. As a member of the Litigation Practice Group of a large Philadelphia law firm, she gained extensive experience in commercial litigation, insurance recovery, securities litigation and bankruptcy litigation. She acted as lead counsel in several bankruptcy and commercial litigation cases, and served as lead trial counsel in a case brought before the US Bankruptcy Court for the Eastern District of PA.

A graduate of St. Joseph's University in Philadelphia (*magna cum laude*), Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practicing Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

Ms. Mackintosh is a member of the Philadelphia and Pennsylvania Bar Associations.

## Jonathan D. Margolis

Jonathan Margolis' practice at Grant & Eisenhofer P.A. focuses on securities litigation and corporate governance. Prior to joining the firm, Mr. Margolis spent almost a decade litigating corporate and securities cases with the Business & Securities Litigation department at Weil, Gotshal & Manges LLP in New York, where he focused on securities, corporate and other complex commercial litigation as well as corporate governance and other corporate counseling.

Jonathan is the co-author of numerous articles, including: "SLUSA And the Power of Federal Courts to Stay Discovery in State Court," *Business & Securities Litigator*, October 2003; "Summary Judgment Issues, Current Developments in Federal Civil Practice," *691 PLI/CORP. 193* (2003); "The SEC's Attempt to Regulate Attorney-Client Privilege in its Proposed Attorney Conduct Rules," *Business & Securities Litigator*, January 2003; "Disclosing Illegal Conduct of Public Corporations," *New York Law Journal*, February, 2001; and "Summary Judgment Issues, Current Developments in Federal Civil Practice*," 675 PLI/CORP. 269* (2002). He is also acknowledged as a contributor to: "Summary Judgment Issues, Current Developments in Federal Civil Practice," by Joseph S. Allerhand, *653 PLI/CORP. 491* (2001); and "Avoiding Securities Law Liability for a Company's Web Site," by Mary Lou Peters, *Insights*, April 1999.

Mr. Margolis obtained his J.D. from Georgetown University Law Center in 1998 and his B.A. in History (with a focus in religious history) from Washington University in St. Louis in 1995. While studying, he worked summers at the Securities and Exchange Commission, as a clerk to the United States Supreme Court, at the Queens District Attorney's Office and at a plaintiffs' law firm. During the school year, he worked as a law clerk at several plaintiffs' law firms and as a member of the D.C. Law Students in Court program, a legal clinic and United Way charity. Staffed by law students from five of Washington, D.C.'s law schools, the D.C. Law Students in Court program provides legal services to the poor.

### James P. McEvilly, III

Jim McEvilly is a seasoned litigator who practices in the areas of securities, corporate governance and complex commercial litigation.  At Grant & Eisenhofer, he has successfully represented institutional clients in federal and state courts throughout     the United States.  Mr. McEvilly played a primary role in recovering in excess of    $48 million in a securities class action on behalf of a class of bond holders in     Hayes Lemmerz International, Inc. in the U. S. District Court for the Eastern District of Michigan, and is currently playing a lead role in a securities opt-out case on behalf of  institutional investors in DVI, Inc. in the U.S. District Court for the Eastern District of Pennsylvania.

Mr. McEvilly is also involved in representing lead plaintiffs in G&E's large complex securities class actions, including *In re Marsh & McClennan Companies, Inc.* pending in the U.S. District Court for the Southern District of New York, and *In re Tyco,* pending in the District of New Hampshire.  In addition to his involvement in securities class actions, Mr. McEvilly also represented seat holders in the New York Stock Exchange Merger Litigation in the Supreme Court of the State of New York and institutional investors in the Caremark/CVS Merger Litigation in the Court of Chancery of the State of Delaware.

Prior to joining G&E, Mr. McEvilly was a litigator at a prominent litigation boutique in Philadelphia, where he represented both plaintiffs and defendants in a wide range of complex litigation matters and controversies of significant public interest.  Prior to that, Mr. McEvilly was an associate at a large defense firm in Philadelphia.

Mr. McEvilly graduated from the University of Pennsylvania in 1991 with a B.A. degree in Political Science.  He received his J.D. degree from the University of Pennsylvania in 1994. Mr. McEvilly also served in the United States Army for two years in an armored division in Western Europe.

**Sharan Nirmul**

Sharan Nirmul's practice at Grant & Eisenhofer, P.A. focuses on securities litigation and corporate governance. Prior to joining the firm, Mr. Nirmul practiced commercial litigation with a major New York City law firm.

Mr. Nirmul is a graduate of Cornell University (B.S. 1996) and the George Washington University Law School (J.D. 2001). While in law school Mr. Nirmul served as articles editor for the law school's environmental law journal, *the Environmental Lawyer*, and was a member of the Moot Court Board. He was a legal fellow in the Immigration Clinic of the law school's Community Legal Clinics and participated in the International Human Rights Law Program at Oxford University in the summer of 1999. In May 2001, he was awarded the law school's Richard M. Lewis Memorial Award for excellence in clinical practice.

**Catherine Pratsinakis**

Catherine Pratsinakis has been involved in numerous complex litigations involving multi-national Fortune 500 companies, in matters relating to securities fraud, shareholder disputes, breach of contract, merger disputes, accounting malpractice, and antitrust violations. She has represented several major airlines in bankruptcy litigation and assisted in the bankruptcy court-appointed examination of a major nursing home health system. Mrs. Pratsinakis has been involved in a number of pro bono activities, including Volunteer Income Tax Assistance (VITA); Bankruptcy Pro Bono Project; and Philadelphia's Volunteer for the Indigent Program (VIP). She has represented the interests of less fortunate individuals in matters involving bankruptcy, inheritance tax, income tax, real estate, landlord-tenant, as well as other legal matters.

Mrs. Pratsinakis obtained her J.D., with honors, from the Rutgers University School of Law - Camden (2001) where she made Law Review and served on the editorial staff of the *Rutgers Law Journal*. She obtained her MBA, with honors, from Rutgers University School of Business (2001) where she concentrated on finance and global management. She earned her B.A. in Psychology from the University of Maryland- College Park (1993).

Mrs. Pratsinakis served as editor of the *Philadelphia Bar Reporter* in 2003.  Her published articles  include: "American Sports as a Target for Terrorism:  the Duty of Care After 9/11"  "Multinational Jurisdictional and Procedural Issues Created By the World Wide Web: Litigation in a World without Boundaries" *Insurance for Techno-Torts, Intellectual Property, and Unfair Business Practices Course Book*, DRI.

**Ralph N. Sianni**

For over ten years, Mr. Sianni has focused on complex commercial litigation.  He joined G&E from another leading national securities litigation firm, where he handled class action securities litigation cases, and cases involving mergers and acquisitions, general corporate law and breach of fiduciary duties.  His trial experience includes the preparation of motions pleadings and briefs for cases before the U.S. Third Circuit Court and U.S. Supreme Court.

Mr. Sianni recently co-authored the article, "Is the Fix In? - Are Hedge Funds Secretly Disenfranchising Shareholders?, *Bloomberg Law Reports - Corporate Governance*, January 2005; In the *Boston University Public Interest Law Journal,* he published a Case Comment on *Claremont School District v Governor*, concerning the right of low-income school districts to acquire facilities under the NH State Constitution.

Prior to entering private practice, Mr. Sianni served as a Law Clerk to the Hon. Stephen J. McEwen, Jr., President Judge of Pennsylvania Superior Court. As a Legislative Intern for the American Civil Liberties Union of Pennsylvania, he researched and wrote memoranda on First Amendment issues for the PA legislature.

Mr. Sianni earned his law degree from the Boston University School of Law and his Masters Degree in History from Yale University. He graduated *cum laude* with distinction in his major (history) from the University of Pennsylvania.

## Hung G. Ta

Hung Ta is an Associate in Grant & Eisenhofer's New York Office, where he focuses on securities litigation and shareholder derivative litigation on behalf of our institutional investor clients.

Prior to joining G&E, Mr. Ta spent more than six years as a litigation associate at a leading New York law firm, where he represented a considerable number of officers and other clients of the firm in securities litigation, white-collar defense work and regulatory investigations. Mr. Ta also represented other clients of the firm in general commercial litigation matters involving bankruptcy, reinsurance, professional malpractice, mutual fund litigation and ERISA litigation.

Before coming to the United States, Mr. Ta completed his education in Australia, earning a degree in Finance from the University of New South Wales School of Commerce and his Law degree from the University of New South Wales School of Law. After law school, Mr. Ta clerked with the Honorable Justice Gaudron of the High Court of Australia, Australia's ultimate appellate court.

## Marc D. Weinberg

Prior to joining Grant & Eisenhofer in 2006, Marc Weinberg gained a 14-year track record with two of the nation's leading securities litigation firms. He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992, after graduating from Pennsylvania State University. He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of our cases include:

**(A)**     **In Securities Fraud Litigation:**

    **(1)**     **Cellstar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in Gluck v. CellStar Corp., 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, In re Cendant Corp. Litig., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing CellStar.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

    **(2)**     **DaimlerChrysler**

Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  On February 5, 2004, the court granted final approval of a $300 million cash settlement in that case, among the largest securities class action settlements since the enactment of the PSLRA.  In re DaimlerChrysler Securities Litigation, D. Del., C.A. No. 00-0993.

**(3)**    **Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into In re Oxford Health Plans, Inc., Securities Litig., S.D.N.Y., MDL Docket No. 1222 (CLB). The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel. G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)). The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(4)**    **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results. Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General. In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(5)**    **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama. That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results. Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case. (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)). SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

**(6)**     **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc.  The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations.  G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL").  After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida.  At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al., N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al., Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)**     **Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California.  G&E was approved as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, inter alia, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price.  G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders.  At the time of the settlement, this amount represented 33% of the value of the Company's shares.  In re Total Renal Care Securities Litigation, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)**     **Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds.  In re Safety-Kleen Corp. Bondholders Litig., D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001.  In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million.  The trial then proceeded against the director and officer defendants.  After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of over $190 million.

**(9)**     **Styling Technology Corporation**

G&E represented funds managed by Franklin Advisors, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and OppenheimerFunds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California.  The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds.  Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999.  In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998.  Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage.  Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)**     **Tyco**

G&E is co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class against Tyco International Ltd. and PricewaterhouseCoopers LLP. In October 2004, the Court denied in large part the defendants' motions to dismiss.  In re Tyco International Sec. Litig., MDL Docket No. 1335.

**(11)    Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd.   In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472.   In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million.   In July, 2005 the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman).   In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related defendants for $25 million, bringing the total of partial settlements in this case to $345 million.   The case is still proceeding against other defendants.

**(12)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm.   Following mediation, G&E negotiated a settlement of all claims.   Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al., N.D. Ohio, Case No. 5:02CV1105.

**(13)    Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million.   Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al., E.D. Mich., C.A. No. 02-71778.

**(14)    Enron/Worldcom**

In 2001, G&E, on behalf of various Ohio public pension funds, filed opt-out actions which remain pending.   Public Employees' Retirement System of Ohio v. Ebbers, et al., S.D.N.Y. No. 03-Civ-0338; Public Employees' Retirement System of Ohio v. Fustow, et al., S.D. Tex. No. H-02-4788.

**(15)    Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales.   Defendants' motions to dismiss were denied.   Franklin High Income Trust, et al. v. APP Global Ltd., et al., N.Y. Sup. Ct., Trial Div., Index No. 02-602567.   The matter was resolved through a confidential settlement several years ago.

**(16)  Babcock Borsig**

G&E filed suit against German company Babcock Borsig, AG alleging that Babcock's CEO, in concert with officers of Babcock's largest shareholder, German conglomerate TUI, devised a plan to overstate Babcock's income through improper use of an accounting device relating to a Babcock subsidiary. The suit was filed on behalf of Wyser-Pratte Management Co., Inc.. Defendants' motions to dismiss were granted and the case had been terminated. Wyser-Pratte Management Co., Inc. v. Babcock Borsig, A.G., et al., N.Y.Sup. Ct., Trial Div., Index No. 603364/02.

**(17)  Alstom**

In January 2004, Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. Motions to dismiss were denied in part and granted in part and an amended complaint has been filed. In re Alstom SA Sec. Litig., S.D.N.Y. 03-cv-6595. Motions to dismiss regarding the amended complaint are pending.

**(18)  Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history." The court has recently denied the motions to dismiss filed by the company's auditors, including their international affiliates. In re Parmalat Securities Litig., S.D.N.Y. 04-MDL-1653.

**(19)  Marsh & McLennan**

G&E is co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. In re Marsh & McLennan Companies, Inc. Sec. Litig., S.D.N.Y. 04-cv-8144.

**(20)  Hollinger International**

G&E is co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets. Motions to dismiss the action are pending and a resolution is expected within the next month. Hollinger International Securities Litigation, N.D. Ill. 04-C-0834.

**(21)**    <u>**Redback**</u>

G&E is serving as lead counsel for the class in this securities action pending against Redback Networks Inc.  The class claims that the former officers and directors of Redback deliberately inflated the price of Redback stock to artificially high levels by providing undisclosed multi-million dollar stock bribes and quid pro-quo purchases to Quest Communications International, in exchange for widely publicized, multi-million dollar equipment purchases.  The court recently ruled that Plaintiffs had sufficiently alleged that improper transactions had occurred and had adequately alleged the defendants' scienter, but dismissed with leave to amend to clarify the nature of Plaintiffs loss and how it was caused by defendants' conduct.  An amended complaint will be filed by May, 19, 2006.  <u>In re Redback Networks Inc. Securities Litigation</u>, N.D.Cal., No. C-03-05642.

**(22)**    <u>**Delphi**</u>

Delphi is an automotive company that was spun off of General Motors.  The company failed as a stand-alone entity.  However, the company concealed that it had failed.  G&E's client is one of the largest pension funds in the world and is a lead plaintiff and G&E serves as a co-lead counsel in the case.  <u>In re Delphi Corporation Securities Derivative & ERISA Litigation</u>, E.D. Mich., MDL No. 1725.

**(23)**    <u>**Refco**</u>

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.  G&E serves as a co-lead counsel and our client is a co-lead plaintiff.  <u>In re Refco, Inc. Securities Litigation</u>, S.D.N.Y., No. 05 Civ. 8626.

**(B)    In Derivative and Other Corporate Litigation:**

**(1)    Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E filed a class and derivative action in the Delaware Court of Chancery, alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. TCW Technology Limited Partnership ("TCW") was appointed lead plaintiff, and G&E was appointed lead counsel, in connection with their motion to preliminarily enjoin the merger. Following G&E's argument on the motion on November 29, 2000, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. In re Digex, Inc. Shareholders Litigation, Del. Ch., C.A. No. 18336, 2000 WL 1847679 (Dec. 13, 2000).

**(2)    Willamette**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al., No. 0201-0085 (Ore.Cir.Ct.).

**(3)    Medco Research**

In January 2000, G&E filed a shareholder derivative action on State of Wisconsin Investment Board's ("SWIB") behalf against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. SWIB v Bartlett, et al., Del. Ch., C.A. No. 17727, 2000 WL 193115 (Feb. 9, 2000).

**(4)**    **Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana ("TRSL") and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives.   Filed in a California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles.   TRSL v. Irani et al., Cal. Super., L.A.Co. [Calif.], C.A. No. BC1850009.

**(5)**    **Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana ("TRSL"), G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.   G&E obtained a preliminary injunction against the deal and its terms were ultimately altered resulting in a $15-$20 million gain for shareholders.   Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.   In re Staples, Inc. Shareholders Litigation, Del.Ch., C.A. No. 18784, 2001 WL 640377 (June 5, 2001).

**(6)**    **SFX/Clear Channel Merger**

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel (the "Merger").   While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the Merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.   The Merger was structured so that stockholders who voted for the Merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the Merger.   G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the Merger.   This was more than half the damages alleged in the Complaint.   Franklin Advisers, Inc., et al. v. Sillerman, et al., Del. Ch., C.A. No. 17878, amended complaint filed April 24, 2000.

**(7)    Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors. The suit alleges that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs. Before filing the derivative suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law. The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs. In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a re-pricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy. Lone Star further agreed that it had adopted previously publicly announced corporate governance reforms, and that the commencement of the lawsuit was one of the significant factors considered in the adoption of the reforms. California Public Employees' Retirement System v. Coulter, et al., Del. Ch., C.A. No. 19191, complaint filed October 16, 2001.

**(8)    Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. In Siebel Systems, G&E effected a sea change in the compensation policies of Siebel Systems, Inc., a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems, Inc. paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana ("TRSL"), commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation

experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues as well.  Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al., C. A. No. 425796 (Cal. Super. 2003) ("Siebel Systems").

**(9)    HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana ("TRSL") against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, inter alia, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months.  Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company, breached their fiduciary duties and engaged in other improper acts agreed to resign and be replaced by directors selected by a committee comprised in part by TRSL and representatives of large institutional investors of HealthSouth.  Teachers' Retirement System of Louisiana v. Scrushy, No. 20529 (Del. Ch. March 2, 2004) Strine, V.C.

**(10)    NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seatholders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC.  The complaint alleged that the terms of the proposed merger were unfair to the NYSE seatholders, and that by approving the proposed merger, the NYSE board of directors violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts.  Defendants moved to dismiss, arguing that the claims were derivative claims and also that the action was barred by the business judgment rule.  The court denied the motion to dismiss.  After expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor.  On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor.  In re New York Stock Exchange/Archipelago Merger Litig., No. 601646/05 (Sup. Ct. N.Y. Co.),